DEANNA L. FORBUSH, ESQ.  Electronically filed on April 21, 2010
Nevada Bar No. 6646
HAL L. BAUME, ESQ.
(Pro Hac Vice admission pending)
FOX ROTHSCHILD LLP
3800 Howard Hughes Pkwy; Ste. 500
Las Vegas, NV 89169
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: dforbush@foxrothschild.com
         hbaume@foxrothschild.com
[Proposed] Counsel for FX Luxury Las Vegas I, LLC

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-S-10-17017 (BAM) |
| | Chapter 11 |
| FX LUXURY LAS VEGAS I, LLC, a Nevada limited liability company, | **MOTION FOR ORDER (1) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING OR DISCONTINUING SERVICE; (2) AUTHORIZING ORDINARY COURSE PAYMENTS TO UTILITIES PROVIDERS; (3) DEEMING UTILITY PROVIDERS ADEQUATELY ASSURED OF FUTURE PERFORMANCE; AND (4) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE** |
| Debtor. | |
| | Hearing Date:   OST REQUEST PENDING |
| | Hearing Time:    OST REQUEST PENDING |

FX Luxury Las Vegas I, LLC ("Debtor" or "FX I"), debtor and debtor-in-possession in the above-captioned case (the "Chapter 11 Case"), hereby submits the above-referenced motion (the "Motion") and moves this Court for entry of an Order, pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002(a)(6) of the Local Rules of Bankruptcy Practice and Procedure (the "Local Rules"), for an order (1) prohibiting utility providers from altering, refusing or discontinuing service, (2) authorizing Debtor to pay utility providers in the

1

VG1 35699v2 04/21/10

1  ordinary course of business, (3) deeming utility providers adequately assured of future performance,
2  and (4) establishing procedures for determining requests for additional adequate assurance.
3      The requested relief is necessary because uninterrupted utility services are critical to
4  Debtor's ability to sustain its operations.  If utility providers cease providing service to Debtor,
5  Debtor's business will be severely damaged thereby jeopardizing the value of its assets.  Moreover,
6  the utility providers will not suffer any tangible economic harm as a result of the relief requested
7  herein, as Debtor will compensate the utility providers in full for any post-petition services they
8  provide.
9      The Motion is made and based upon the following memorandum of points and authorities,
10 the Omnibus Declaration of Mitchell J. Nelson Filed in Support of Debtor's First Day Motions (the
11 "Omnibus Declaration"), filed concurrently herewith and in support hereof, the papers and
12 pleadings on file with the Court in this Chapter 11 Case, and any oral arguments the Court may
13 entertain at the hearing on the Motion.
14     DATED this 21st day of April 2010.

15                             **FOX ROTHSCHILD LLP**

16                 By:   */s/Deanna L. Forbush*
17                     DEANNA L. FORBUSH, ESQ.
                     Nevada Bar No. 6646
18                      HAL L. BAUME, ESQ.
                     (Pro Hac Vice admission pending)
19                      FOX ROTHSCHILD LLP
                     3800 Howard Hughes Pkwy; Ste. 500
20                      Las Vegas, NV 89169
                     *[Proposed] Attorneys for FX Luxury Las Vegas I, LLC*

21

22

23

24

25

26

27

28

**MEMORANDUM OF LAW**

**POINTS AND AUTHORITIES**

**I.**

**FACTUAL BACKGROUND**

**A.     General Background.**

1.     On April 21, 2010 (the "Petition Date"), FX I[1] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor continues to operate its business and manage its properties as debtor and debtor-in-possession, pursuant to Bankruptcy Code Sections 1107(a) and 1108.

2.     No trustee or examiner has been appointed in the Chapter 11 Case, and no committee has been appointed or designated by the United States Trustee.

3.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b) (2).

4.     The statutory predicates for the relief requested herein are Bankruptcy Code Section(s) 105(a) and 366 and Bankruptcy Rule(s) 2002 and 9007.

5.     The general factual statements and background of Debtor, as set forth in the Omnibus Declaration, are incorporated herein by reference.

