1

2

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
MICAELA RUSTIA, ESQ.
Nevada Bar No. 9676
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
[Proposed] Attorneys for FX Luxury Las Vegas I, LLC

3

4

5

6

7

8

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

9

10

11

12

13

14

15

| In re | Case No. BK-S-10_____ |
| | |
| FX LUXURY LAS VEGAS I, LLC, a Nevada limited liability company, | Chapter 11 |
| | **PREPACKAGED CHAPTER 11 PLAN OF LIQUIDATION** |
| Debtor. | |
| | Hearing Date: Hearing Time: |

16

17

18

19

FX Luxury Las Vegas I, LLC ("Debtor" or "FX I"), debtor and debtor-in-possession in the above-captioned case (the "Chapter 11 Case"), hereby proposes this prepackaged liquidation plan (the "Plan") for Debtor, dated as of April 16, 2010, pursuant to section 1121(c) of the Bankruptcy Code.

20

## DISCLAIMER

21

22

23

24

25

Reference is made to the Disclosure Statement accompanying this Plan, including the exhibits appended thereto, for a discussion of Debtor's history, business, results of operations and properties, and brief summary and detailed analysis of this Plan. All creditors are encouraged to consult the Disclosure Statement and to read this Plan carefully and completely before voting to accept or reject this Plan.

26

27

28

THIS PLAN AND THE EXHIBITS APPENDED HERETO, THE ACCOMPANYING DISCLOSURE STATEMENT AND EXHIBITS APPENDED THERETO REMAIN SUBJECT TO

1

1    APPROVAL BY THE BANKRUPTCY COURT AND HAVE NOT BEEN AUTHORIZED BY

2    THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS

3    OF THIS PLAN.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LV1 1188730v1 04/21/10

## TABLE OF CONTENTS

**ARTICLE I. DEFINITIONS AND RULES OF INTERPRETATION**.................................**7**

    **A.**    **Definitions.**..............................................................................7

    **B.**    **Rules of Interpretation.** .........................................................22

**ARTICLE II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**...............................................................................**24**

    2.1    Introduction.................................................................................24

    2.2.    Unclassified Claims. ...................................................................24

        (a)    Administrative Claims.......................................................24

    2.3.    Classified Claims and Interests...................................................25

        (a)    Class 1: Priority Claims....................................................25

        (b)    Class 2: Other Secured Claims. ........................................26

        (c)    Class 3: First Lien Secured Claims. ..................................27

        (d)    Class 4: General Unsecured Claims. .................................27

        (d)    Class 5: Interests..............................................................28

    2.4.    Retention of Defenses Regarding Claims.....................................28

    2.5.    Voting By Impaired Classes.........................................................28

    2.6.    Proofs of Claim. ..........................................................................28

    2.7.    Disputed, Contingent and Unliquidated Claims and Interests...................................28

**ARTICLE III. ACCEPTANCE OR REJECTION OF THIS PLAN** ..........................................**29**

    3.1    Acceptance by an Impaired Class. ...............................................29

    3.2.    Summary of Classes Voting on this Plan.......................................29

    3.3    Tabulation of Votes.....................................................................29

**ARTICLE IV. PLAN IMPLEMENTATION** .............................................................**29**

    4.1.    Plan Implementation....................................................................29

    4.2.    Transfer of Assets. ......................................................................29

    4.3.    Assumption of Liabilities. ...........................................................30

    4.4.    Dissolution of the Debtor.............................................................31

    4.5.    Cancellation of Interests. .............................................................31

    4.6.    Nondischarge and Injunction. ......................................................31

        (a)    Nondischarge of Debtor. ...................................................31

        (b)    Injunction. .......................................................................32

    4.7.    Exemption From Certain Transfer Taxes and Further Transactions. .........................32

    4.8.    Final Decree................................................................................33

LV1 1188730v1 04/21/10

4.9.    Effectuating Documents, Further Transactions. ..........................................33

4.10.   Return of Excess Post-Effective Date Cash. ............................................33

4.11.   Adequate Protection Liens. .....................................................................33

**ARTICLE V.  PROVISIONS CONCERNING PLAN DISTRIBUTIONS...................................34**

5.1.    Distributions on Account of Claims Allowed as of the Effective Date. ....................34

5.2     Distributions on Account of Claims Allowed After the Effective Date. ...................34

        (a)     Payments and Distributions on Disputed Claims. ...................................34

        (b)     Special Rules for Distributions to Holders of Disputed Claims. ..................34

5.3.    Manner of Payment Under this Plan. ........................................................34

5.4.    Whole Dollars. ....................................................................................35

5.5.    [reserved] ...........................................................................................35

5.6.    Escheat. .............................................................................................35

5.7.    Delivery of Distributions. ......................................................................35

        (a)     Record Date for Distributions. ........................................................35

        (b)     Distribution Agent. .......................................................................35

        (c)     Delivery of Distributions in General. ................................................35

5.8.    Returned Distributions. .........................................................................36

5.9.    Disputed Distributions. .........................................................................36

5.10.   Setoffs. .............................................................................................37

5.11.   Withholding Taxes. .............................................................................37

5.12.   Allocation of Distributions. ...................................................................37

**ARTICLE VI.  CERTAIN TERMINATIONS AND RELEASES..............................................37**

6.1.    Certain Terminations. ...........................................................................37

6.2.    Rights If Plan Not Confirmed or Effective Date does not Occur. ...........................37

6.3.    Term of Bankruptcy Injunction or Stays. ...................................................38

6.4.    Exculpation. .......................................................................................38

6.5.    Releases. ............................................................................................38

6.6.    Injunctions. ........................................................................................39

        (a)     Injunction Against Releasors. .........................................................39

        (b)     Injunction Protecting Exculpation of Releasees: ..................................39

        (c)     Injunction Against Interference With Plan: .........................................40

**ARTICLE VII.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES..........................41**

7.1.    Executory Contracts and Unexpired Leases. ...............................................41

7.2     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ............41

4

7.3. Rejection Claims. ..........................................................................42

7.4. Filing of Rejection Claims. ...............................................................42

7.5. Modifications, Amendments, Supplements, Restatements, or Other Agreements. ......................................................................................42

7.6. Reservation of Rights. ......................................................................43

**ARTICLE VIII.  PROCEDURES FOR RESOLVING DISPUTED CLAIMS ..........43**

8.1. Time Limit for Objections to Priority Claims. .....................................43

8.2. Payments. ........................................................................................43

8.3. Personal Injury Claims. ....................................................................44

8.4. Estimation of Claims. .......................................................................44

**ARTICLE IX.  RETENTION OF JURISDICTION ..........................................44**

9.1. Retention of Jurisdiction. ..................................................................44

9.2. Jurisdiction Unaffected. ....................................................................46

**ARTICLE X.  CERTAIN OBLIGATIONS OF DEBTOR ...............................46**

10.1. Obligations for Debtor and New Borrower. .......................................46

**ARTICLE XI.  CONDITIONS TO EFFECTIVE DATE ..................................47**

11.1. Conditions to Occurrence of Effective Date. .....................................47

11.2. Nonconsensual Confirmation. ...........................................................49

**ARTICLE XII.  MISCELLANEOUS PROVISIONS .......................................49**

12.1. Modification of this Plan. .................................................................49

12.2. Notices. ...........................................................................................49

12.3. Limitation of Notice. ........................................................................50

  (a) Notice of Entry of Confirmation Order. .......................................50

  (b) Post-Confirmation Date Service List - Additional Persons Entitled to Notice. ............................................................................................51

  (c) Subordination. ................................................................................51

12.4. Requisite First Lien Lenders' Approval. .............................................51

12.5. Headings. .........................................................................................51

12.6. Exhibits. ..........................................................................................51

12.7. Nonseverability of Plan Provisions. ...................................................52

12.8. [reserved]. ........................................................................................52

12.9. Conflicts. ..........................................................................................52

12.10. Computation of Time. .......................................................................53

12.11. Governing Law. ................................................................................53

LV1 1188730v1 04/21/10

12.12. Successors and Assigns.................................................................................53

12.13. Withdrawal of Votes.....................................................................................53

12.14. Withdrawal of Plan.......................................................................................53

12.15. Judgments Void............................................................................................54

**Annex I.  Effective Date Cash Distributions ...............................................................56**

LV1 1188730v1 04/21/10

# ARTICLE I

## DEFINITIONS AND RULES OF INTERPRETATION

**A.**    **Definitions.**

For the purposes of this Plan and the accompanying Disclosure Statement, the following terms (which appear herein as capitalized terms) shall have the respective meanings as hereinafter set forth; such meanings to be equally applicable to the singular and the plural forms of the terms defined, unless the context otherwise requires.  Capitalized terms used in this Plan at all times shall refer to terms defined in this Article I.  Unless otherwise provided in this Plan, all terms used herein shall have the meaning assigned to them under the Bankruptcy Code or Bankruptcy Rules.  The rules of construction applicable to the Bankruptcy Code and the Bankruptcy Rules shall be applicable to this Plan.

1.1.    "Acquired Assets" means: (a) the Properties; (b) Assigned Contracts which are assignable as a matter of law; (c) all of Debtor's other non-Cash Assets, wherever situated, as they exist on the Effective Date, including all of Debtor's Causes of Action (other than any Causes of Action against First Lien Agent or First Lien Lenders); (d) any Cash in the Security Deposit Account on the Effective Date; (e) any Cash in the Travelodge Account on the Effective Date; and (f) any Effective Date Cash Distributions or Excess Post-Effective Date Cash to which New Borrower shall be entitled pursuant to the terms of this Plan; *provided, however*, the Acquired Assets shall *not* include any other Cash of Debtor as of the Effective Date, except as expressly set forth herein.

1.2.    "Administrative Claim" means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the businesses of Debtor (such as wages, salaries, or commissions for services, and payments for goods and services and leased premises); (b) compensation and reimbursement of expenses for legal, financial advisory, accounting, and other services, including but not limited to, Professional Fees Allowed pursuant to sections 328, 330(a), or 331 of the Bankruptcy Code or otherwise for the period commencing on the Petition Date and

7

ending on the Effective Date; (c) all fees and charges assessed against the Estate pursuant to chapter 123 of the Judicial Code and 28 U.S.C. § 1930; and (d) all Bankruptcy Court approved requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

1.3.    "Administrative Claim Bar Date" means the deadline for filing requests for payment of Administrative Claims, which shall be thirty (30) days after the Effective Date, except with respect to Professional Fees, which shall be subject to the provisions of <u>Section 2.2</u> hereof.

1.4.    "Aggregate Interest Accrual Cap" means an aggregate cap of one million two hundred thousand dollars ($1,200,000), less the amount of any Professional Fees that have been funded or reserved for during the Chapter 11 Case or on the Effective Date.

1.5.    "Allowed" means, with reference to any Claim or Interest and with respect to Debtor (or New Borrower to the extent Claims are assumed or reinstated pursuant to the terms of this Plan): (a) any Claim against or Interest in Debtor that has been listed by Debtor in its Schedules, as such Schedules may be amended by Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim or Interest has been Filed; (b) any Claim or Interest allowed (i) under this Plan, (ii) by Final Order, or (iii) as to which the liability of Debtor and the amount thereof are determined by a final order of a court of competent jurisdiction other than the Bankruptcy Court; or (c) as to which a Proof of Claim has been timely Filed in a liquidated amount with the Bankruptcy Court pursuant to the Bankruptcy Code or any order of the Bankruptcy Court, or has been Filed with leave of the Bankruptcy Court after notice and a hearing, provided that no objection to the allowance of such Claim or motion to expunge such Claim has been interposed by any party in interest before any final date for the filing of such objections or motions set forth in this Plan, the Confirmation Order or other order of the Bankruptcy Court.  For purposes of determining the amount of an Allowed Claim (other than a Claim in Class 3), there shall be deducted therefrom an amount equal to the amount of any valid and enforceable Claim that Debtor may hold against the Holder thereof, to the extent such Claim may be validly offset, recouped, or otherwise reduced under applicable law.