**B.     Debtor's Utility Providers.**

In connection with its ongoing business operations, Debtor currently obtains service from various utilities for, among other things, electricity, natural gas, water, telecommunications, sewage, trash removal and other similar services ("Utility Services")[2] from numerous companies or divisions

---

[1] In August 2008, FX I changed its name from Metroflag BP, LLC, to FX Luxury Las Vegas I, LLC. At the same time, affiliated entities BP Parent, LLC, and Metroflag Cable, LLC, changed their names to FX Luxury Las Vegas Parent, LLC ("Las Vegas Parent"), and FX Luxury Las Vegas II, LLC ("FX II"), respectively. Prior to the Petition Date on November 5, 2009, FX II merged its assets and operations into FX I. Subsequently, also on November 5, 2009, Las Vegas Parent merged its assets and operations into FX I. The merger of FX II and Las Vegas Parent into FX I accomplished a more accurate reflection of the actual business operations of the entities, which have always been consolidated and effectively operated as a single enterprise.

[2] The Bankruptcy Code does not define "utility," but Debtor reserves all rights to argue that any entity listed on the Utilities List is not a "utility" within the meaning of or entitled to the protection of Bankruptcy Code Section 366 and to argue that any such entity is compelled by contractual obligation, law or regulation, to continue to furnish services to the Debtor notwithstanding the filing of this Chapter 11 case.

3

thereof (the "Utility Providers").  A non-exhaustive list of the names and addresses of all or substantially all of the Utility Providers that were providing Utility Services to Debtor as of the Petition Date is attached to the Omnibus Declaration as **Exhibit 6**.[3]

## II.

## RELIEF REQUESTED

By this Motion, Debtor seeks an Order (i) prohibiting Utility Providers from altering, refusing or discontinuing service relationships or terms to Debtor except as set forth herein; (ii) authorizing payment of ordinary course amounts due to Utility Providers; (iii) deeming Utility Providers adequately assured; and (iv) establishing procedures for determining requests for additional adequate assurance.  Such relief is necessary because uninterrupted Utility Services are critical to Debtor's ability to sustain its operations.  Any interruption of Utility Services, even for a brief period, would severely disrupt the Debtor's business operations, jeopardize the value of its assets and would be extremely harmful to its tenant relationships, revenues and profits.  If Utility Providers are permitted to terminate Utility Services, even for a short time, Debtor will either be forced to shut down its operations entirely or pay any amounts demanded by Utility Providers to avoid the cessation of necessary and critical Utility Services.  This result is inconsistent with the rehabilitative goals of the Bankruptcy Code.  Moreover, Utility Providers will not suffer any tangible economic harm as a result of the relief requested herein, as Debtor will compensate the utility providers in full for any postpetition services they provide.

Bankruptcy Code Section 366 prohibits a utility company from discriminating against a debtor based upon the debtor's commencement of a chapter 11 case or a payment default arising as a result of the bankruptcy filing within the first twenty (20) days from the commencement of the debtor's bankruptcy case (the "Stay Period").  11 U.S.C. §§ 366(a)-(b).  However, upon expiration of the Stay Period, utility providers have the option to alter, refuse, or discontinue services if the debtor does not furnish "adequate assurance of payment" of post-petition utility service obligations (which Debtor seeks to provide through this Motion), in the form of a deposit or otherwise, for

---

[3] Although Debtor believes that the list of Utility Providers attached to the Omnibus Declaration as **Exhibit 6** is a complete list, Debtor reserves the right to supplement the list if it is determined that any Utility Provider has been omitted.

4

VG1 35699v2 04/21/10

1  prepetition services.  11 U.S.C. § 366(b).  In this case, the Stay Period will expire on or about May 11,
2  2010.

3  In a chapter 11 proceeding, 31 days after the petition date, utilities may discontinue service to
4  the debtor if the debtor does not provide adequate assurance of future performance in a form that is
5  satisfactory to the utility, subject to the Court's discretion to modify the amount of adequate
6  assurance.  11 U.S.C. § 366(c)(2).