1.6.    "Assets" means, all of the assets, property, Properties, interests, and effects, Cash,

8

receivables, real and personal, tangible and intangible, wherever situated, of Debtor, as they exist on the Effective Date or thereafter.

1.7.    "Assigned Contracts" means any of Debtor's unexpired leases and executory contracts existing on the Petition Date and any unexpired leases and executory contracts entered into by Debtor post-petition, except to the extent that any such unexpired lease or executory contract is an Excluded Contract.

1.8.    "Auction and Bidding Procedures Order" means the bidding procedures and sale order providing for, among other things, the procedure for the Sale at an auction for a net cash purchase price of not less than two hundred fifty-six million dollars ($256,000,000), with purchaser to pay any applicable brokerage fees, expenses and closing costs.

1.9.    "Available Funds" means all of Debtor's Cash held immediately prior to the occurrence of the Effective Date, irrespective of whether such Cash is held directly by or for the benefit of Debtor (including Excess Funded Cash, Opex Holdback, Chapter 11 Reserves and any Cash held by First Lien Agent in any collateral or other bank account (including the Interest Reserve)), excluding (a) Cash on deposit in the Security Deposit Account and (b) Cash on deposit in the Travelodge Account.

1.10.   "Avoidance Actions" means any actions commenced, or that may be commenced before or after the Effective Date, pursuant to section 544, 545, 547, 548, 550 or 551 of the Bankruptcy Code.

1.11.   "Bankruptcy Code" means Title 11 of the United States Code, as amended from time to time, as applicable to this Chapter 11 Case.

1.12.   "Bankruptcy Court" means the United States Bankruptcy Court for the District of Nevada, or such other court as may from time to time have jurisdiction over the Chapter 11 Case.

1.13.   "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as heretofore or hereafter amended and the general, local and chambers rules and orders of the Bankruptcy Court.

1.14.   "Borrowers" means FX I and FX II.

1.15.   "Business Day" means a day, other than a Saturday, Sunday, or other day on which commercial banks in New York City, United States of America, Stuttgart, Munich, Hanover or

9

Mainz, Federal Republic of Germany or London, England are authorized or required by law to close.

1.16.   "Cash" means legal tender of the United States of America, which may be conveyed by check or wire transfer.

1.17.   "Causes of Action" means any Claim, Avoidance Action, cause of action, controversy, demand, right,  action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

1.18.   "Chapter 11 Case" means the chapter 11 case filed by Debtor as set forth in the caption to this Plan.

1.19.   "Chapter 11 Expenses" shall have the meaning ascribed to such term in the Interim Cash Collateral Order and in the Final Cash Collateral Order.

1.20.   "Chapter 11 Reserves" shall have the meaning ascribed to such term in the Interim Cash Collateral Order and the Final Cash Collateral Order but shall also include the Wind Down Budget.

1.21.   "Claim" has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.22.   "Claim Objection Deadline" means one (1) year from the Effective Date for all Claims.

1.23.   "Claims Register" means the official register of Claims and Interests maintained by Debtor.

1.24.   "Class" means a class of Holders of Claims or Interests as described in Article II of the Plan.

1.25.   "Co-Lender Agreement" means that certain Co-Lender Agreement, dated as of July 6, 2007, by and between Münchener Hypothekenbank eG, in its capacity as a Note A Holder and the Note B Holder, Deutsche Hypothekenbank (Actien-Gesellschaft), in its capacity as a Note A

10

Holder, Great Lakes Reinsurance (UK) PLC, as a successor in interest in part to MHB, in its capacity as a Note A Holder, Landesbank Baden-Württemberg, as a successor in interest to in part to MHB and Deutsche Hypo, in its capacity as a Note A Holder, and LBBW (as successor-in-interest to Credit Suisse, Cayman Islands Branch), in its capacity as Administrative Agent and Collateral Agent.

1.26.   "Committee" means any Official Committee of Unsecured Creditors that may be appointed by the United States Trustee in this Chapter 11 Case.

1.27.   "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

1.28.   "Confirmation Date" means the date upon which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

1.29.   "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.30.   "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code, which shall be in form and substance reasonably acceptable to Debtor, First Lien Lenders and New Borrower and shall provide, *inter alia*, that the Mortgage shall be recorded in Clark County Nevada on the Effective Date and shall constitute a valid first priority Lien over the Properties subject only to Permitted Encumbrances.

1.31.   "Creditor" means a Holder of a Claim.

1.32.   "Cure" means the payment of Cash by Debtor, or the Distribution of other property and the performance of any other obligations as the parties may agree or the Bankruptcy Court may order necessary to cure defaults under an executory contract or unexpired lease of Debtor that are required to allow Debtor to assume, or to assume and assign that contract or unexpired lease under section 365(a) of the Bankruptcy Code.

1.33.   "Cure Bar Date" means the deadline for filing requests for payment of Cure, which shall be fifteen (15) days after the filing of the Plan Supplement**.**

1.34.   "Debtor" means, FX Luxury Las Vegas, I, LLC, a Nevada limited liability company.

1.35.   "Debtor in Possession" means Debtor, as debtor-in-possession in the Chapter 11 Case, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

1.36.   "Debtor Parties" means the Borrowers and the Guarantor.

1.37.   "Debtor's Operating Account" means the FX I account at Bank of America (Account No. 004964929401).

1.38.   "Deposit" means the amount of two million two hundred thousand dollars ($2,200,000) deposited by New Borrower with, and held in escrow pursuant to the Escrow Agreement.

1.39.   "Disallowed Claim" means any Claim or portion thereof that has been disallowed by a Final Order of the Bankruptcy Court.

1.40.   "Disclosure Statement"  means the solicitation and disclosure statement for this Plan, including all exhibits and schedules thereto.

1.41.   "Disputed Claim" means: (a) any Claim or portion of a Claim (including any Administrative Claim, Priority Claim or Other Secured Claim) listed in the Schedules as disputed, contingent or unliquidated; or (b) any Claim, as to which an objection to the allowance thereof has been filed with the Bankruptcy Court within any time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or an order of the Bankruptcy Court, which objection has not been settled, withdrawn, or determined, in whole or in part, by a Final Order.

1.42.   "Distribution" means any distribution made by the Distribution Agent pursuant to the terms of this Plan.

1.43.   "Distribution Agent" means Debtor, or the Entity or Entities chosen by Debtor with the consent of First Lien Agent to make or to facilitate Distributions pursuant to this Plan.

1.44.   "Distribution Record Date" means the Confirmation Date unless the Bankruptcy Court establishes a different date for the Distribution Record Date in the Confirmation Order.

1.45.   "Effective Date" means the first Business Day on which the conditions specified in Article XI of this Plan have been satisfied in full or waived.

1.46.   "Effective Date Amount" means the sum of the New Secured Loan Reserves and the Paydown Amount.

1.47. "Effective Date Cash Distributions" means the Distributions of Available Funds made in accordance with Section 4.1 and Annex I hereof.

1.48. "Effective Date Funds Flow Memorandum" means a memorandum, in form and substance reasonably acceptable to First Lien Lenders, Debtor and New Borrower, which shall include a statement of: (a) the principal balance of the New Secured Loan and the exit fee payable in connection therewith, (b) the calculation and recipients of any Distributions hereunder, including any Effective Date Cash Distributions, and (c) the Retained Chapter 11 Reserves, which memorandum shall be Filed five (5) days prior to the Effective Date with a final reconciliation thereto to be Filed thirty (30) days after the Effective Date.

1.49. "Entity" has the meaning as set forth in section 101(15) of the Bankruptcy Code.

1.50. "Equity Sponsors" means Robert F.X. Sillerman, Paul C. Kanavos, Brett Torino and, to the extent they have become an Equity Sponsor within the meaning of the Lock Up and Plan Support Agreement, The Huff Alternative Fund, L.P. (or an affiliate of such Entity that is reasonably acceptable to First Lien Lenders).

1.51. "Equity Sponsor Commitment" means that certain Equity Sponsor Commitment Letter attached as Exhibit F to the Disclosure Statement, as it may be amended in accordance with its terms.

1.52. "Escrow Agent" shall have the meaning ascribed to such term in the Escrow Agreement.

1.53. "Escrow Agreement" means that certain Second Amended and Restated Escrow Agreement, by and between Debtor, New Borrower, LBBW and Escrow Agent, dated as of April 16, 2010.

1.54. "Estate" means the estate of Debtor that was created by the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include any and all privileges and incorporeal hereditaments of Debtor and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, avoidance powers or extensions of time that Debtor or the estate shall have had effective as of the Petition Date or thereafter, whether by virtue of sections 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code or otherwise.

13

1.55.   "Excess Funded Cash" shall have the meaning ascribed to such term in the Interim Cash Collateral Order and the Final Cash Collateral Order.

1.56.   "Excess Post-Effective Date Cash" means any Cash that is acquired by and to be transferred to New Borrower pursuant to the terms of <u>Sections 4.10, 5.6 or 5.8</u> hereof.

1.57.   "Excluded Contract" means any expired lease or contract, or any unexpired lease or contract that has been rejected or is the subject of a pending motion for rejection or has been designated in the Plan Supplement (or in any other contract, instrument, stipulation, settlement, release, or other agreement or document entered into in connection with this Plan) as a contract or lease that is not to be assumed and assigned to New Borrower.

1.58.   "Fee Cap" means an amount not to exceed one million two hundred fifty thousand dollars ($1,250,000), for the entire duration of the Chapter 11 Case.

1.59.   "Fee Claim" means any Claim for compensation or reimbursement of fees and expenses as may be requested by a Professional to the extent such Professional is required to apply to the Bankruptcy Court for payment of such Claim pursuant to sections 326, 328, 330 or 331 of the Bankruptcy Code and the terms of this Plan.

1.60.   "File" means to file with the Bankruptcy Court in the Chapter 11 Case.

1.61.   "Final Cash Collateral Order" means the Bankruptcy Court order entitled, Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing the Debtor to Use Cash Collateral and (II) Granting Adequate Protection, as entered by the Bankruptcy Court.

1.62.   "Final Decree" means an order of the Bankruptcy Court closing the Chapter 11 Case pursuant to section 350 of the Bankruptcy Code.

1.63.   "Final Order" means an order or judgment entered by the Bankruptcy Court: (a) that has not been reversed, stayed, modified, amended, revoked, varied or set aside, and as to which (i) any right to appeal or seek certiorari, review, reargument, stay or rehearing has been waived or (ii) the time to appeal or seek certiorari, review, reargument, stay or rehearing has expired and no appeal or petition for certiorari, review, reargument, stay or rehearing is pending; or (b) as to which an appeal has been taken or petition for certiorari, review, reargument, stay or rehearing has been

filed and (i) such appeal or petition for certiorari, review, reargument, stay or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay or rehearing was sought and (ii) the time to appeal further or seek certiorari, review reargument, stay or rehearing has been waived or expired and no such further appeal or petition for certiorari, review, reargument, stay or rehearing is pending *provided, however*, that no order or judgment shall fail to be a "Final Order" hereunder solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code, Rule 59 or 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be Filed with respect to such order or judgment.

1.64. "First Lien Agent" means LBBW as successor-in-interest to Credit Suisse, Cayman Islands Branch.