7  While the form of adequate assurance may be limited to the types enumerated in Bankruptcy
8  Code Section 366(c)(1)(A), the determination of adequate assurance is within the Court's discretion.
9  It is well established that the requirement of adequate assurance does not require a guarantee of
10 payment.  Instead, the protection granted to a utility is intended to avoid exposing the utility to an
11 unreasonable risk of nonpayment.  In accordance with section 366(c)(1)(A) of the Bankruptcy Code,
12 Debtor proposes to provide an adequate assurance of payment as set forth herein.

13 Debtor is not delinquent on the payments due to the Utility Providers, but the most current
14 invoices are coming due and next month's invoices will include amounts due for pre-petition
15 Utilities Services.  In connection with adequately assuring payment for future Utility Services,
16 Debtor requests that it be authorized to pay the current invoiced amounts due to Utility Providers and
17 to pay next month's invoices when received, including the pre-petition portion of such invoices.

18 Payment of current invoices would prevent the Utility Providers from arguing that Debtor is
19 in default and forcing the Utility Providers to bear the burden of delinquencies thereby justifying the
20 Utility Providers' request for a substantial security deposit or bond.

21 To provide adequate assurance of payment for future Utility Services to the Utility Providers,
22 Debtor proposes depositing a sum equal to 50% of Debtor's estimated monthly costs for Utility
23 Services (each, a "<u>Utility Deposit</u>"), based upon an average of Debtor's monthly costs for the twelve
24 (12) months immediately preceding the Petition Date, to be delivered to the Utility Providers within
25 ten (10) business days from the date of entry of an Order approving this Motion.

26 Debtor submits that the Utility Deposit, especially if accompanied by payment of current
27 invoices to avoid any defaults, constitutes sufficient adequate assurance to the Utility Providers.  If
28 any Utility Provider believes additional assurance is required, it may request such additional

5

VG1 35699v2 04/21/10

assurance pursuant to the procedures (the "Adequate Assurance Procedures") set forth herein as follows:

    (a)    If a Utility Provider requests additional adequate assurance within twenty (20) days from the date of entry of an Order approving this Motion, the Utility Provider must serve a written objection (the "Objection") upon Debtor setting forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), the outstanding balance for each account, a summary of Debtor's payment history on each account, an explanation as to why the Utility Deposit is not adequate assurance of payment, and a request (the "Request") detailing specifically what additional adequate assurance the Utility Provider requires.

    (b)    The Request must be actually received by Debtor's counsel within twenty (20) days from the date of entry of the Order granting this Motion (the "Request Deadline").

    (c)    Without further Order of the Court, Debtor may enter into an agreement granting additional adequate assurance to any Utility Company serving a timely Request, if Debtor, in its discretion, determines that the Request is reasonable.

    (d)    If a Utility Provider requests additional adequate assurance by timely filing and serving an Objection and Debtor believes such Objection is unreasonable, Debtor shall, within ten (10) days after the Request Deadline file a motion for determination of adequate assurance of payment and set such motion for hearing. The Utility Provider seeking a Request for additional adequate assurance shall be deemed to have adequate assurance of payment (the "Motion for Determination") until the Court makes a determination at the hearing on Debtor's Motion for Determination, and the Utility Provider that is the subject of the unresolved Request may not alter, refuse, or discontinue services to Debtor until the Court makes such determination.

6

VG1 35699v2 04/21/10

(e) If a Utility Provider fails to send a Request by the Request Deadline, such Utility Provider will have waived its right to make a Request and will be deemed to have received, by virtue of the Utility Deposit, adequate assurance of payment in accordance with section 366(c)(1)(A)(vi) of the Bankruptcy Code.

(f) Based upon the establishment of the Utility Deposit, a Utility Provider will be deemed to have adequate assurance of payment unless and until a future order of this Court is entered requiring further assurance of payment.

Debtor may also open new accounts for post-petition Utility Services with new Utility Providers (the "Future Utility Providers"). Debtor requests that this Court order that Future Utility Providers shall treat Debtor like any other customer under applicable public utility regulations and that if any Future Utility Provider discriminates against Debtor on account of the bankruptcy filing, by seeking to impose an additional or higher deposit or other requirements, the Court will consider a request for relief with notice to the Future Utility Provider on an expedited basis.