1.65. "First Lien Credit Agreement" means that certain Amended and Restated Credit Agreement, dated as of July 6, 2007, among Borrowers, Guarantor, First Lien Lenders and Credit Suisse, Cayman Islands Branch, and Credit Suisse Securities (USA) LLC, as further amended, modified or supplemented.

1.66. "First Lien Lenders" means the banks and financial institutions party to the First Lien Credit Agreement or any permitted assignee or other transferee thereof.

1.67. "First Lien Loan" means the two tranche senior Secured first priority loans made by First Lien Lenders pursuant to the First Lien Credit Agreement.

1.68. "First Lien Loan Documents" means the definitive loan documents evidencing the First Lien Loan.

1.69. "First Lien Secured Claims" means the Claims held by First Lien Lenders, which Claims are Secured by first priority Liens and security interests in all of Debtor's Assets.

1.70. "FX I" means FX Luxury Las Vegas I, LLC, a Nevada limited liability company, formerly known as Metroflag BP, LLC or Debtor.

1.71. "FX II" means FX Luxury Las Vegas II, LLC, a Nevada limited liability company, formerly known as Metroflag Cable, LLC, which was merged into Debtor pre-petition.

1.72. "General Unsecured Claim" means any Claim against Debtor in this Chapter 11

Case, other than an Unclassified Claim, Priority Claim, First Lien Secured Claim or Other Secured Claim.

    1.73.   "Guarantor" means Las Vegas Parent.

    1.74.   "Holder" means any Person or Entity that is the owner of a Claim or Interest in the Chapter 11 Case.

    1.75.   "Impaired" means with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

    1.76.   "Intercreditor Agreement" means that certain Amended and Restated Intercreditor Agreement, dated as of July 6, 2007 by and between Borrowers, Guarantor, First Lien Agent and Second Lien Agent.

    1.77.   "Interest" means any: (a) equity security, including all membership interests together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto and (b) partnership, limited liability company or similar interest.

    1.78.   "Interest Reserve" shall have the meaning ascribed to such term in the Interim Cash Collateral Order and the Final Cash Collateral Order.

    1.79.   "Interim Cash Collateral Order" means the Bankruptcy Court order entitled Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362 and 363 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing the Debtors to Use Cash Collateral and (II) Granting Adequate Protection, as entered by the Bankruptcy Court.

    1.80.   "Internal Revenue Code" means Title 26 of the United States Code, 26 U.S.C. §§ 1–9833.

    1.81.   "Las Vegas Parent" means FX Luxury Las Vegas Parent, LLC, a Delaware limited liability company formerly known as BP Parent, LLC which was merged into Debtor pre-petition.

    1.82.   "LBBW" means Landesbank Baden-Wurttemberg, New York Branch.

    1.83.   "Lenders' Fees" means the costs and expenses of First Lien Agent and First Lien Lenders (including those of their respective counsel and other advisors) incurred after the Petition Date in connection with the Chapter 11 Case and any Operative Document.

1.84.   "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.85.   "Lock Up and Plan Support Agreement" means that certain Lock Up and Plan Support Agreement dated as of October 27, 2009 by and among First Lien Lenders, First Lien Agent, Borrowers, Guarantor and New Borrower, as amended by that certain First Amendment to Lock Up and Plan Support Agreement, dated as of April 16, 2010, attached as Exhibit E to the Disclosure Statement, as it may be further amended from time to time in accordance with the terms thereof.

1.86.   "MHB" shall mean Münchener Hypothekenbank eG.

1.87.   "Mortgage" shall have the meaning ascribed to such term in the New Secured Loan Documents.

1.88.   "New Borrower" means LIRA Property Owner, LLC, a Delaware limited liability company, 100% owned by New Parent and controlled by the Equity Sponsors.

1.89.   "New Borrower Budget" means a budget to be reasonably agreed by New Borrower and First Lien Lenders, which shall provide for operating expenses to be incurred by New Borrower for the remainder of the month in which the Effective Date occurs (to the extent such amounts have not been paid pursuant to the Final Cash Collateral Order or this Plan).

1.90.   "New Entities" means New Borrower and New Parent.

1.91.   "New Parent" means LIRA, LLC, a Delaware limited liability company, and controlled by the Equity Sponsors.

1.92.   "New Secured Loan" means a new secured loan, on terms and conditions set forth in the New Secured Loan Documents.

1.93.   "New Secured Loan Documents" means the definitive loan documents evidencing the New Secured Loan between New Borrower and First Lien Lenders, attached as exhibits to the Plan Funding Agreement, which is attached as Exhibit G to the Disclosure Statement, with any material modifications or additional documents to be included and filed as part of the Plan Supplement.

1.94.   "New Secured Loan Reserves" means a reserve of two million dollars ($2,000,000) for interest payments and a reserve of (x) one million three hundred fifty thousand dollars

17

($1,350,000) plus (y) the difference between ((1) six hundred fifty thousand dollars ($650,000) and (2) the Overhead Amount) for capital expenditures, each as further described in the New Secured Loan Documents, which amounts shall be held by New Borrower in accounts pledged for the benefit of the lenders under the New Secured Loan.

1.95.    "Notice of Confirmation" means that certain notice pursuant to Bankruptcy Rule 3020(c)(2) notifying Holders of Claims and Interests that the Bankruptcy Court has confirmed this Plan.

1.96.    "Operative Document" means any contract, instrument, release, settlement agreement or other agreement or document, if any, that is reasonably necessary to effectuate and implement the transactions provided for in this Plan.

1.97.    "Opex Holdback" shall have the meaning ascribed to such term in the Interim Cash Collateral Order and the Final Cash Collateral Order.

1.98.    "Other Secured Claim" means a Secured Claim against Debtor, other than a First Lien Secured Claim, which is either senior to or *pari passu* with the First Lien Secured Claims. The Claims arising under the Second Lien Credit Agreement are not Secured Claims and shall not constitute Other Secured Claims.

1.99.    "Outside Date" means August 10, 2010 or such other date as Debtor, First Lien Lenders and New Borrower may agree to in a writing executed by all such parties.

1.100. "Overhead Amount" means the amount New Borrower advances with respect to salaries and general overhead from the Petition Date until the Effective Date for New Borrower or New Parent or Debtor's parent or ultimate parent, but not for Debtor, in an amount not to exceed one hundred thirty thousand dollars ($130,000.00) per month and six hundred fifty thousand dollars ($650,000.00) in the aggregate during the Chapter 11 Case.

1.101. "Paydown Amount" means twelve million and eight hundred thousand dollars ($12,800,000).

1.102. "Permitted Advisory Fees" means Professional Fees in an amount not to exceed the Fee Cap.

1.103. "Permitted Encumbrances" shall have the meaning ascribed to such term in the New

Secured Loan Documents.

1.104. "Person" means any individual, corporation, partnership, limited liability company, joint venture, association, trust or organization, or other "person" as defined in section 101(41) of the Bankruptcy Code as well as any governmental agency, governmental unit or political subdivision.

1.105. "Petition Date" means the date this Chapter 11 Case was commenced by Debtor.

1.106. "Plan" means this chapter 11 plan of liquidation, including all documents referenced herein and all exhibits, supplements, appendices and schedules hereto or thereto, either in its present form or as the same may be altered, amended or modified from time to time pursuant to the Bankruptcy Code or Final Order.

1.107. "Plan Funding Agreement" means the Plan Funding Agreement attached as Exhibit G to the Disclosure Statement, as amended from time to time in accordance with its terms.

1.108. "Plan Supplement" means a compilation of documents supplementing and giving effect to the terms to this Plan, which shall be: (a) Filed no later than the Plan Supplement Filing Date, and (b) in a form and substance acceptable to Debtor, First Lien Agent and New Borrower. The Plan Supplement shall include: (i) a schedule of Assigned Contracts and the Debtor's proposed respective Cure amounts (if any) and (ii) any information required for confirmation of this Plan pursuant to the terms of the Bankruptcy Code, including a list of individuals referenced in section 1129(a)(5)(A)(i).

1.109. "Plan Supplement Filing Date" means twenty-five (25) days prior to the Confirmation Hearing. Debtor, with the consent of First Lien Agent, reserves the right to submit amended or revised versions of the Plan Supplement up to the Confirmation Date.

1.110. "Priority Claim" means an Allowed Claim entitled to priority under sections 507(a)(2) through (7) of the Bankruptcy Code.

1.111. "Priority Claims Bar Date" means the deadline for filing requests for payment of Priority Tax Claims and Priority Claims, which shall be no later than twenty-five (25) days prior to the date of the Confirmation Hearing for all Claims; *provided*, *however*, that with respect to any governmental unit the Priority Claims Bar Date shall not be earlier than one hundred eighty (180)

1    days after the Petition Date, and *provided*, *further*, Professional Fees and Lenders' Fees shall not be

2    subject to such bar date.

3        1.112. "Priority Tax Claims" means any Allowed Claim that is entitled to priority under

4    section 502(i) or section 507(a)(8) of the Bankruptcy Code.  Priority Tax Claims do not include *ad*

5    *valorem* tax Claims if such Claims under applicable state law are Secured by a Lien on Debtor's

6    Assets.

7        1.113. "Pro Rata" means, with respect to an amount of Cash or other consideration to be

8    paid or distributed on a particular date to a Holder of an Allowed Claim, that such Distribution shall

9    be made in accordance with the ratio, as of such date, of the amount such Allowed Claim is to the

10   aggregate of the amounts of Claims in the Class to which such Allowed Claim belongs.

11       1.114. "Professional" means an Entity: (a) employed pursuant to a Bankruptcy Court order

12   in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for

13   services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or

14   331 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy

15   Court pursuant to section 503(b)(4) of the Bankruptcy Code.

16       1.115. "Professional Fees" means all reasonable fees and expenses incurred by Debtor's

17   Professionals.

18       1.116. "Proof of Claim" means a proof of Claim Filed against Debtor in the Chapter 11

19   Case.

20       1.117. "Properties" means approximately 17.71 contiguous acres of land located on the

21   "Las Vegas Strip" at the southeast corner of Las Vegas Boulevard and Harmon Avenue in Las

22   Vegas, Nevada that is owned by Debtor, together with all improvements thereon and fixtures

23   attached thereto and rights, easements and other *in rem* rights appurtenant thereto.[1]

24       1.118. "Released Liabilities" means, with respect to a given Releasor, all claims,

25   obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities

26

27         [1] The Properties are comprised on contiguous parcels of land, identified by the Assessor's
Office for Clark County, Nevada as Assessor Parcel Numbers 162-21-301-001, 162-21-301-003,

28   162-21-301-009, 162-21-301-014, 162-21-301-016, 162-21-301-017, 162-21-301-018, 162-21-301-019 and 162-21-301-020.

based on any act, omission, transaction, event or other occurrence (other than rights to enforce the terms of this Plan or any related document or agreement), whether known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that arose prior to the Effective Date and relate to this Plan, the Chapter 11 Case, the Lock Up and Plan Support Agreement or First Lien Loan, which could have been asserted by such Releasor (or on behalf of Debtor or its Estate) against any Releasee or any of its Representatives.

1.119. "Representatives" means, with respect to a given Person, its past and current directors, officers, employees, agents, attorneys, professionals, advisors, trustees, consultants, accountants, contractors and other representatives.

1.120. "Releasees" means each of Debtor, Distribution Agent, First Lien Agent, First Lien Lenders, New Borrower, New Parent and Equity Sponsors and any past or current shareholders, subsidiaries, partners, members or affiliates of the aforementioned parties.

1.121. "Releasors" means each of Debtor, Distribution Agent, First Lien Agent, First Lien Lenders, New Borrower, New Parent and Equity Sponsors and any past or current shareholders, subsidiaries, partners, members or affiliates of the aforementioned parties.