## III.

## LEGAL AUTHORITY

Pursuant to Bankruptcy Code Section 366, a utility may not alter, refuse, or discontinue services to, or discriminate against, a debtor solely on the basis of the commencement of the bankruptcy case or the debtor's failure to pay a pre-petition debt unless the debtor fails to furnish adequate assurance of payment for post-petition services, in the form of a deposit or other security, within twenty (20) days after the commencement of the case:

(a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may

7

VG1 35699v2 04/21/10

> order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

Determinations of "adequate assurance" within the meaning of Bankruptcy Code Section 366 are within this Court's discretion. See In re Marion Steel Co., 35 B.R. 188, 198 (Bankr. D. Ohio 1983); see also In re Pac. Gas & Elec. Co., 271 B.R. 626-644 (Bankr. N.D. Cal. 2002) (the "decision whether to order security lies within the discretion of the Bankruptcy Court."). Whether utilities are subject to an unreasonable risk of nonpayment for post-petition services must be determined from the facts and circumstances of each case. See Marion Steel Co., 35 B.R. at 198. Moreover, adequate assurance of payment under subsection 366(b) "does not require an absolute guarantee of payment. What is required is that the utility will be protected from unreasonable risk of nonpayment." In re Astle, 338 B.R. 855, 861 (Bankr. D. Idaho 2006) (citing In re Utica Floor Maint., 25 B.R. 1010, 1014 (Bankr. N.D.N.Y. 1982); In re Steinebach, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) (noting that adequate assurance does not mean absolute assurance); In re Santa Clara Circuits W., Inc., 27 B.R. 680, 684-86 (Bankr. D. Utah 1982) (discussing alternatives and types of "other security" available)).

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, effective October 17, 2005, (the "BAPCPA"), modified Bankruptcy Code Section 366 to define "assurance of payment" for chapter 11 cases. Astle, 338 B.R. at 859 (citing In re Lucre, Inc., 333 B.R. 151, 153 (Bankr. W.D. Mich. 2005) (stating that "[s]ubsection (c) applies to all Chapter 11 cases filed after October 16, 2005")); Richard Levin & Alesia Ranney-Marinelli, The Creeping Repeal of Chapter 11: The Significant Business Provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Am. Bankr.L.J. 603, 608 n. 14 (2005)). Subsection (c) defines "assurance of payment" as a cash deposit, letter of credit, certificate of deposit, surety bond, prepayment of utility consumption, or other form of security agreed to by the parties. 11 U.S.C. § 366(c)(1)(A). Section 366 now specifically excludes the availability of an administrative expense claim from the definition of assurance of payment. 11 U.S.C. § 366(c)(1)(B); see also Astle, 338 B.R. at 860 (citing H.R. Rep. No. 109-31, at 89 (2005), U.S.Code Cong. & Admin. News 2005, pp. 88, 155). New Section 366(c)(3)(B) further provides that a court may not consider certain facts in determining the amount of assurance that is adequate. 11 U.S.C. § 366(c)(3)(B). However, revised Section 366 of the

VG1 35699v2 04/21/10

1  Bankruptcy Code did not establish a minimum adequate assurance amount in each case. Instead,
2  Congress has left courts with the discretion to determine what appropriate level of adequate
3  assurance is required in each case.

4        Debtor maintains that its proposed adequate assurance satisfies the requirements of
5  Bankruptcy Code Section 366. Additionally, the Utility Providers are protected because Section
6  366(c)(3) of the Bankruptcy Code allows courts to order the modification of the amount of an
7  assurance of payment. See 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after
8  notice and a hearing, the court may order modification of the amount of an assurance of
9  payment …."). Further, Bankruptcy Code Section 105(a) provides that bankruptcy courts "may
10 issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of
11 the Bankruptcy Code. 11 U.S.C. § 105(a).

12       Debtor's request for authority to pay current invoices as part of its adequate assurance is also
13 supported by Bankruptcy Code Sections 105(a), 363(b) and 549 and the Doctrine of Necessity.[4]
14 Courts have recognized that such an exercise of equity powers may be critical where payment of
15 pre-petition claims is necessary to permit the greatest likelihood of survival of the debtor.[5] Here, if
16 the Utility Providers require substantial bonds as a condition of providing ongoing Utility Services,
17 Debtor will not be able to meet such demands within the constraints of its cash collateral budget.