1.122. "Retained Chapter 11 Reserves" means Chapter 11 Reserves which shall be retained by Debtor after the Effective Date to be used to satisfy Chapter 11 Expenses that have accrued prior to the Effective Date, or which, in the reasonable judgment of First Lien Agent, New Borrower and Debtor are likely to accrue prior to the Final Decree, in either case excluding Professional Fees in excess of the Fee Cap.

1.123. "Sale" means the sale of the Properties, any of Debtor's unexpired leases then in effect, any Cash in the Security Deposit Account, and any miscellaneous other items agreed to or negotiated by the parties but excluding all Cash (except for any Cash in the Security Deposit Account) and Causes of Action, pursuant to a purchase and sale agreement, the Auction and Bidding Procedures Order and the Sale Order, each of which shall be in form and substance reasonably satisfactory to Debtor and First Lien Agent, for an amount not less than two hundred fifty-six million dollars ($256,000,000), net of brokerage fees, expenses and closing costs.

1.124. "Sale Motion" means the motion seeking approval of the Sale.

1      1.125. "Sale Order" means the order of the Bankruptcy Court approving the Sale Motion.

2      1.126. "Schedules" means the schedules of Assets and liabilities, the list of Holders of

3  Interests and the statements of financial affairs Filed by Debtor under section 521 of the Bankruptcy

4  Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the

5  Confirmation Date.

6      1.127. "Second Lien Credit Agreement" means that certain Amended and Restated Credit

7  Agreement, dated July 6, 2007, as amended, supplemented or otherwise modified.

8      1.128. "Second Lien Agent" means Nexbank, SSB.

9      1.129. "Second Lien Lenders" means the lenders party to the Second Lien Credit

10  Agreement.

11      1.130. "Secured" means when referring to a Claim: (a) secured by a Lien on property in

12  which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to

13  applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to

14  section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in the

15  Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as

16  determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to this Plan

17  as a secured Claim.

18      1.131. "Security Deposit Account" means the restricted account to be established by Debtor

19  to hold security deposits received from tenants of the Properties.

20      1.132. "Travelodge Account" means the Metroflag Travelodge Checking Account at Bank

21  of America (Account No. 004961612371).

22      1.133. "Unclassified Claims" means Administrative Claims and Priority Tax Claims.

23      1.134. "Wind Down Budget" means a budget reasonably acceptable to Debtor, New

24  Borrower and First Lien Agent, in connection with the orderly liquidation of the Chapter 11 Case

25  and to satisfy any amounts reasonably likely to accrue after the Effective Date but prior to the Final

26  Decree.  In no event shall the Wind Down Budget exceed one hundred thousand dollars ($100,000).

27  **B.      Rules of Interpretation.**

28      Any term used in this Plan that is not defined in this Plan, either in this <u>Article I</u> or

LV1 1188730v1 04/21/10

elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules, has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules. For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) to the extent a reference or description in this Plan to an Operative Document is inconsistent with the terms or conditions of that Operative Document, the terms and conditions of the Operative Document shall govern over the reference or description contained in this Plan; (c) any reference in this Plan to an existing document, schedule, Operative Document, or exhibit Filed or to be Filed means such document, schedule, Operative Document, or exhibit, as it may have been or may be amended, modified, or supplemented as of the Confirmation Date in accordance with the terms hereof; (d) unless otherwise specified in a particular reference, all references in this Plan to Sections, Articles, and exhibits are references to Sections, Articles, and exhibits of or to this Plan; (e) the words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan in its entirety rather than to only a particular portion of this Plan; (1) the word "all" shall mean "any and all"; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply, including that the terms "includes", "shall include", and "including" are not limiting; (i) reference to a pleading, request, or document being "Filed" means duly and properly filed with the Bankruptcy Court as reflected on the docket of the Bankruptcy Court; (j) all exhibits and schedules to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when they are Filed; (k) any service or notice provided for in this Plan shall be provided at the addresses specified in Article XIII hereof; (1) except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent the exhibits or Operative Documents provide otherwise, the rights, duties and obligations under this Plan shall be governed, construed and enforced in accordance with the laws of the State of Nevada; and (m) to the extent a reference or description in the Disclosure Statement to this Plan or an Operative Document is inconsistent with the terms or conditions of this Plan or Operative Document, the terms and conditions of this Plan or Operative Documents, as applicable, shall

govern over the reference contained in the Disclosure Statement.

## ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

2.1     Introduction.  All Claims and Interests, except Administrative Claims (including Fee Claims) and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

2.2.     Unclassified Claims.

(a)     Administrative Claims.

(i)     General Provisions.  Subject to the provisions of sections 330(a), 331 and 503(b) of the Bankruptcy Code, each Holder of an Administrative Claim shall, either:

A.     to the extent there are sufficient Available Funds, be paid in Cash in the Allowed amount of any such Claim on, or as soon as reasonably practicable after, the later of (a) the Effective Date, (b) the date upon which such Administrative Claim becomes Allowed, or (c) such date as is otherwise agreed by Debtor, First Lien Agent and the Holder of such Claim; or

B.     have such Claim assumed by New Borrower, to be paid by New Borrower in Cash in the Allowed amount of any such Claim on, or as soon as reasonably practicable after, the later of (a) the date upon which such Administrative Claim becomes Allowed, (b) the date on which such Administrative Claim becomes due in the ordinary course of business, or (c) such date as is otherwise agreed by Debtor, New Borrower and the Holder of such Claim.

Notwithstanding the foregoing or anything to the contrary in this Plan: (1) Debtor shall pay, or cause to be paid, all accrued fees payable under 28 U.S.C. § 1930 on or before

24

the Effective Date of the Plan; (2) all final applications for Fee Claims constituting amounts due for services rendered on or before the Effective Date shall be Filed no later than twenty (20) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court; (3) following the Effective Date, Debtor shall be responsible for timely payment of all United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Final Decree closing this Chapter 11 Case is entered and all quarterly fees due as of the Confirmation Date are paid in full; (4) no amounts shall be paid on account of Professional Fees that are not Permitted Advisory Fees; (5) all unpaid Lender's Fees accrued as of the Effective Date shall be paid in full by Debtor or New Borrower on the Effective Date and shall not be assumed by New Borrower.  Notwithstanding anything to the contrary herein, Debtor shall File with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the Chapter 11 Case remains open in such format as reasonably may be required by the United States Trustee.

        (b)     <u>Priority Tax Claims</u>.  The legal and equitable rights of the Holders of Priority Tax Claims are unaltered by this Plan.  Each Holder of an Allowed Priority Tax Claim shall, subject to <u>Section 5.5</u> hereof, either: (i) to the extent there is sufficient Available Funds, be paid the Allowed amount of such Claim in Cash on the Effective Date, (ii) have such Claim assumed by New Borrower, to be paid by New Borrower in Cash in the Allowed amount of any such Claim on the date on which such Claim is payable under applicable law or any agreement relating thereto; or (iii) receive such other treatment as is agreed by the Holder of the Allowed Priority Tax Claim, Debtor, First Lien Lenders and New Borrower.

    2.3.    <u>Classified Claims and Interests</u>.

        (a)     <u>Class 1:  Priority Claims.</u>

           (i)     *Claims in Class*:  Class 1 consists of Priority Claims against Debtor.

           (ii)     *Treatment*:    The legal and equitable rights of the Holders of Allowed Priority Claims are unaltered by this Plan.  Each Holder of an Allowed Priority Claim shall, either: (i) to the extent there are sufficient Available Funds, be paid the Allowed amount of such Claim in Cash on the Effective Date, (ii) have such Claim assumed by New Borrower, to be

paid by New Borrower in Cash in the Allowed amount of any such Claim on the date on which such Claim is payable under applicable law or any agreement relating thereto; or (iii) receive such other treatment as is agreed by the Holder of the Allowed Priority Claim, Debtor, First Lien Agent and New Borrower.

(iii)    *Impairment and Voting*:  Class 1 is not Impaired and the Holders of Allowed Priority Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 are not entitled to vote to accept or reject this Plan.

(b)    <u>Class 2:  Other Secured Claims</u>.

(i)    *Claims in Class*:  Class 2 consists of Other Secured Claims against Debtor.

(ii)    *Treatment*:  Holders of Allowed Other Secured Claims shall have such Claim reinstated pursuant to section 1124(2) of the Bankruptcy Code and/or assumed by New Borrower such that the Claim is rendered unimpaired, except to the extent that the Holder agrees to less favorable treatment thereof.  The failure of Debtor or any other party-in-interest (including New Borrower) to File an objection, prior to the Effective Date, with respect to any Other Secured Claim that is reinstated under the Plan shall be without prejudice to the rights of New Borrower or any other party-in-interest (including First Lien Lenders) to contest or otherwise defend against such Claim in an appropriate forum (including the Bankruptcy Court, if applicable) when and if such Claim is sought to be enforced.  Any Cure amount that Debtor may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such reinstated Other Secured Claim shall be paid on, or as soon as practicable after, the latest of (x) the Effective Date, (y) the date on which such Other Secured Claim becomes Allowed, or (z) such other date as mutually may be agreed to by and among such Holder, First Lien Agent and Debtor.

(iii)    *Impairment and Voting*:  Class 2 is not Impaired and the Holders of Allowed Other Secured Claims are conclusively deemed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 2 are not entitled to vote to accept or reject this Plan.

(c)    Class 3:  First Lien Secured Claims.

(i)    *Claims in Class*:  Class 3 consists of First Lien Secured Claims against Debtor.  All amounts owed under the terms of First Lien Credit Agreement, including post-petition interest at the rate prescribed in the Lock Up and Plan Support Agreement, shall be treated as Allowed Secured Claims under the Plan.  All Claims of First Lien Lenders for payment of fees and expenses to which they are entitled under the First Lien Credit Agreement or otherwise shall be treated as Allowed Class 3 Claims hereunder.

(ii)    *Treatment*:  All amounts owed to First Lien Lenders shall be treated as Allowed Secured Claims.  On the Effective Date, each lender under the First Lien Credit Agreement shall, in full satisfaction, settlement, release and exchange for such Allowed First Lien Secured Claims, receive a Pro Rata Distribution of Cash in an amount equal to: (a) the Paydown Amount; *plus* (b) the Deposit; *plus* (c) any unpaid Lender's Fees through and including the Effective Date (including a reasonable estimation thereof); *plus* (d) any Effective Date Cash Distributions payable to First Lien Lenders as set forth in the Effective Date Funds Flow Memorandum.  In addition, New Borrower, First Lien Agent and First Lien Lenders shall execute and deliver the New Secured Loan Documents, which shall be deemed an additional Distribution to the lenders under the First Lien Credit Agreement, on account of a partial repayment of the First Lien Secured Claims against Debtor.  Any funds which were received by the Holders of Class 3 Claims during the Chapter 11 Case on account of adequate protection payments pursuant to the terms of the Interim Cash Collateral Order or the Final Cash Collateral Order shall also be retained by the Holders of such Claims as Distributions in further satisfaction of such Class 3 Claims.

(iii)    *Impairment and Voting*:  Class 3 is Impaired.  Holders of Class 3 Claims are entitled to vote to accept or reject this Plan.

(iv)    *Co-Lender Issues:* Notwithstanding anything else contained herein, all Distributions received by Holders of Class 3 Claims shall be subject to the terms and conditions of the Co-Lender Agreement, which agreement shall remain in full force and effect and shall be unaltered by the terms of this Plan.

(d)    Class 4:  General Unsecured Claims.

27

(i)  *Claims in Class*:  Class 4 consists of General Unsecured Claims (including the Second Lien Lenders' Claims) against Debtor.