18       Debtor's proposed method of furnishing adequate assurance of payment for post-petition
19 Utility Services is not prejudicial to the rights of any Utility Provider and is in the best interests of
20 Debtor, its estate and its creditors. This Court has approved similar limited deposits to those
21 requested herein following the enactment of the Bankruptcy Abuse Prevention and Consumer
22 Protection Act of 2005.[6]

---

[4] See In re Federated Department Stores, Inc., 1990 Bankr. LEXIS 122 *3 (Bankr. S.D. Ohio 1990) (§ 549); In re Isis Foods, Inc., 37 B.R. 334, 336 n. 3 (W.D. Mo. 1984) (prepetition claim payments may be presented to a bankruptcy court for its approval in advance, and thereafter be insulated from attack); see also In re Adams Apple, Inc., 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing courts have authorized such prepetition payments, with no expression of disapproval); Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945), cert. denied, 325 U.S. 873 (1945) (priority treatment for tradesmen supplying hotel prepetition approved by Judge Learned Hand); In re Columbia Gas System, 136 B.R. 930, 939 (Bankr. D. Del. 1992), citing In re Lehigh & New England Railway Co., 657 F.2d 570, 581 (3rd Cir. 1981).

[5] In re Eagle-Picher Industries, Inc., 124 B.R. 1021 (Bankr. S.D. Ohio 1991); In re Adams Apple, Inc., 829 F.2d 1484, 1490 (9th Cir. 1987).

[6] In re R.M. Precision Swiss Inc. of Nevada, Case No. 07-14030-BAM; In re Americana, LLC, Case No. 07-17845-BAM.

9

VG1 35699v2 04/21/10

1    Because uninterrupted Utility Services are vital to the continued operation of Debtor's
2 business, and, consequently, to the success of its Chapter 11 Case, the relief requested herein is
3 necessary and in the best interests of Debtor, its estate and its creditors. Such relief ensures that
4 Debtor's business operations will not be disrupted. In addition, the Utility Providers and Debtor will
5 have an orderly and fair procedure for determining any additional requests for adequate assurance.

## IV.

## NOTICE

8    Notice of this Motion has been given by e-mail, facsimile or overnight delivery to the
9 following parties, or in lieu thereof, to their counsel: (1) the United States Trustee, (2) the parties
10 included on the Debtor's list of 20 creditors holding the largest unsecured claims, (3) counsel for the
11 First Lien Lenders and Second Lien Lenders (as defined in the Omnibus Declaration), and (4) those
12 Utility Providers identified in Exhibit 6 to the Omnibus Declaration. In light of the nature of the
13 relief requested herein, Debtor submits that no other or further notice is required.

## V.

## CONCLUSION

16    WHEREFORE, for all of the foregoing reasons, Debtor respectfully requests that this Court
17 enter an Order, substantially in the form attached hereto as **Exhibit A**, (a) prohibiting the Utility
18 Providers from altering, refusing and discontinuing service relationships or terms on account of
19 pre-petition invoices; (b) authorizing payment (i) of the Utility Deposits, and (ii) in the ordinary
20 course of amounts due to the Utility Providers arising from current and post-petition invoices,
21 including amounts for Utility Services provided to Debtor pre-petition; and, (iii) upon Debtor
22 making such payments, deeming the Utility Providers adequately assured of Debtor's future
23 performance; (c) establishing the procedures set forth herein for determining any requests for
24 ///
25 ///
26 ///
27 ///
28 ///

10

VG1 35699v2 04/21/10

1  additional adequate assurance; and (d) granting such other and further relief as this Court deems just
2  and appropriate.
3        DATED this 21ST day of April 2010.

**FOX ROTHSCHILD LLP**

By:     /s/
      DEANNA L. FORBUSH, ESQ.
      Nevada Bar No. 6646
      HAL L. BAUME, ESQ.
      (Pro Hac Vice admission pending)
      3800 Howard Hughes Pkwy; Ste. 500
      Las Vegas, NV 89169
      *[Proposed] Counsel for FX Luxury Las Vegas I, LLC*

VG1 35699v2 04/21/10