(ii)  *Treatment*:  Holders of Class 4 General Unsecured Claims shall not receive any Distribution under this Plan.  Upon the Effective Date, all General Unsecured Claims shall be released without further action by Debtor or notice to Holders of General Unsecured Claims being necessary.

(iii)  *Impairment and Voting*:  Class 4 is Impaired and will be deemed to reject this Plan.

(e)  Class 5:  Interests.

(i)  *Claims in Class*:  Class 5 consists of all Interests held in Debtor.

(ii)  *Treatment*:  Holders of Class 5 Interests shall not receive any Distribution under this Plan.  Upon the Effective Date, all Interests held in Debtor shall be extinguished and cancelled without further action by Debtor or notice to Holders of Interest being necessary.

(iii)  *Impairment and Voting*:  Class 5 is Impaired and will be deemed to reject this Plan and therefore not entitled to vote on this Plan.

2.4.  Retention of Defenses Regarding Claims.  Except as otherwise provided in (i) this Plan, (ii) the Lock Up and Plan Support Agreement, and (iii) the Final Cash Collateral Order, nothing shall affect Debtor's rights and defenses, both legal and equitable, with respect to any Claims (other than Claims in Class 3).

2.5.  Voting By Impaired Classes.  Only members of Class 3 (First Lien Lenders Secured Claim) will be required to vote to reject or accept this Plan.

2.6.  First Lien Lender Proofs of Claim.  First Lien Lenders shall not be required to File a Proof of Claim with respect to their Claims, all of which shall be deemed to be Allowed.

2.7.  Disputed, Contingent and Unliquidated Claims and Interests.  Subject to Section 2.6 above, any Claim or Interest that has been or is hereafter listed in the Schedules as disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely Filed, is not considered Allowed and shall be expunged without further action by Debtor and without any

28

further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE III

## ACCEPTANCE OR REJECTION OF THIS PLAN

3.1     <u>Acceptance by an Impaired Class</u>.    In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall be deemed to have accepted this Plan if this Plan is accepted by the Holders of at least two-third (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject this Plan.

3.2.     <u>Summary of Classes Voting on this Plan</u>.    Only the votes of Holders of Claims of Class 3 (First Lien Lenders Secured Claim) will be solicited with respect to this Plan.   Holders of Claims in Class 1 and Class 2 shall be deemed to accept the Plan and Holders of Claims and Interests in Classes 4 and 5 will be deemed to have rejected the Plan.

3.3     <u>Tabulation of Votes</u>.    Debtor will tabulate all votes on this Plan for the purpose of determining whether this Plan satisfies Bankruptcy Code sections 1129(a)(8) and (10).

## ARTICLE IV

## PLAN IMPLEMENTATION

4.1.     <u>Plan Implementation</u>.    This Plan shall be implemented in all respects in a manner that is consistent with the terms and conditions of the Lock Up and Plan Support Agreement, the Plan Funding Agreement, the Final Cash Collateral Order and the requirements of section 1123(a) and other applicable provisions of the Bankruptcy Code.   Without limiting the generality of the foregoing, all Available Funds shall be distributed or applied in the manner necessary to satisfy the costs, expenses and entitlements outlined in <u>Annex I</u> hereto in the order of priority specified therein on the Effective Date as provided in the Effective Date Funds Flow Memorandum.

4.2.     <u>Transfer of Assets</u>.    On the Effective Date (or, with respect to the Excess Post-Effective Date Cash, on such later date as is applicable hereunder), Debtor shall irrevocably transfer and assign the Acquired Assets to New Borrower, in exchange for New Borrower's entry into the New Secured Loan, the Distributions of Cash set forth in <u>Section 2.3(c)(ii)</u> above and simultaneously therewith the Mortgage shall be recorded in Clark County, Nevada.   Except as

29

expressly agreed to otherwise by Debtor and New Borrower or as provided in this Plan or the New Secured Loan Documents, the Acquired Assets will be transferred free and clear of all Liens (except for the Mortgage and any Liens for *ad valorem* taxes not yet due and payable and Permitted Encumbrances) and Claims (other than Claims which have been assumed by New Borrower), but subject to easements, restrictions, conditions and limitations of record that affected the title to the Properties as of the Petition Date, any Liens securing Other Secured Claims that are reinstated or assumed by New Borrower, and any such matters arising after the Petition Date which have been approved by First Lien Agent and New Borrower.  The Confirmation Order shall, among other things, constitute an Order authorizing Debtor to execute and deliver the Operative Documents (to the extent they have not already been executed and delivered) and to transfer all of the Estate's interests in the Acquired Assets to New Borrower without requiring any further corporate authorizations and notwithstanding the requirements otherwise applicable under any applicable non-bankruptcy law.  The Confirmation Order shall, among other things, provide that: (i) New Borrower has acted in good faith and has paid fair consideration and reasonably equivalent value for the Acquired Assets transferred hereby; (ii) First Lien Lenders have acted in good faith and that the Distributions received by First Lien Lenders shall not be subject to avoidance, turnover or disgorgement in any subsequent insolvency proceeding by any Entity; and (iii) the Mortgage constitutes a valid first priority Lien, subject only to any Permitted Encumbrances. Notwithstanding anything else contained herein, if the Bankruptcy Court shall order that any Avoidance Actions (or proceeds thereof) shall be the property of the Debtor's unsecured creditors or that such unsecured creditors shall be solely entitled to pursue or enjoy the benefit of such actions or proceeds, then no such Avoidance Actions shall be transferred to New Borrower on the Effective Date, nor will they be sold to any purchaser pursuant to any Sale.

     4.3.   <u>Assumption of Liabilities</u>.  On the Effective Date, unless such Claims shall be paid on or prior to such date, New Borrower shall be deemed to have assumed any Claim that is an Administrative Claim, a Priority Tax Claim or a Priority Claim (including any such Claims that are Disputed Claims or with respect to which any applicable period for asserting a Claim has not expired), and all Other Secured Claims will be reinstated and assumed by New Borrower pursuant

to and in accordance with the terms hereof.  New Borrower shall be obligated to honor and satisfy all such assumed or reinstated Claims solely if and to the extent such Claims are Allowed Claims or become Allowed Claims.  The failure of Debtor or any other party-in-interest (including New Borrower) to File an objection, prior to the Effective Date, with respect to any Other Secured Claim that is reinstated under the Plan or with respect to any Claims that are assumed by New Borrower hereunder shall be without prejudice to the rights of New Borrower or any other party-in-interest (including First Lien Lenders) to contest or otherwise defend against such Claim in an appropriate forum (including the Bankruptcy Court, if applicable) when and if such Claim is sought to be enforced.  Except as set forth in the Operative Documents and this Plan, New Borrower shall have no liability for Claims against or Interests in Debtor (whether or not currently known) based on the transfer of the Acquired Assets, unless such Claims have expressly been assumed pursuant to the terms of this Plan.

4.4.    Dissolution of Debtor.  Following the transfers contemplated in Section 4.2 above, Debtor shall be dissolved.  Notwithstanding its dissolution, Debtor shall have all the power to wind up its affairs under applicable state laws in addition to all the rights, powers and responsibilities conferred by the Bankruptcy Code, this Plan and any Final Orders of the Bankruptcy Court.

4.5.    Cancellation of Interests.  On the Effective Date, Debtor's membership Interests shall be cancelled and be of no further force or effect, without any further action being required to effect such cancellation.  Following the cancellation of the Interests as required in this Section 4.5, the Holders of such Interests shall have no rights arising from or relating to such Interests or the cancellation thereof.

4.6.    Nondischarge and Injunction.

(a)    Nondischarge of Debtor.  Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Confirmation Order shall not discharge Claims against Debtor.  However, no Holder of a Claim against or Interest in Debtor may seek recourse against any Assets that are to be distributed under this Plan (except to the extent necessary to seek enforcement of their rights to any Distribution under this Plan).  As of the Effective Date, all Entities and Persons are precluded from asserting against any Assets that are to be distributed under this Plan any Claims, rights, Causes of

31

Action, liabilities or interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, other than as expressly provided in this Plan, the Confirmation Order or the Operative Documents, regardless of the filing, lack of filing, allowance or disallowance of such a Claim or Interest and regardless of whether such an Entity or Person has voted to accept this Plan.

(b)    <u>Injunction</u>. Except as otherwise provided in this Plan or the Confirmation Order, on and after the Effective Date all Entities and Persons that have held, currently hold or may hold a debt, Claim, other liability or Interest against or in Debtor that would be discharged upon Confirmation of this Plan on the Effective Date but for the provisions of section 1141(d)(3) of the Bankruptcy Code and <u>Section 4.6(a)</u> are permanently enjoined from taking any of the following actions on account of such debt, Claim, liability, Interest or right: (i) commencing or continuing in any manner any action or other proceeding on account of such debt, Claim, liability, Interest or right against Assets or proceeds thereof that are to be distributed under this Plan, other than to enforce any right to a Distribution with respect to such Assets or the proceeds thereof as provided under this Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against any Assets to be distributed to Creditors under this Plan, other than as permitted under subparagraph (i) above; and (iii) creating, perfecting or enforcing any Lien or encumbrance against any Assets to be distributed under this Plan, other than as permitted by this Plan.

On and after the Effective Date, each Holder of any Claim against or Interest in Debtor is permanently enjoined from taking or participating in *any* action that would interfere or otherwise hinder Debtor from implementing this Plan, the Confirmation Order or any Operative Documents in accordance with the terms thereof.

4.7.    <u>Exemption From Certain Transfer Taxes and Further Transactions</u>.    Pursuant to section 1146(a) of the Bankruptcy Code, the issuance or exchange of any security, or the making or delivery of any instrument of transfer under, in furtherance, or in connection with this Plan, including, but not limited to, any deeds, bills of sale, assignments or other instruments of transfer (including those with respect to the Properties), shall not be subject to any stamp tax, real estate

32

transfer tax or similar tax.

4.8.    <u>Final Decree</u>.  Notwithstanding otherwise applicable law, Debtor shall not request entry of the Final Decree, unless and until:

(a)    All adversary proceedings and contested matters pending before the Bankruptcy Court have been resolved by a Final Order;

(b)    All Claims have either: (i) become Allowed Claims and have been paid in accordance with the treatment to be given such Allowed Claim pursuant to this Plan; (ii) been disallowed by a Final Order or deemed to be a Disallowed Claim in accordance with the terms of this Plan; or (iii) been assumed by New Borrower or reinstated;

(c)    All Acquired Assets (other than the Excess Post-Effective Date Cash) have been transferred to New Borrower;

(d)    All Distributions to be made by Debtor to Holders of Allowed Claims shall have been made by the Distribution Agent in accordance with the requirements of this Plan; and

(e)    All funds remaining in any of the Retained Chapter 11 Reserves have either been disbursed for the purposes permitted hereunder or distributed to New Borrower.

4.9.    <u>Effectuating Documents, Further Transactions</u>.  On and after the Effective Date, Debtor and the agents, officers and members thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan in the name of and on behalf of Debtor, as applicable, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to this Plan.

4.10.    <u>Return of Excess Post-Effective Date Cash</u>.  On or prior to the date of the Final Decree, Debtor shall distribute to New Borrower: (i) any Excess Post-Effective Date Cash from the Retained Chapter 11 Reserves that were not required to satisfy accrued Professional Fees or other Chapter 11 Expenses prior to such date; and (ii) any other remaining Assets of Debtor, except to the extent that New Borrower, First Lien Agent and Debtor shall otherwise agree.

4.11.    <u>Adequate Protection Liens</u>.  As of the Effective Date, any replacement Liens granted

33

as adequate protection pursuant to the terms of the Interim Cash Collateral Order and the Final Cash Collateral Order shall be deemed to be eliminated and of no further force and effect.

## ARTICLE V

## PROVISIONS CONCERNING PLAN DISTRIBUTIONS

5.1.    <u>Distributions on Account of Claims Allowed as of the Effective Date</u>.  Distributions under this Plan on account of Claims Allowed on or before the Effective Date shall be made on the Effective Date.

5.2    <u>Distributions on Account of Claims Allowed After the Effective Date</u>.

(a)    <u>Payments and Distributions on Disputed Claims</u>.  In the event that there are Disputed Administrative Claims or Disputed Priority Claims requiring adjudication and resolution and such Claims have not become Allowed or Disallowed prior to the Effective Date then the obligation to satisfy such Claims will be assumed by New Borrower, subject to Allowance or Disallowance by the Bankruptcy Court.  Except as otherwise provided in this Plan, a Final Order, or as agreed to by First Lien Lenders, any Disputed Administrative Claim or Disputed Priority Claim that becomes Allowed after the Effective Date shall be satisfied or performed by New Borrower in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice.  No Claims of First Lien Lenders shall be treated as Disputed Claims under the terms of this Plan.

(b)    <u>Special Rules for Distributions to Holders of Disputed Claims</u>. Except as otherwise provided in this Plan and except as otherwise agreed by the relevant parties: (i) no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order, and (ii) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any Distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Claims have been Allowed; *provided*, *however*, that such provisions shall not apply to Distributions with respect to Claims in Class 3.

5.3.    <u>Manner of Payment Under this Plan</u>.  Distributions of Cash to be made by the Distribution Agent pursuant to this Plan shall be made, at the discretion of the Distribution Agent,

by check drawn on the Distribution Agent's bank account or by wire transfer from a domestic bank; *provided, however*, that Distributions to First Lien Lenders shall be made in such form as shall be requested by First Lien Agent.

5.4.    <u>Whole Dollars.</u>  Any other provision of this Plan to the contrary notwithstanding, no payments of cents will be made.  Whenever any payment of cents would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole dollar (up or down).

5.5.    [reserved]

5.6.    <u>Escheat</u>.  Holders of Allowed Claims shall have three (3) months from the check date to negotiate Distribution checks issued by the Distribution Agent under the terms of this Plan, otherwise payment on such checks may at the Distribution Agent's sole discretion be stopped and the funds shall escheat to the Distribution Agent and shall be promptly distributed to New Borrower (in accordance with section 347 of the Bankruptcy Code).

5.7.    <u>Delivery of Distributions</u>.

(a)    <u>Record Date for Distributions</u>.  On the Distribution Record Date, the Claims Register shall be closed and any Person responsible for making Distributions shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, if a Claim is transferred twenty or fewer days before the Distribution Record Date, the Distribution Agent shall make Distributions to the transferee only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

(b)    <u>Distribution Agent</u>.  The Distribution Agent shall make all Distributions required under this Plan.

(c)    <u>Delivery of Distributions in General</u>.  Notwithstanding any other provision of this Plan (including <u>Sections 5.7(a), 5.7(c) and 5.9</u> hereof), all Distributions of Cash or other consideration to Holders of Claims in Class 3 shall be made to First Lien Agent for the benefit of First Lien Lenders or as otherwise directed by First Lien Agent.  Except as otherwise provided in this Plan, and notwithstanding any authority to the contrary, Distributions to all other Holders of

Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Debtor as Distribution Agent: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) to the signatory set forth on any of the Proofs of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if Debtor has been notified in writing of a change of address); (c) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related Proof of Claim; (d) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Distribution Agent has not received a written notice of a change of address; or (e) on any counsel that has appeared in the Chapter 11 Case on the Holder's behalf, *provided, however*, that Distributions to First Lien Lenders shall be made to First Lien Agent for the benefit of First Lien Lenders. Except as otherwise provided in this Plan, Distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the Distributions in the manner set forth in this Plan. Absent willful misconduct or gross negligence, Debtor, First Lien Agent, First Lien Lenders and Distribution Agent, as applicable, shall not incur any liability on account of any Distributions made under this Plan.

5.8.    Returned Distributions. In the case of Distributions to the Holders of Allowed Claims that are returned to the Distribution Agent due to an incorrect or incomplete address, the Distribution Agent shall retain any such returned Distribution in a segregated account established by the Distribution Agent to keep track of any returned Distributions. Unless the Holder of the Allowed Claim relating to any such returned Distribution contacts the Distribution Agent (or its designee) within three (3) months from the date on which such Distribution was returned and provides the Distribution Agent (or its designee) with acceptable proof of identity and an accurate address, such Holder shall forfeit all rights thereto, and to any and all future Distributions or rights under this Plan. In such event, the Claim for which such Distributions was issued shall be treated as a Disallowed Claim and the Distribution on account of such Disallowed Claim shall promptly be distributed to New Borrower.

5.9.    Disputed Distributions. Subject to Section 5.7(c) hereof, in the event of any dispute

36

between or among Holders of Claims (other than the Holders of First Lien Secured Claims) as to the right to any Holder of a Claim to receive or retain any Distribution to be made to such Holder under this Plan, the Distribution Agent, in lieu of making such Distribution to such Holder, may make it instead into an escrow account for payment as ordered by the Bankruptcy Court or as the interested parties to such dispute may otherwise agree among themselves.

Any such Holder who fails to raise such dispute by filing an appropriate request for relief with the Bankruptcy Court prior to the issuance of such disputed Distribution by the Distribution Agent shall be deemed to have forever waived any right to dispute such Distribution or to enjoin, impair or otherwise restrict the use of any such Distribution.

5.10.    Setoffs.  Except with respect to Class 3 Claims, the Distribution Agent may, but shall not be required to, set-off against any Distributions to be made pursuant to this Plan to a Holder of an Allowed Claim, Claims of any nature whatsoever that Debtor may have, or may have had, against such Holder that have not been previously released, but neither the failure to do so, nor the allowance of any Claim held by such Holder shall constitute a waiver or release by the Distribution Agent of any such Claim Debtor may have, or may have had, against such Holder.

5.11.    Withholding Taxes. The Distribution Agent shall be entitled to deduct any applicable federal or state withholding taxes from any payments made with respect to Allowed Claims, as appropriate, and shall otherwise comply with section 346 of the Bankruptcy Code.

5.12.    Allocation of Distributions.  Distributions on account of Allowed Claims shall, for tax purposes, be treated as allocated first to principal, and thereafter to interest only to the extent that the entire principal amount has been recovered, if applicable.

**ARTICLE VI**

**CERTAIN TERMINATIONS AND RELEASES**

6.1.    Certain Terminations.    On the Effective Date, all instruments evidencing indebtedness of Debtor held by Holders of Claims that are Impaired by this Plan shall be deemed canceled as against Debtor.

6.2.    Rights If Plan Not Confirmed or Effective Date does not Occur.    If Confirmation of this Plan or the Effective Date does not ultimately occur, this Plan shall be deemed null and void

37

and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against Debtor or any other Person or Entity or to prejudice in any manner the rights of Debtor or any Person or Entity in any further proceedings involving Debtor.

6.3.    <u>Term of Bankruptcy Injunction or Stays</u>. All injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date unless the Bankruptcy Court shall order otherwise.

6.4.    <u>Exculpation.</u>  None of the Releasees nor any of their respective Representatives shall have or incur any liability to any Holder of a Claim against or Interest in Debtor, or any other party-in-interest, or any of their Representatives, or any of their successors or assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Case, the pursuit of confirmation of this Plan, or the consummation of this Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct.  The Releasees shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under this Plan or in the context of the Chapter 11 Case.  No Holder of a Claim against or Interest in Debtor, or any other party-in-interest, including their respective Representatives, shall have any right of action against the Releasees or any of their Representatives, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of this Plan, the consummation of this Plan or the administration of this Plan, except to the extent arising from fraud.  Nothing in this <u>Section 6.4</u> shall be deemed an exculpation by any Releasor of any Releasee or any of its Representatives for any acts, omissions, transactions, events or other occurrences taking place after the Effective Date or an exculpation by First Lien Agent, First Lien Lenders or any other party in connection with the New Secured Loan or any amounts owed under the New Secured Loan Documents.

6.5.    <u>Releases.</u>  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasor will be deemed to release, waive and forever discharge all Released Liabilities against each Releasee and each Releasee's respective Representatives; *provided, however*, that, except with the respect to releases in favor of First Lien

38

Lenders and First Lien Agent and each of their Representatives (which releases are unlimited), the releases provided in this Section 6.5 shall not constitute a release of any liability based on willful misconduct, gross negligence or fraud; *provided, further*, that nothing herein shall be deemed to constitute a release by any Releasor of any Releasee or any of its Representatives for any acts, omissions, transactions, events or other occurrences taking place after the Effective Date or a release by First Lien Agent or First Lien Lenders in connection with the New Secured Loan or any amounts owed under the New Secured Loan Documents; and *provided, further,* that any party who is rightly included in the definition of Releasee that challenges the Plan or its implementation shall no longer be classified as a Releasee.

6.6.  Injunctions.

(a)  Injunction Against Releasors.  All of the Releasors, along with any of their successors or assigns, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Releasees or any of their respective Representatives in respect of any Released Liabilities, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Releasees or any of their respective Representatives in respect of any Released Liabilities, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Releasees or any of their respective Representatives in respect of any Released Liabilities, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Releasees or any of their respective Representatives or against the property or interests in property of the Releasees or any of their respective Representatives, in respect of any Released Liabilities; *provided, however*, that nothing contained herein shall preclude such Releasors from exercising their rights pursuant to and consistent with the terms hereof and the contracts, instruments, releases and other agreements and documents delivered under or in connection with this Plan; *provided, further*, that nothing contained herein shall be deemed to enjoin any Releasor from taking any action against any Releasee or any of its Representatives based on the release exceptions contained in the three provisos at the end of Section 6.5 of this Plan.

(b)  Injunction Protecting Exculpation of Releasees:  All Holders of Claims

against or Interests in Debtor and any other parties-in-interest, along with any of their Representatives and any of their successors or assigns are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against Releasees or any of their respective Representatives in respect of any potential liability for which exculpation is granted pursuant to <u>Section 6.4</u> of this Plan, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against Releasees or any of their respective Representatives in respect of any potential liability for which exculpation is granted pursuant to <u>Section 6.4</u> of this Plan, (iii) creating, perfecting, or enforcing any encumbrance of any kind against Releasees or any of their respective Representatives in respect of any potential liability for which exculpation is granted pursuant to <u>Section 6.4</u> of this Plan, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any Releasee or any of their respective Representatives or against the property or interests in property any Releasee or any of their respective Representatives, in respect of any potential liability for which exculpation is granted pursuant to <u>Section 6.4</u> of this Plan; *provided, however*, that nothing contained herein shall preclude any Holder or other party-in-interest from exercising its rights pursuant to and consistent with the terms hereof and the contracts, instruments, releases and other agreements and documents delivered under or in connection with this Plan.

(c)    <u>Injunction Against Interference With Plan</u>:  Upon the Effective Date, all Holders of Claims against or Interests in Debtor and their respective Representatives and any of their successors or assigns shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

# ARTICLE VII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1.    Executory Contracts and Unexpired Leases.    Debtor shall be deemed to have assumed each Assigned Contract and to have assigned such contracts to New Borrower as of the Effective Date.  The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the contract and lease assumptions and assignment to New Borrower as of the Effective Date.

7.2    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.  Any of the Assigned Contracts that are, or may be, alleged to be in default, shall be Cured either in the ordinary course of business or on the Effective Date.  Except with respect to Assigned Contracts with respect to which Debtor or New Borrower and the applicable counterparties have stipulated in writing the appropriate Cure, all requests of Cure that differ from the amounts and treatment proposed by Debtor or New Borrower must be Filed with the Bankruptcy Court on or before the Cure Bar Date.  Any request for payment or other Cure that is not timely Filed shall be disallowed automatically and forever barred from assertion and shall not be enforceable against Debtor or New Borrower, without the need for any objection by Debtor or New Borrower or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim for Cure shall be deemed fully satisfied, released, and discharged upon payment by Debtor of the amounts listed on the proposed Cure schedule, notwithstanding anything included in the Schedules or in any Proof of Claim to the contrary.  Debtor also may settle any Cure without further notice to or action, order, or approval of the Bankruptcy Court.

If a counterparty objects to any Cure or any other matter related to assumption and assignment, the Bankruptcy Court shall determine the Allowed amount of such Cure and any related issues.  If there is a dispute regarding such Cure, the ability of Debtor or New Borrower to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then Cure shall occur as soon as reasonably practicable after entry of an order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by Debtor or New Borrower and the

41

counterparty to the Assigned Contract, with the consent of First Lien Agent, which consent shall not be unreasonably withheld or denied.  Any counterparty to an Assigned Contract that fails to object timely to the proposed assumption and assignment of any such contract or unexpired lease will be deemed to have consented to such assumption and assignment.  Debtor reserves the right either to reject or nullify the assumption of any executory contract or unexpired lease no later than thirty (30) days after a Final Order determining the Cure or any request for adequate assurance of future performance required to assume such executory contract or unexpired lease.

Assumption of any Assigned Contract pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults with respect to provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assigned Contract at any time prior to the effective date of assumption and assignment.  Any Proofs of Claim Filed with respect to an Assigned Contract that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

7.3.    Rejection Claims.  Any Holder of a Claim whose Claim arises from the rejection of an executory contract or unexpired lease with Debtor shall have the rights of Holder of a General Unsecured Claim and shall receive the treatment provided to Holders of Class 4 General Unsecured Claims as set forth in Section 2.3 above.

7.4.    Filing of Rejection Claims.  Any Person or Entity who believes they are entitled to assert an Administrative Claim or a Priority Claim against Debtor by virtue of the rejection of an executory contract or unexpired lease pursuant to this Article VII or a Final Order entered after the Confirmation Date, may File a Claim with the Clerk of the Bankruptcy Court not later than twenty (20) days after the date of any such rejection or such later time as may be set forth for the filing of such Claim in said Final Order.  If such Claim is not so Filed, it shall be forever barred from assertion against Debtor, New Borrower or any of the Assets.  Nothing in this Section 7.4 shall affect the right of any party-in-interest to object to any Claim which has been improperly Filed or not Filed on a timely basis.

7.5.    Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided in the Plan Supplement, each Assigned Contract that is assumed and assigned shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Assigned Contract, and all executory contracts and unexpired leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan.

Modifications, amendments, supplements, and restatements to pre-petition executory contracts and unexpired leases that have been executed by Debtor during the Chapter 11 Case shall not be deemed to alter the pre-petition nature of the executory contract or unexpired lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

7.6.  <u>Reservation of Rights</u>.  Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by Debtor or First Lien Lenders that any such contract or lease is in fact an executory contract or unexpired lease or that Debtor or New Borrower has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, Debtor and/or New Borrower, with the consent of First Lien Agent, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**ARTICLE VIII**

**<u>PROCEDURES FOR RESOLVING DISPUTED CLAIMS</u>**

8.1.  <u>Time Limit for Objections to Priority Claims</u>.  Unless otherwise ordered by the Bankruptcy Court, objections to Priority Claims or Priority Tax Claims shall be Filed by Debtor with the Bankruptcy Court and served upon each Holder of each of the Claims to which objections are made not later than twenty (20) days after the Priority Claims Bar Date.  Debtor shall be solely responsible, for pursuing objections to Claims and otherwise litigating, settling or otherwise resolving all Disputed Claims unless such Claims have been assumed by New Borrower, in which case New Borrower shall have sole and exclusive control over the litigation and settlement of such Disputed Claim.

8.2.  <u>Payments</u>.  Payments and Distributions to each Holder of a Disputed Claim that

43

ultimately becomes an Allowed Claim shall be made in accordance with the provision of this Plan with respect to the Class of Creditors to which the respective Holder of an Allowed Claim belongs. Without limiting the generality of the foregoing, Debtor shall not be required to object to any Claim if such Claim does not purport to be an Administrative Claim, a Priority Tax Claim, a Priority Claim, an Other Secured Claim or a First Lien Secured Claim and any Claim that is not asserted as an Administrative Claim, a Priority Tax Claim, a Priority Claim, an Other Secured Claim or a First Lien Secured Claim shall not receive any Distribution under the terms of this Plan irrespective of whether such Claim is Allowed or Disputed, whether in whole or in part.

8.3.    Personal Injury Claims. All objections to Claims Filed for personal injury tort damages, if any, shall be determined by the United States District Court for the District of Nevada.

8.4.    Estimation of Claims. Debtor, shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether Debtor previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on the amount of such Claim, Debtor may elect to pursue any supplemental proceedings to object to the allowance of such Claim.

**ARTICLE IX**

**RETENTION OF JURISDICTION**

9.1.    Retention of Jurisdiction. Except to the extent otherwise expressly set forth herein, the Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case following the Confirmation Date for the following purposes, it being expressly intended that such retention of jurisdiction shall in all cases hereafter set forth, extend to any actions or proceedings commenced prior or subsequent to the Confirmation Date and/or the Effective Date whether by Debtor or the parties specified

44

herein:

(a)    To hear and determine any objections to the allowance of Claims, including any objections by New Borrower with respect to any Claims which have been reinstated or assumed in accordance with the terms of this Plan;

(b)    To determine any and all applications for compensation for any Professionals and similar fees to the extent made specifically subject to a hearing under this Plan and applicable provisions of the Bankruptcy Code.

(c)    To determine any and all applications for the rejection or assumption and assignment of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which Debtor is a party or with respect to which it may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising there from;

(d)    To modify this Plan pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistency in the Confirmation Order to the extent authorized by the Bankruptcy Code;

(e)    To hear and determine all controversies, suits and disputes, if any, as may arise in connection with the interpretation or enforcement of this Plan;

(f)    To hear and determine all controversies, suits and disputes, if any, as may arise with regard to orders of this Bankruptcy Court entered in this Chapter 11 Case;

(g)    To adjudicate all controversies concerning the classification of any Claim;

(h)    To liquidate damages in connection with any disputed, contingent or unliquidated Claim;

(i)    To adjudicate all Claims to a security or ownership interest in any of the Assets, or in any proceeds thereof,

(j)    To adjudicate all Claims or controversies arising out of any purchases, sales or contracts made or undertaken by Debtor;

(k)    To determine all questions and disputes regarding recovery of and entitlement to any property of Debtor, or in any proceeds thereof;

(l)    To adjudicate all Causes of Action with respect to which Debtor is a party,

45

whether or not such Claim or controversy is raised or filed before or after the Confirmation Date;

(m)    To determine issues and disputes concerning entitlement to Distributions to be made under and pursuant to this Plan;

(n)    To enter any order, including injunctions, necessary to enforce the title, rights and powers of Debtor or the rights of any Entity hereunder and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary or appropriate;

(o)    To determine such other matters as may be provided for in the Confirmation Order and this Plan, or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(p)    To enter a Final Decree closing the Chapter 11 Case;

(q)    To enforce the provisions of any Administrative Claim Bar Date entered by the Bankruptcy Court; and

(r)    To make such orders as are necessary or appropriate to carry out the provisions of this Plan, including but not limited to orders interpreting, clarifying or enforcing the provisions thereof.

Notwithstanding the forgoing, any disputes with respect to the New Secured Loan Documents arising after the Effective Date shall be adjudicated pursuant to the terms of the New Secured Loan Documents and in accordance with the provisions related to the choice of law, jurisdiction and venue contained therein

9.2.    Jurisdiction Unaffected.  The occurrence of the Effective Date and/or the entry of a Final Decree shall not divest the Bankruptcy Court of any jurisdiction otherwise retained under this Article IX or the Confirmation Order.

## ARTICLE X

## CERTAIN OBLIGATIONS OF DEBTOR

10.1.    Obligations for Debtor and New Borrower.  Debtor, and New Borrower (where applicable), in addition to performance of their other obligations as may be required hereunder or under the Lock Up and Plan Support Agreement, the Bankruptcy Code and prior orders of the

46

Bankruptcy Court, shall:

    (a)    After the Confirmation Date, take such action and execute such documents as may be reasonably required to consummate this Plan;

    (b)    Maintain insurance on all of Debtor's Assets up to the Effective Date;

    (c)    Maintain all of Debtor's books, records and accounting systems in accordance with past practices up to the Effective Date;

    (d)    Not sell or dispose of any of the Assets, or any proceeds thereof, except pursuant to a Sale or as contemplated by this Plan, or permitted by New Borrower and First Lien Lenders (in each instance as the case may be pursuant to the terms of this Plan and the Lock Up and Plan Support Agreement) or as otherwise may be authorized by order of the Bankruptcy Court up to the Effective Date;

    (e)    As of the date of the Final Decree, Debtor's remaining officers and directors shall be deemed to have resigned; and

    (f)    Each of Debtor's Professionals, including lawyers and financial advisors, shall conclude their engagements by Debtor as soon as practicable after the Effective Date and shall File their final fee applications to be set for hearing before the Bankruptcy Court as soon as practicable after the Effective Date, but in no event later than as otherwise required by the terms of this Plan or any applicable orders of the Bankruptcy Court.

## ARTICLE XI

## CONDITIONS TO EFFECTIVE DATE

    11.1.    <u>Conditions to Occurrence of Effective Date</u>. Each of the following are conditions to be met on or before the Effective Date, which conditions must be satisfied or waived in writing by Debtor, New Borrower and First Lien Agent (to the extent such entities are affected by any such condition):

    (a)    That the Confirmation Order shall have become a Final Order;

    (b)    That the Confirmation Order authorizes the assumption and assignment of all Assigned Contracts;

    (c)    That the Lenders' Fees have been paid in full;

(d)     To the extent Available Funds are insufficient to satisfy the Allowed Administrative Claims and Allowed Priority Claims in full, New Borrower has assumed or will pay the remaining amounts unless otherwise agreed by the Holder of such Allowed Administrative and Allowed Priority Claims Claim and New Borrower;

(e)     That the Lock Up and Plan Support Agreement has not been terminated or, if terminated, that it has been reinstated or any such termination has been waived in accordance with the terms thereof;

(f)     All conditions precedent to the closing of the New Secured Loan Documents, including payment of all costs and expenses of First Lien Agent and First Lien Lenders (including those of their respective counsel and other advisors) incurred in connection with the New Secured Loan, have been satisfied or waived in accordance with the terms thereof;

(g)     All Acquired Assets and title to the Properties have been transferred to New Borrower;

(h)     The Mortgage shall be recorded in Clark County Nevada and shall constitute a valid first priority Lien over the Properties subject only to any Permitted Encumbrances; and a provider of title insurance reasonably acceptable to First Lien Agent shall be prepared to provide title insurance as required under the New Secured Loan Documents;

(i)     The Paydown Amount shall have been funded pursuant to the terms of the Plan Funding Agreement, the New Secured Loan Reserves shall have been established, the parties to the Escrow Agreement shall have executed instructions or other required documents required to direct the Escrow Agent to release the Deposit to First Lien Agent, and all other amounts owed under the Plan Funding Agreement and the Equity Sponsor Commitment shall have been funded in accordance with the terms and conditions thereof;

(j)     First Lien Agent, Debtor and New Borrower shall have agreed on the Effective Date Funds Flow Memorandum;

(k)     Debtor, First Lien Agent (with the consent of First Lien Lenders) and New Borrower have agreed to the amounts under the Wind Down Budget; and

(l)     That any outstanding fees of the United States Trustee under 28 U.S.C. §

1930 shall have been paid in full.

11.2.   <u>Nonconsensual Confirmation</u>.  As to Classes 4 and 5, which are deemed to reject this Plan, Debtor is seeking confirmation of this Plan in accordance with section 1129(b) of the Bankruptcy Code either under the terms provided herein or upon such terms as may exist if this Plan is modified in accordance with section 1127(d) of the Bankruptcy Code.

**ARTICLE XII**

<u>**MISCELLANEOUS PROVISIONS**</u>

12.1.   <u>Modification of this Plan</u>.  Debtor reserves the right, with the consent of First Lien Lenders and New Borrower, in accordance with the Bankruptcy Code and the terms of the Lock Up and Plan Support Agreement, to amend, amend or modify this Plan before or after the Confirmation Date, including to make any amendments or modifications to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

12.2.   <u>Notices</u>. Except as otherwise set forth in <u>Section 12.3</u> below, all notices, requests, elections or demands in connection with this Plan, including any change of address of any Holder of a Claim for the purposes of receiving any Distributions under this Plan, shall be in writing and shall be delivered personally or by facsimile, electronic mail or overnight courier (confirmed by first class mail or express mail) or mailed by first class mail.  Such notice shall be deemed to have been given when received or, if mailed by first class mail, seven (7) days after the date of mailing, or if express mailed, the next Business Day following the date of mailing and addressed to the following:

(a)    If to Debtor, to:

c/o FX Real Estate and Entertainment Inc.
650 Madison Avenue
New York, New York 10022
Attention:  Mitchell Nelson
Email:       mitchell.nelson@flagluxury.com
Facsimile: (212) 750-3034

with copies to:

Greenberg Traurig, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Attention:  Brett Axelrod
Email:       axelrodb@gtlaw.com
Facsimile: (702) 792-9002

49

(b)    If to First Lien Agent, to:

Landesbank Baden-Württemberg, New York Branch
280 Park Avenue, 31st Floor – West Building
New York, New York 10017
Attention:  Robert Dowling
Email:      robert.dowling@lbbwus.com
Facsimile: (212) 584-1759

with copies to:

Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Attention:  Robert W. Fagiola
            Andrew V. Tenzer
Email:      rfagiola@shearman.com
            atenzer@shearman.com
Facsimile: (646) 848-7606
            (646) 848-7799

Lionel Sawyer & Collins
1700 Bank of America Plaza
300 South Fourth Street
Las Vegas, NV 89101
Attn.:      Rodney M. Jean
Email:      rjean@lionelsawyer.com
Facsimile:  (702) 383-8845

(c)    If to New Borrower :

c/o Bryan Cave
1290 Avenue of the Americas
New York, New York  10104-3300
Attention:      Bradford B. Lavender
Email:          bblavender@bryancave.com
Facsimile:      (212) 541 1471

All notices and requests to Holders of Claims of any Class shall be sent to them at their known address.  Any Holder of a Claim of any Class may designate in writing any other address for purposes of this Section 12.2, which designation shall be effective upon receipt.

12.3.    Limitation of Notice. Debtor shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of such matters, with no requirement for any additional or further notice:

(a)    Notice of Entry of Confirmation Order. Notice of the entry of the Confirmation Order shall be sufficient if mailed to all known Holders of Claims (which have not

50

become Disallowed Claims) and Interests within five (5) Business Days of the entry of Confirmation Order.

(b)    Post-Confirmation Date Service List - Additional Persons Entitled to Notice. Except as set forth in Section 12.2 hereof, from and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process Filed with the Bankruptcy Court prior to such date shall no longer be effective, and no further notices, other than Notice of Confirmation Order, shall be required to be sent to such parties, unless such parties File a new notice of appearance and demand for service of process dated subsequent to the Effective Date, which subsequent notice and demand must be Filed with the Bankruptcy Court and served upon the Persons and Entities listed in Section 12.2 above.

(c)    Subordination.  Nothing in this Plan shall in any way be deemed to have Impaired, altered or otherwise affected the rights of First Lien Lenders, Debtor and New Borrower to enforce any right of subordination that may exist by agreement or otherwise, including under section 510 of the Bankruptcy Code; *provided, however*, that no party may subordinate the Claims of First Lien Lenders or First Lien Agent hereunder.  Without limiting the generality of the foregoing, First Lien Lenders specifically shall be entitled to the full benefits of their rights, claims and interests under the Lock Up and Plan Support Agreement, the Operative Documents, the Intercreditor Agreement, the Co-Lender Agreement and this Plan, as applicable.

12.4.    Requisite First Lien Lenders' Approval.  Where First Lien Lenders approval is referred to anywhere in this Plan, the Person or Entity seeking such First Lien Lenders approval shall be entitled to direct the request for approval solely to First Lien Agent on behalf of the First Lien Lenders, and the First Lien Agent shall then be responsible for determining and communicating whether or not such approval has or has not been obtained. Any statement by First Lien Agent to any other Person or Entity concerning any consent or approval of First Lien Lenders required hereunder may be relied upon by such Person or Entity.

12.5.    Headings. The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affect the provisions of this Plan.

12.6.    Exhibits.    All exhibits and documents included in the Plan Supplement are

incorporated into and are a part of this Plan as if set forth in full in this Plan. Except as otherwise provided in this Plan, such exhibits and documents included in the Plan Supplement shall be Filed with the Bankruptcy Court on or before the Plan Supplement Filing Date. After the exhibits and documents are Filed, copies of such exhibits and documents shall have been available upon written request to Debtor's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.nvb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of this Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of this Plan shall control.

12.7. <u>Nonseverability of Plan Provisions</u>. Subject to the rights of the parties to the Lock Up and Plan Support Agreement, if, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, at the request of Debtor or First Lien Agent and subject to the consent of any party adversely affected thereby, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, Impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the consent of Debtor and any other Person or Entity affected by such provision; and (3) nonseverable and mutually dependent.

12.8. [reserved] ..

12.9. <u>Conflicts</u>. (a) To the extent that any provision of the Disclosure Statement, the Plan Supplement (other than any amendments to the Plan or any New Secured Loan Documents), or any other order (other than the Confirmation Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any

52

inconsistent with any provision of this Plan, this Plan shall govern and control, unless expressly set forth herein.

(b)     From and after the Effective Date, to the extent that any provision of this Plan, the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in this Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of any New Secured Loan Document, then such New Secured Loan Document shall govern and control, unless expressly set forth therein.

12.10.  <u>Computation of Time</u>.  In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

12.11.  <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or any other Federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada.

12.12.  <u>Successors and Assigns.</u>  The rights and obligations of any Person or Entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Entity.

12.13.  <u>Withdrawal of Votes</u>.  If there is a termination under the Lock Up and Plan Support Agreement, First Lien Lenders reserve the right to revoke or withdraw their votes and their support for this Plan at any time prior to the Confirmation Date.

12.14.  <u>Withdrawal of Plan</u>.  Subject to and without modifying or altering the rights and obligations of any party to the Lock Up and Plan Support Agreement and only to the extent permitted pursuant to the Lock Up and Plan Support Agreement, Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If Debtor revokes or withdraws this Plan, or if Confirmation does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption or rejection of executory contracts or unexpired leases effected by this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan

53

1  shall: (a) constitute a waiver or release of any Claims or Interests relating to Debtor; (b) prejudice in

2  any manner the rights of Debtor or any other Entity; or (c) constitute an admission,

3  acknowledgement, offer, or undertaking of any sort by Debtor or any other Entity.  This Plan shall

4  also be deemed withdrawn upon the occurrence of a Sale or any other sale of the Properties to any

5  party other than New Borrower.

6        12.15. <u>Judgments Void</u>.      Any judgment obtained before or after the Confirmation Date

7  in any court other than the Bankruptcy Court shall be null and void as a determination of the

8  liability of Debtor and/or New Borrower with respect to any debt treated by the Plan.  For the

9  avoidance of doubt, the foregoing sentence shall not apply to any judgments obtained after the

10  Confirmation Date against the New Borrower in respect of the New Secured Loan Documents.

11        DATED this 16th day of April 2010.

12                          **FX LUXURY LAS VEGAS I, LLC,**
                            a Nevada limited liability company
13

14              By:     FX Luxury, LLC, a Delaware limited liability
                        company, its sole member
15
                        By:     FXL, Inc., a Delaware corporation, its
16                              managing member

17

18                              By:     /s/Mitchell J. Nelson
                                        Name: Mitchell J. Nelson
19                                      Title:   President

20

21

22  **GREENBERG TRAURIG, LLP**

23  By: _____
        BRETT A. AXELROD, ESQ.
24      Nevada Bar No. 5859
        MICAELA RUSTIA, ESQ.
25      Nevada Bar No. 9676
        3773 Howard Hughes Parkway
26      Suite 400 North
        Las Vegas, Nevada 89169
27      Telephone:  (702) 792-3773
        Facsimile:   (702) 792-9002
28

54

1    *[Proposed] Attorneys for FX Luxury Las Vegas I, LLC*

## <u>Annex I</u>

### **Effective Date Cash Distributions**

On the Effective Date, Available Funds shall be applied in the following priority:

- ***first***, an amount sufficient to fund the Wind Down Budget;

- ***second***, an amount sufficient to fund the Retained Chapter 11 Reserves*;

- ***third***, all unpaid Allowed Administrative Claims[*], plus a reasonable reserve for estimated Administrative Claims not yet Allowed (excluding from such reserves amounts reasonably estimated to be satisfied from the Retained Chapter 11 Reserves), unless otherwise dealt with by New Borrower under the terms of Article 2 of the Plan;

- ***fourth***, all Allowed Priority Claims, plus a reasonable reserve for estimated Priority Claims not yet Allowed, and Cure amounts as determined by the Effective Date, plus a reasonable reserve for disputed Cure amounts, in each case unless otherwise dealt with by New Borrower under the terms of Article 2 of the Plan;

- ***fifth***, to be acquired by New Borrower in an amount equal to the New Borrower Budget;

- ***sixth***, to satisfy the Lenders' Fees incurred up to the Effective Date unless satisfied by New Borrower on the Effective Date;

- ***seventh***; in an amount not greater than the Interest Reserve, to be acquired by New Borrower in an amount equal to the cost of title insurance (which insurance shall be reasonably acceptable to First Lien Agent and New Borrower) and other items relating to the closing of the New Secured Loan Documents including, but not limited to, the legal fees and expenses of First Lien Lenders and New Borrower relating solely to the closing of the New Secured Loan, that First Lien Agent may agree to in writing in their sole discretion to be used for the forgoing purpose;

- ***eighth***; to the payment of the LIBOR plus Liquidity Spread portion of the interest on First Lien Loan in an amount not to exceed that set forth in <u>Exhibit B-4</u> of the Lock Up and Plan Support Agreement;

- ***ninth***; to the payment of the Case Margin portion of the interest on First Lien Loan in an amount not to exceed that set forth in <u>Exhibit B-4</u> of the Lock Up and Plan Support Agreement; and

- ***tenth***; to New Borrower.

To the extent Available Funds on the Effective Date are insufficient to satisfy items first through seventh, New Borrower shall assume or, to the extent required in accordance with the Plan, pay such amount, unless otherwise dealt with by New Borrower under the terms of Article 2 of the Plan.

---

[*] To the extent Professional Fees exceed the Fee Cap, then the excess will need to be satisfied pursuant to an alternative arrangement under Article 2 of the Plan.

56