HAL L. BAUME, ESQ.
New Jersey Bar No. 028741977
[*pro hac vice pending*]
DEANNA FORBUSH, ESQ.
Nevada Bar No. 6646
FOX ROTHSCHILD, LLP
3800 Howard Hughes Parkway,  Suite 500
Las Vegas, Nevada  89169
Telephone:  (702) 262-6899
Facsimile:   (702) 597-5503
Email: hbaume@foxrothschild.com
        dforbush@foxrothschild.com
*[Proposed] Counsel for FX Luxury Las Vegas I, LLC*

Electronically Filed April 21, 2010

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>FX LUXURY LAS VEGAS I, LLC,<br> a Nevada limited liability company,<br><br>Debtor. | Case No.  BK-S-10-17015-BAM<br><br>Chapter 11<br><br>**MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(A), 363 AND 365 (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE BANKRUPTCY ESTATE; (B) SCHEDULING AN AUCTION TO CONSIDER COMPETING BIDS FOR THE ASSETS; AND (C) APPROVING THE FORM AND MANNER OF NOTICE OF THE AUCTION**<br><br>Hearing Date:    **April 23, 2010**<br>Hearing Time:    **2:30 p.m. PDT** |

FX Luxury Las Vegas I, LLC ("<u>Debtor</u>" or "<u>FX I</u>"), the debtor and debtor-in-possession in the above-captioned case ("<u>Chapter 11 Case</u>"), hereby submits this Motion to Establish Bidding Procedures in Connection With the Sale of Substantially All of the Assets of the Bankruptcy Estate (the "<u>Bid Motion</u>").  This Bid Motion is made pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002,

6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and seeks entry of an order (the "<u>Bidding Procedures Order</u>"), (a) approving bidding procedures (the "<u>Bidding Procedures</u>") in connection with the sale of substantially all of Debtor's assets (the "<u>Assets</u>"), including without limitation, the Properties (as defined below), (b) scheduling an auction to consider competing bids for the Assets, (c) approving the form and manner of notice of the auction for the Assets (the "<u>Auction</u>"), including the form and manner of service of the notice (the "<u>Auction Notice</u>") attached hereto as **Exhibit A**.  This Motion is based upon the following memorandum of points and authorities, the Omnibus Declaration of Mitchell J. Nelson Filed in Support of First Day Motions (the "<u>Omnibus Declaration</u>"), filed concurrently herewith and incorporated for all purposes herein by this reference, the papers and pleadings on file with the Court in the Chapter 11 Case and any oral argument presented to the Court at a hearing on the Bid Motion.

      The Bidding Procedures are intended to maximize the return to Debtor's estate for the sale of the Assets and thus to best serve the interests of all creditors and the bankruptcy estate in this Chapter 11 Case.  Debtor respectfully submits that the Court should approve the Bidding Procedures because they comport with Debtor's sound business judgment and will ensure a good faith sale of the Assets, which include without limitation, the Properties (as defined below).  Copies of the Bidding Procedures and the proposed form of Bidding Procedures Order are each annexed hereto as **Exhibits B and C**, respectively.  Debtor, with the cooperation of its professional advisors, has already commenced soliciting expressions of interest in the Assets.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**FACTUAL BACKGROUND**

**A.**    <u>**General Overview**</u>.

      1.    On April 21, 2010 (the "<u>Petition Date</u>"), FX I[1] filed a voluntary petition for relief initiating the Chapter 11 Case.  Omnibus Declaration, ¶ 3.  Debtor continues to operate its

---

[1]  In August 2008, FX I changed its name from Metroflag BP, LLC, to FX Luxury Las Vegas I, LLC.  At the

2

business and manage its properties as debtor and debtor-in-possession, pursuant to Bankruptcy Code Sections 1107(a) and 1108.

2.      No trustee or examiner has been appointed in this Chapter 11 Case, and no committee has been appointed or designated by the United States Trustee.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

4.      The statutory predicates for the relief requested herein are Bankruptcy Code Section(s) 105(a), 363, 365 and Bankruptcy Rule(s) 2002, 6004, 6006, 9008 and 9014.

**B.      Debtor's Capital Structure.**

5.      FX I is a limited liability company incorporated under the laws of the state of Nevada on December 26, 2001.  FX I is wholly owned by FX Luxury, LLC ("FX LLC"), a non-debtor limited liability company incorporated under the laws of the state of Delaware on April 13, 2007.  Omnibus Declaration, ¶ 4.

6.      FX, LLC is, in turn, owned by (i) FXL, Inc., a non-debtor corporation incorporated under the laws of the State of Delaware on December 21, 2009, which is wholly owned by FX Real Estate and Entertainment, Inc. ("FX Real Estate"), a non-debtor publicly traded C-corporation incorporated under the laws of the state of Delaware on June 15, 2007 and (ii) FXL Priority Corp., a non-debtor corporation formed under the laws of the state of Delaware on December 21, 2009.  A chart outlining the ownership structure of FX I and its affiliated companies is attached to the Omnibus Declaration as Exhibit 1 and is incorporated herein by this reference.  Omnibus Declaration, ¶ 5.  A history of the business operations of FX and its related

---

same time, non-debtor affiliated entities BP Parent, LLC, and Metroflag Cable, LLC, changed their names to FX Luxury Las Vegas Parent, LLC ("Las Vegas Parent"), and FX Luxury Las Vegas II, LLC ("FX II"), respectively. Prior to the Petition Date, FX II merged its assets and operations into FX I.  Subsequently, Las Vegas Parent merged its assets and operations into FX I.  The merger of FX II and Las Vegas Parent into FX I accomplished a more accurate reflection of the actual business operations of the entities, which have always been consolidated and effectively operated as a single enterprise.

companies is detailed in the most recent public filing for FXRE, which is attached as Exhibit 2 to the Omnibus Declaration and is incorporated herein by this reference.

**C.**    **Business Operations.**

7.    Debtor owns and operates 17.72 contiguous acres of land (the "Properties") located on the world famous "Las Vegas Strip." The Properties lie at the southeast corner of Las Vegas Boulevard and Harmon Avenue in Las Vegas, Nevada and extend south almost to Tropicana Avenue. The Properties are currently comprised of a motel operation and several commercial and retail tenants with a mix of short- and long-term leases; including well-known establishments such as Smith & Wollensky, McDonald's, Fatburger, Walgreen's, and Sunglass Hut. Prepetition, the Debtor and its affiliates had commenced design and planning for a redevelopment plan for the Properties that included a hotel, casino, entertainment, retail, commercial and residential development project. As a result of the disruption of the capital markets and the economic downturn in the United States in general, and Las Vegas in particular, the Debtor decided not to proceed with its originally proposed plan of redevelopment. Omnibus Declaration, ¶ 6.

8.    The Properties consist of six parcels described as follows:

a)    Parcel 1 – is comprised of 0.996 acres. One tenant currently occupies parcel 1. The lease is terminable at any time by either party upon 120 days' prior written notice and without the payment of a termination fee.

b)    Parcel 2 – is comprised of 5.135 acres. The land is occupied by a Travelodge motel, which FX owns in fee, as well as several retail, billboard and parking lot tenants. The Travelodge motel is being operated by WW Lodging Limited, LLC, pursuant to a management agreement. The management agreement is terminable upon 30 days' prior notice and a termination fee equal to 4% of the trailing 12 months room revenue multiplied by 200%. The property's retail, billboard and parking lot leases are month-to-month.

c)    Parcel 3 – is comprised of 2.356 acres. This parcel currently hosts the Hawaiian Marketplace, which consists of multiple retail tenants. All but six of the leases on this property are terminable at any time upon 30 days (in one instance 180 days) advance written notice and without payment of a termination fee. All six leases not terminable with notice are terminable by FX at any time upon the exercise of options to either repurchase, recapture or relocate the premises.

d)    <u>Parcel 4</u> – is comprised of 4.49 acres.  It is currently occupied by several tenants.  The leases are month-to-month, except for a lease with a single tenant whose lease term expires in July, 2014.

e)    <u>Parcel 5</u> – is comprised of 3.008 acres.  The property accommodates 51,414 square feet of retail space and is currently occupied by several restaurant and retail tenants.  One lease term expires in January 2012, but is terminable earlier upon 120 days advance written notice and, if terminated after February 2010, the lease requires payment of a termination fee of $200,000.  A second lease term expires in August 2012, with the tenant holding an option to extend the lease for an additional five years.  A fourth lease term expires in May 2059.

f)    <u>Parcel 6</u> - is comprised of 1.765 acres.  The property accommodates 2,094 square feet of retail space and is currently occupied by a restaurant and several retail tenants.  One lease term expires in December 2013, another lease term expires in April 2011 and a third lease term expires in February 2014, with the tenant holding an option to extend the lease term for an additional five years.  A fourth lease term expires in May 2045.

Omnibus Declaration, ¶ 7.

**1.    Tenants, Rental Income and Expenses.**

9.    There are a total of 90 leaseable spaces with 63 occupied spaces and 27 vacant spaces as of March, 2010, at which time the Properties were generating approximately $1,263,000 in monthly revenues from rents, billboards, parking, common area maintenance charges and other sources.  <u>See</u> Properties' Rent Roll dated March 2010 (the "<u>Rent Roll</u>"); Omnibus Declaration, ¶ 8.  A true and correct copy of the Rent Roll is attached to the Omnibus Declaration as Exhibit 3 and is incorporated herein by this reference.

10.    The annualized revenue for the Properties, as of March, 2010, is projected to exceed $15,908,274.99.  Omnibus Declaration, ¶ 9.

11.    The Properties' monthly operational expenses, not including debt service, broker commissions, general administration, Debtor's professional advisory fees and costs, maintenance, repairs, insurance, and taxes, total approximately $319,973.95.  <u>See</u> Report from Receiver dated March 8, 2010 ("<u>Receiver's Report</u>"), at Exhibit 4 to the Omnibus Declaration.  Omnibus Declaration, ¶ 10.

1

2.      **Motel Operations.**

2

12.     The motel situated on the Properties is branded as a Travelodge and is a 125-

3

room limited service motel wholly owned by Debtor and managed by WW Lodging Limited,

4

LLC ("<u>WW Lodging</u>"), pursuant to a management agreement between the parties.   All

5

Travelodge employees are employed directly by WW Lodging.  Omnibus Declaration, ¶ 11.

6

13.     As of the Petition Date, FX I was receiving no revenues from the Travelodge

7

operation.  All income not required to fund the monthly operating expenses for the Travelodge

8

were sent directly to a lockbox controlled by Landesbank Baden-Wurttemberg, New York

9

Branch, as administrative agent and as collateral agent for the senior secured lenders (the "<u>First</u>

10

<u>Lien Lenders</u>") holding a first lien against the Properties.  Omnibus Declaration, ¶ 12.

11

**D.      <u>The Loans Against the Properties</u>.**

12

14.     The Properties are encumbered by liens securing loans having an initial

13

aggregate principal balance of approximately $475 million as of December 31, 2008, including

14

(i) two-tranche senior secured first priority loans (the "<u>First Lien Loan</u>") in the initial principal

15

amounts of approximately $250 million and $30 million made by the First Lien Lenders,

16

pursuant to that certain Amended and Restated Credit Agreement, dated as of July 6, 2007,

17

among the Debtor, FX II, Las Vegas Parent (collectively, the "<u>Debtor Parties</u>"), the First Lien

18

Lenders, Credit Suisse, Cayman Islands Branch, as administrative agent and collateral agent for

19

the First Lien Lenders, and Credit Suisse Securities (USA) LLC, as syndication agent, sole book

20

running manager and sole lead arranger (as further amended, modified or supplemented from

21

time to time, the "<u>First Lien Credit Agreement</u>"); and (ii) secured second priority loans in the

22

initial principal amount of approximately $195 million (the "<u>Second Lien Loan;</u>" and together

23

with the First Lien Loan, the "<u>Loans</u>") made by the lenders thereof (the "<u>Second Lien</u>

24

<u>Holders</u>"), pursuant to the Second Lien Credit Agreement (as defined in the First Lien Credit

25

Agreement).  Omnibus Declaration, ¶ 13-21.

26

15.     On May 11, 2007, the First Lien Lenders recorded a First Lien Deed of Trust,

27

Security Agreement, Assignment of Rents and Leases and Fixture Filing ("<u>First Deed of Trust</u>")

28

against the Properties, as Book No. 20070511, Instrument 0004533, in the Official Records of the Office of the County Recorder, Clark County, Nevada (the "<u>Official Records</u>").  <u>Id.</u>

16.    In connection with the First Deed of Trust, Credit Suisse, Cayman Islands Branch, recorded the following financing statements in the Official Records on May 11, 2007: Book No. 20070511, Instrument 0004534; Book No. 20070511, Instrument 0004535; Book No. 20070511, Instrument 0004537; and Book No. 20070511, Instrument 0004538.  <u>Id.</u>

17.    Also on May 11, 2007, the Second Lien Holders recorded a Second Lien Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing ("<u>Second Deed of Trust</u>") against the Properties as Book No. 20070511, Instrument 0004536, in the Official Records.  <u>Id.</u>

18.    The Debtor Parties subsequently entered that certain Amended and Restated Intercreditor Agreement dated July 6, 2007, with Credit Suisse, Cayman Islands Branch, as collateral agent for the First Lien Lenders and the Second Lien Holders (the "<u>Intercreditor Agreement</u>").  The Intercreditor Agreement places certain limitations on the rights of the Second Lien Holders.  Further, the Intercreditor Agreement contractually subordinated the debt of the Second Lien Holders to that of the First Lien Lenders.   <u>Id. and Exhibit 6.  A true and correct copy of the Intercreditor Agreement is attached as Exhibit 6 to the Omnibus Declaration and is incorporated herein by this reference.</u>

19.    The beneficial interests under the First Deed of Trust were subsequently assigned to Landesbank Baden-Wurttemberg, New York Branch ("<u>First Lien Agent</u>," together with the First Lien Lenders, the "<u>Senior Group</u>"), as administrative agent and as collateral agent on behalf of the First Lien Lenders, by recordation on March 23, 2009, of an Assignment of Deed of Trust ("<u>Assignment</u>") dated March 20, 2009, as Book No. 20090323, Instrument 0004872, in the Official Records.  <u>Id.</u>

20.    The Loans are non-recourse as to the Debtor.  Debtor's parent, Luxury, provided a guaranty to the Second Lien Holders only for losses caused under limited circumstances such as fraud or willful misconduct.  <u>Id.</u>

**E.**     **Events Leading Up to Bankruptcy.**

21.     The current global financial crisis has had a particularly grave impact on the Las Vegas real estate market, including a substantial reduction in the number of visitors and per visitor spending, the abandonment of, and/or loan defaults related to, several major new hotel and casino development projects as well as publicly expressed concerns regarding the financial viability of several of the largest hotel and casino operators in the Las Vegas market.  Omnibus Declaration, ¶ 22.

22.     The current economic climate has adversely affected the Properties' commercial leasing activities and, as a result, Debtor has failed to maintain its previously high tenant occupancy rates amid these market conditions.  In addition, market forecasts indicate Las Vegas may experience a prolonged decline in the development of new hotels and other entertainment venues, which could adversely affect any potential redevelopment of the Properties for the foreseeable future.  Omnibus Declaration, ¶ 23.

23.     On January 30, 2009, the First Lien Lenders took control of the cash collateral reserve accounts established under the Loans from which the Debtor Parties had been drawing working capital funds to meet ordinary operational expenses at the Properties.  At that time, the First Lien Lenders applied $21 million of the cash collateral reserve to the outstanding principal of the Senior Loan, leaving an aggregate outstanding balance of approximately $454 million on the Loans as of March 27, 2009.  In addition, the First Lien Lenders directed the existing tenants on the Properties to make all monthly lease payments directly to the them.    Omnibus Declaration, ¶ 24-27.

24.     Subsequent to the Assignment and Debtor Parties' default on the First Lien Loan, the First Lien Agent issued a Notice of Breach and Election to Sell, which was recorded April 9, 2009, in the Official Records as Book No. 20090409, Instrument 0003049, Foreclosure Proceeding #A9-03-0016 FCL.

25.     On or about May 12, 2009, the Debtor Parties, as borrowers on the Loans, and Luxury, as guarantor, entered into that certain Pre-Negotiation Agreement with the Senior

Group, NexBank SSB, as Second Lien Agent, and the Second Lien Holders, in order to explore negotiations for a consensual resolution to the issues surrounding the existing default on the Loans.  Omnibus Declaration, ¶ 32-33.

26.    The First Lien Agent later commenced an action in the Eighth Judicial District Court, Clark County, Nevada ("Nevada District Court"), as case no.: A-09-591831-B, Dept. No.: XIII, and obtained the appointment of a receiver (the "Receiver"), pursuant to Nevada District Court order dated June 22, 2009, as amended by an order dated August 6, 2009 (the "Receivership Order").  The Receiver took possession of the Properties on or about June 23, 2009.  Omnibus Declaration, ¶ 28.

27.    Nevada Title Company, as duly substituted trustee under and pursuant to the First Lien Credit Agreement and the First Deed of Trust, issued a Notice of Trustee's Sale, dated July 7, 2009, and recorded July 10, 2009, in the Official Records as Book No. 20090710, Instrument 0002151, Trustee Sale #A9-03-0016 FCL.

28.    On September 9, 2009, the First Lien Agent caused a Certificate of Postponement to be issued, extending the date of the proposed foreclosure sale of the Properties to October 21, 2009.  The foreclosure sale was subsequently postponed four times and on March 22, 2010, the First Lien Agent caused a Fifth Amendment to Foreclosure Postponement Agreement to be issued, extending the date of the proposed foreclosure sale of the Properties to April 22, 2010.

29.    The ongoing financial crisis has severely affected Debtor's ability to repay, refinance, extend or otherwise modify the past-due Loans and fund short-term liquidity needs despite protracted and extensive good faith negotiations with the First Lien Lenders and the Second Lien Holders.   Debtor's prepetition cash flows and cash on hand are simply not sufficient to repay the Loans secured by the Properties or otherwise fund short-term liquidity needs.  Omnibus Declaration, ¶ 29.

30.    As a result of the financial conditions being experienced in the Las Vegas real estate market, FX I abandoned plans to redevelop the Properties.  Based upon the abandonment

of the redevelopment plans, a valuation report obtained for the Properties from an independent appraisal firm combined with certain assumptions made by management, FX I recorded prepetition impairment charges totaling $414.9 million against the Properties thereby reducing their carrying value to an estimated fair market value of $137.7 million as of December 31, 2009. Debtor obtained an updated appraisal on March 4, 2010 dated as of December 31, 2010, which appraisal maintains that the liquidation value of the Properties (without taking into account any lease buyouts) is $137,700,000.00. Debtor believes the prepetition impairment charges were necessary and reasonable given the current and projected state of the Las Vegas real estate market. Omnibus Declaration, ¶ 30.

31.    A distressed sale or foreclosure of the Properties by the First Lien Lenders, at or near the liquidation value of $137.7 million as of February 16, 2010, would be insufficient to fully repay the outstanding amounts currently due and owing under the Loans and, therefore, would result in FX I receiving no net cash proceeds. Omnibus Declaration, ¶ 31.

32.    Similarly, the Receiver's long-term possession of the Properties, which comprise the Debtor's entire enterprise, would have a devastating material adverse effect on Debtor's business, financial condition and operations.

33.    While the Properties are generating revenues in excess of Debtor's debt service obligations, Debtor is no longer in possession or control of the Properties and the ongoing financial crisis in the Las Vegas tourism and real estate markets has resulted in the depressed leasing capacity of the Properties which has, in turn, severely impacted Debtor's inability to re-negotiate or repay the past-due amounts currently due and owing on the Loans. All of these factors have combined to necessitate the Debtor's filing a chapter 11 petition to seek protection from its creditors and an opportunity to reorganize.

34.    In the weeks and months leading up to the Petition Date, Debtor engaged in negotiations over the terms of a financial restructuring with its core creditor groups. These negotiations culminated in the agreement by the First Lien Agent[2] and First Lien Lenders (the

---

[2]  All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Plan.

"Senior Group") to enter with Debtor into that certain that certain Lock Up and Plan Support Agreement (as amended, supplemented or otherwise modified, the "Original Lock Up and Plan Support Agreement"),[3] dated as of October 27, 2009, by and among the Debtor, FX II, and Las Vegas Parent (the "Debtor Parties"), the Senior Group, LIRA Property Owner, LLC ("New Borrower"), a Delaware limited liability company, and LIRA LLC ("New Parent;" and together with New Borrower, the "New Entities"), a Delaware limited liability company, as amended by that certain First Amendment to the Lock Up and Plan Support Agreement, dated as of April 16, 2010,[4] pursuant to which the First Lien Lenders agreed to vote in favor of the Plan provided that certain conditions and milestones were satisfied. Omnibus Declaration, ¶ 33; Original Lock Up and Plan Support Agreement. Following the execution of the Original Lock Up and Plan Support Agreement, the Parties entered into discussions with the Second Lien Holders to explore the possibility of a consensual, three-party arrangement with respect to the filing of the Prepackaged Case and, in connection therewith, the Senior Group, the Second Lien Holders, NexBank, SSB, as administrative agent and collateral agent under the Second Lien Loan, the Debtor and the New Parent entered into that certain Lock Up and Plan Support Agreement (as amended, supplemented or otherwise modified, the "Tri-Party Lock Up Agreement"), dated as of December 18, 2009.

35.    Contemporaneously with the execution of the Tri-Party Lock Up Agreement, the Parties executed that certain Standstill Agreement (the "Standstill Agreement"), dated as of December 18, 2009, pursuant to which the Parties agreed *inter alia* (i) to defer and stay certain activity required to be undertaken under the Original Lock Up and Plan Support Agreement and the documents executed and delivered in connection therewith to allow for the negotiation and documentation of the transactions contemplated by the Tri-Party Lock Up Agreement and (ii) to preserve the Original Lock Up and Plan Support Agreement and, in the event of the termination

---

[3]  A true and correct copy of the Original Lock Up and Plan Support Agreement is attached as Exhibit 6 to the Omnibus Declaration and is incorporated herein by this reference.

[4]  A true and correct copy of the First Amendment to the Lock Up and Plan Support Agreement is included with the Original Lock Up and Plan Support Agreement attached as Exhibit 6 to the Omnibus Declaration.

of the Tri-Party Lock Up Agreement, to proceed with the transactions contemplated by the Original Lock Up and Plan Support Agreement (with certain modifications and amendments), in each case, on the terms and conditions set forth in the Standstill Agreement.

36.    The parties to the Tri-Party Lock Up Agreement were unable to reach agreement on the documentation and transactions contemplated thereunder and on February 12, 2010, the Tri-Party Lock Up Agreement automatically terminated pursuant to the terms thereof.

37.    The Original Lock Up and Plan Support Agreement provides the general framework for this Chapter 11 Case whereby the Debtor shall be allowed to used the First Lien Lenders' cash collateral, have the ability to market and sell the Properties and, if no qualified bidders come forth at a minimum bid price of $256,000,000, proceed with its plan of liquidation. See Original Lockup Agreement; Omnibus Declaration, ¶ 35.

## II.

## PROPOSED PROCEDURES

### A.    Bidding Procedures.

Debtor proposes the Bidding Procedures annexed hereto as **Exhibit B** to facilitate a sale of substantially all of the Assets and respectfully submits that the proposed Bidding Procedures will maximize the potential value of the Assets for the benefit of all of Debtor's creditors.

The proposed Bidding Procedures set forth a flexible process which will allow Debtor to maximize the value of its Assets given the time pressure it currently faces.  Debtor has determined, in its reasonable business judgment, that a sale of its Assets at this time, even without a traditional "stalking horse" bidder, under the foregoing Bidding Procedures is warranted and necessary.  Omnibus Declaration, ¶ 57.  In order to become a "Qualified Bidder," a prospective purchaser must submit a Qualified Bid:  (a) by the Bidding Deadline; (b) for cash only or cash with a firm financing commitment, with a ten percent (10%) escrow and balance to be paid at closing; (c) in an amount not less than $256 million plus closing costs and broker fees ("Minimum Bid Threshold"); (d) that provides that the Bidder will pay all transfer taxes and title insurance incurred in connection with the Auction; (e) that provides for a purchase as-is,

where-is with no substantial representations or warranties from the Debtor; (f) that is accompanied by (i) the purchase and sale agreement executed by the bidder, (ii) evidence of a deposit in escrow by the Bidding Deadline, of an amount equal to ten percent (10%) of the purchase price, (iii) proof of the bidder's ability to close escrow within thirty (30) days after entry of the Court's order approving the sale; and (g) that details which of Debtor's executory contracts and unexpired leases the Qualified Bidder will assume. Id., at ¶ 58.

**B.**     **Proposed Notice of the Auction.**

Pursuant to Bankruptcy Rule 2002(a), Debtor is required to provide its creditors with 20 days' notice of the Auction. Pursuant to Bankruptcy Rule 2002(c), such notice must include the date, time and place of the Auction and the deadline for filing any objections to the relief requested herein.

Debtor has served, or will serve, this Motion by first-class mail on: (a) the Office of the United States Trustee for the District of Nevada; (b) counsel to the Creditors' Committee (if any and, if none, to the creditors on the top 20 largest unsecured creditors); (c) all entities (or counsel therefore) known to have asserted any lien, charge, claim or encumbrance on the Assets; (d) all federal, state and local regulatory or taxing authorities which are reasonably ascertainable by Debtor to have a known interest in the Assets; (e) all parties who have expressed an interest in acquiring the Assets; and (f) those parties who have filed a request for special notice.

Thus, Debtor requests that the notice of the Auction be limited. Debtor proposes serving the Auction Notice, attached hereto as **Exhibit A**, only on the parties listed above. Debtor submits that the foregoing notice is reasonably calculated to provide timely and adequate notice to Debtor's creditors and other parties in interest, and also to all those who have expressed interest in bidding on the Assets. Accordingly, Debtor submits that such notice constitutes good and sufficient notice under the circumstances with respect to the Motion, all proceedings to be held with respect to the Auction, and the entry of an order or orders granting all of the relief requested herein. Debtor further submits that no further notice need be given.

1    The Auction Notice includes, among other things, the date, time and place of the

2    Auction and information for how to learn the deadline for filing any objections to the relief

3    requested herein and, therefore, complies with Bankruptcy Rule 2002(c).

4    Debtor submits that the method of notice described herein complies fully with

5    Bankruptcy Rule 2002 and constitutes good and adequate notice of the proposed Bidding

6    Procedures and the sale of its Assets.  Therefore, Debtor respectfully requests that this Court

7    approve the notice procedures proposed above.

8    ### III.

9    ### BASIS FOR RELIEF

10    The proposed Bidding Procedures serve the best interests of Debtor's bankruptcy estate.

11    The Bankruptcy Code provides that a debtor-in-possession, "after notice and a hearing, may

12    use, sell, or lease, other than in the ordinary course of business, property of the estate."  11

13    U.S.C. § 363(b)(1).  Although Bankruptcy Code Section 363 does not specify a standard for

14    approving bid procedures, the Ninth Circuit Bankruptcy Appellate Panel has established the

15    debtor's "sound business judgment" rule as an appropriate standard.  Under this rule, the

16    "bankruptcy court has considerable discretion in deciding whether to approve or disapprove the

17    use of estate property by a debtor in possession, in the light of sound business justification."  In

18    re Walter, 83 B.R. 14, 16 (BAP 9th Cir. 1988); see also In re Continental Airlines, Inc., 780 F.2d

19    1223, 1226 (5th Cir. 1986); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir.

20    1986); In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); In re Psychometic Systems, Inc.,

21    267 B.R. 670, 674 (Bankr. D. Colo. 2007) (collecting cases).

22    In determining whether the debtor-in-possession has complied with the sound business

23    judgment rule, the Court must consider whether:  (a) there has been "[a]ny improper or bad

24    motive," (b) the "price is fair and the negotiations or bidding has occurred at arm's length," and

25    (c) the sale followed "[a]dequate procedures, including proper exposure to the market and

26    accurate and reasonable notice to all parties in interest."  In re Castre, 312 B.R. 426, 428 (Bankr.

27    D. Colo. 2004).  When applying the rule, "the bankruptcy court should presume that the debtor-

28

in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate."  In re Pomona Valley Med. Group, Inc., 476 F.3d 665, 670 (9th Cir. 2007) (considering the rule in the context of the debtor's decision to reject a contract).  In the context of this rule, courts often approve overbid procedures.  See, e.g., In re Crown Corp., 679 F.2d 774, 777 (9th Cir. 1982).

This Court enjoys broad powers to approve such measures.  "The Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a); In re Chinichian, 784 F.2d 1440, 1443 (9th Cir. 1986); accord In re Geothermal Resources Int'l, 93 F.3d 648, 651 (9th Cir. 1996); In re Lionel Corp., 722 F.2d 1063, 1069 (2d Cir. 1983) (noting a bankruptcy judge's "broad administrative power" and "substantial freedom to tailor his orders" to a case at hand).

Here, the proposed Bidding Procedures comport with Debtor's sound business judgment.  Principally, the proposed Bidding Procedures permit Qualified Bidders to submit topping bids.  In this way, the Bidding Procedures embody an arm's-length process and ensure competitive bidding over the price.  By making the price and terms of sale competitive, the Bidding Procedures provide proper exposure of the Assets to the market.  This, in turn, will maximize the sale price of the Assets for the benefit of all creditors and the bankruptcy estate.  In addition, the Bidding Procedures require Qualified Bidders to deposit a sum into escrow and to reveal their financial information, thus ensuring only earnest and fiscally capable buyers bid on the Properties.  Finally, the Bidding Procedures provide reasonable notice of the sale to all parties in interest.

A.    **Sale of Substantially All of Debtor's Assets is Warranted.**

Under Bankruptcy Code Section 363, a debtor-in-possession may sell property of its estate outside of the ordinary course of its business, subject to the approval of the court after notice and a hearing.  11 U.S.C. § 363(b)(1).  Section 363 does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan.  Id.  However, courts in the Ninth Circuit and elsewhere

15

1    have required that the decision to sell assets outside the ordinary course of business be based

2    upon the sound business judgment of the debtor.

3          Applying Section 363, bankruptcy courts frequently have considered and approved

4    bidding procedures and overbid requirements in advance of a proposed sale of property of the

5    estate.  See, e.g., Doehring v. Crown Corp. (In re Crown Corp.), 679 F.2d 774, 775 (9th Cir.

6    1982) (noting that the district court had required specified minimum overbid amounts, deposits,

7    and the form of purchase agreement to be used by bidders); In re Crowthers McCall Pattern,

8    Inc., 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990) (noting that the bankruptcy court had entered

9    an order . . . requiring that overbids be made in specified minimum increments with deposits);

10   In re Table Talk, Inc., 53 B.R. 937, 943 (Bankr. D. Mass. 1985) (noting that section 363

11   requires notice and a hearing prior to the establishment of bidding procedures for the sale of

12   property of the estate).

13         In fact, courts have made clear that a debtor's business judgment is entitled to great

14   deference with respect to the procedures to be used in selling assets from the estate.  See, e.g.,

15   Official Comm. of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated

16   Resources, Inc.), 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that overbid procedures and

17   break-up fee arrangements that have been negotiated by a debtor in possession are to be

18   reviewed according to the deferential "business judgment" standard, under which such

19   procedures and arrangements are "presumptively valid"), appeal dismissed, 3 F.3d 49 (2d Cir.

20   1993).

21         In analyzing the propriety of bidding procedures, a court will examine whether the

22   procedures allow other third parties to submit higher and better bids and whether potential

23   bidders have sufficient time to conduct their own due diligence.  See, e.g., In re First Merchants

24   Acceptance Corp., 1997 Bankr. LEXIS 1492 at *12 (Bankr. D. Del.) (September 11, 1997)

25   (court approved bidding procedures that were open to higher and better bids and provided ample

26   time for interested bidders to conduct due diligence).  Moreover, the hallmarks of good faith in

27   any sale procedure are the receipt of adequate value received through higher and better offer and

28

16

full and accurate disclosure of the terms of the proposed sale to third parties invited to bid.  Id., at *13.

**B.    Sale of Assets Free and Clear of Liens, Claims and Encumbrances is Warranted.**

Pursuant to Bankruptcy Code Section 363(f), a debtor-in-possession may sell property "free and clear of any interest in such property of an entity other than the estate," if any one of the following conditions is satisfied:

> (a)    applicable nonbankruptcy law permits the sale of such property free and clear of such interests;
> (b)    such entity consents;
> (c)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (d)    such interest is in bona fide dispute; or
> (e)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

The First Lien Lenders have consented to the Sale of the Assets, pursuant to the Original Lock Up and Plan Support Agreement.  Accordingly, Section 363(f) is satisfied as to the First Lien Lenders.

The Second Lien Holders, whose interests in the Properties are contractually subordinated to the First Lien Lenders' interests, agreed prepetition that they would not object to or oppose (except possibly in the capacity as an unsecured creditor) a sale or other disposition of the Properties free and clear of liens or other claims under Bankruptcy Code Section 363 or any other provision of the Bankruptcy Code so long as the First Lien Loan remains outstanding and the First Lien Agent has consented to such sale.  Intercreditor Agreement, § 6.5;[5] Omnibus Declaration, ¶ 59.  The Intercreditor Agreement further provides that the net proceeds of any sale of the Properties first be applied to discharge the First Lien Loan with all remaining proceeds of a sale of the Properties, if any, to then be applied to the Second Lien Loan or that the Second Lien Holders' lien shall remain on any net proceeds of such sale subject to the terms

---

[5] A true and correct copy of the Intercreditor Agreement is attached as Exhibit 5 to the Omnibus Declaration and is incorporated herein by this reference.

and conditions of the Intercreditor Agreement.  Intercreditor Agreement, §§ 4.1, 6.5; Omnibus Declaration, ¶ 60.  Thus, pursuant to the Intercreditor Agreement, the Second Lien Holders are contractually obligated to consent to the Sale of the Assets thereby satisfying Bankruptcy Code Section 363(f).

Section 363(f) permits the sale of a debtor's assets "free and clear of any interest" in such assets if one or more conditions specified in that section is satisfied.  11 U.S.C. § 363(b)(1) and § 363(f).  In particular, Section 363(f) permits the sale of assets free and clear if "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property" or "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."  11 U.S.C. §§ 363(f)(3) and (5).

Thus, under Bankruptcy Code Section 363(f)(3), the price must be equal or greater than the aggregate value of the liens asserted against it, not their amount.  Id., at 476 (citing In re Hatfield Homes, Inc., 30 B.R. 353, 355(Bankr. E.D. Pa. 1983) (" . . . if the proposed sales price is the best price obtainable under the circumstances of a particular case, then the fact that junior lienholders may receive little or nothing from the proceeds of the sale would not, standing alone, constitute reason for disapproving the proposed sale.").  Other courts are also in accord with this interpretation of "value" under Section 363(f)(3).  See In re Oneida Lake Development, Inc., 114 B.R. 352, 357 (Bankr. N.D. N.Y. 1990); In re Terrace Gardens Park Partnership, 96 B.R. 707, 712-716 (Bankr. W.D. Tex. 1989); In re Milford Group, 150 B.R. 904, 906 (Bankr. M.D. Pa. 1992).

To facilitate the sale of the Assets, Debtor proposes that any liens, claims and encumbrances asserted against the assets be transferred, and attach, to the sale proceeds.  All liens on the Assets will be satisfied or will attach to the proceeds of the sale of the assets with the same force, effect and priority as such liens have on the assets, subject to the rights and defenses, if any, of Debtor and any party in interest with respect thereto.  Accordingly, Debtor

18

submits that the sale of assets free and clear of liens, claims and encumbrances satisfies the statutory prerequisites of section 363(f) of the Bankruptcy Code.

Here, the proposed Bidding Procedures meet all of the above requirements, are supported by ample "business justification" and are reasonable and appropriate under the circumstances of Debtor's Chapter 11 Case. Debtor seeks to obtain the greatest possible value for the Assets.

Overall, Debtor believes that the Bidding Procedures will increase the likelihood Debtor will receive the greatest consideration possible for the Assets and will facilitate a competitive and fair bidding process. Debtor believes that an Auction and the proposed Bidding Procedures will promote active bidding from seriously interested parties and will ultimately reveal the best and highest offer reasonably available for the Assets. The proposed Bidding Procedures will allow Debtor to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders who demonstrate the ability to close a transaction, while also serving to discourage the participation of those bidders Debtor reasonably believes to be unable or unlikely to close a transaction. Debtor believes that the Bidding Procedures will encourage, rather than hinder, bidding for the Assets, that they are consistent with other procedures previously approved by courts in this district, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings. See In re Randall's Island Family Golf Ctrs., Inc., 261 B.R. 96 (Bankr. S.D.N.Y. 2001), In re Integrated Res., Inc., 147 B.R. 650.

**C.    Assumption and Assignment of Executory Contracts and Unexpired Leases.**

To facilitate and affect the sale of the Assets, Debtor also seeks to assume and assign certain executory contracts and unexpired leases to the purchaser(s) of any of the Assets to the extent required by the Winning Bidder at the Auction.

Section 365 of the Bankruptcy Code authorizes a Debtor to assume and/or assign its executory contracts and unexpired leases subject to the approval of the Court:

(a) Except as provided in . . . subsections (b), (c) and (d) of this section, the

trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee:

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an expired lease or real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease…

* * *

(f)(2) The trustee may assign an executory contract or unexpired lease of the debtor only if –

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

See 11 U.S.C. § § 365(a), (b)(1), (f)(2).

Accordingly, Bankruptcy Code Section 365 authorizes the proposed assumptions and assignments of executory contracts and unexpired leases, provided that the defaults under such contracts are cured and adequate assurance of future performance is provided.

As set forth above, a Qualified Bid shall provide for the assumption and assignment of those executory contracts and unexpired nonresidential real property leases the Qualified Bidder is interested in, the details of which must be submitted with Adequate Assurance Packages

containing evidence of such bidder's ability to provide adequate assurance of future performance. Debtor will provide all parties to executory contracts and unexpired leases to be assumed and assigned with such Adequate Assurance Packages and an opportunity to be heard, and, in connection with a hearing to approve the sale of the Assets (the "<u>Sale Hearing</u>"), which shall be subsequently requested by Debtor if any Qualified Bids are received, Debtor will provide evidence that all requirements for the assumption and assignment of the executory contracts and unexpired leases proposed to be assigned to the purchaser(a) of the Assets will be satisfied. Thus, Debtor respectfully submits that, by the conclusion of the Sale Hearing, assumption and assignment of the executory contracts and unexpired leases should be approved.

///

This Motion proposes the following key dates in connection with the sale of the Assets:[6]

| EVENT | DATE |
| --- | --- |
| Deadline to object to proposed Bidding Procedures | No more than 14 days prior to the hearing on the Motion, or within 6 days of Petition Date |
| Hearing to Approve Bidding Procedures | Within 20 days of Petition Date |
| Entry of Order Approving Bidding Procedures | Within 20 days of Petition Date |
| Debtor files and serves a list of executory contracts potentially to be assumed and assigned and associated proposed cure amounts | Within 20 days of Petition Date |
| Deadline to object to proposed cure amounts on executory contracts and unexpired leases or to the sale of the Assets to the highest and best bidder at the Auction | 60 days from entry of the Bankruptcy Court's Order Approving Bidding Procedures |
| Deadline to object to adequate assurance of future performance on executory contracts and unexpired leases to be assumed and assigned in connection with a successful bidder for the Assets | 60 days from entry of the Bankruptcy Court's Order Approving Bidding Procedures |

---

[6] These key dates are based upon (i) a hearing on Debtor's First Day Motions, except for this Motion, being held on April 23, 2010, (ii) the Orders regarding such First Day Motions, except for this Motion, being entered by April 27, 2010; and (iii) a hearing being held on, and an Order being entered regarding, this Motion no later than May 11, 2010. Debtor's papers requesting that the First Day Motions be heard on shortened time are being filed contemporaneously with this Motion.

| Deadline for potential buyers to submit Qualified Bid Term Sheets | 65 days from entry of the Bankruptcy Court's Order Approving Bidding Procedures |
| --- | --- |
| If no Qualified Bids, proceed to Confirmation Hearing | 66 days from entry of the Bankruptcy Court's Order Approving Bidding Procedures |
| Auction, if required | 74 days from entry of the Bankruptcy Court's Order Approving Bidding Procedures |
| Hearing to approve sale to highest bidder at Auction, if held | 78 days from entry of the Bankruptcy Court's Order Approving Bidding Procedures |

These dates are subject to change by the Court.  All parties are encouraged to check the Court's docket for this Chapter 11 Case frequently for changes to the foregoing dates.

**IV.**

**CONCLUSION**

WHEREFORE, for all of the foregoing reasons, Debtor respectfully requests that this Court enter an order (a) approving and establishing the Bidding Procedures for the sale of the Assets; (b) scheduling the Auction; (c) approving the form, manner and service of the Auction Notice attached hereto as Exhibit A; and (d) granting such other and further relief as the Court deems just and proper.

DATED this 21st day of April 2010.

**FOX ROTHSCHILD, LLP**

By   *s/ Deanna Forbush*
    HAL L. BAUME, ESQ.
    New Jersey Bar No. 028741977
    [*pro hac vice pending*]
    DEANNA FORBUSH, ESQ.
    Nevada Bar No. 6646
    3800 Howard Hughes Parkway, Suite 500
    Las Vegas, Nevada  89169
    Telephone:  (702) 262-6899
    *[Proposed] Counsel for FX Luxury Las Vegas I, LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

AUCTION NOTICE

HAL L. BAUME, ESQ.
New Jersey Bar No. 028741977
[*pro hac vice pending*]
DEANNA FORBUSH, ESQ.
Nevada Bar No. 6646
FOX ROTHSCHILD, LLP
3800 Howard Hughes Parkway,  Suite 500
Las Vegas, Nevada  89169
Telephone:  (702) 262-6899
Facsimile:   (702) 597-5503
Email: hbaume@foxrothschild.com
        dforbush@foxrothschild.com
*[Proposed] Counsel for FX Luxury Las Vegas I, LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>FX LUXURY LAS VEGAS I, LLC, a<br>Nevada limited liability company,<br><br>Debtor. | Case No.  BK-S-10-17015-BAM<br><br>Chapter 11<br><br>**NOTICE OF AUCTION OF<br>SUBSTANTIALLY ALL OF THE<br>ASSETS OF THE BANKRUPTCY<br>ESTATE**<br><br>**Auction Date:** _____, 2010<br>**Auction Time:** **[INSERT]**<br>**Location:** **3800 Howard Hughes Pkwy<br>Suite 500<br>Las Vegas, Nevada 89169** |

**TO ALL CREDITORS, EQUITY INTEREST HOLDERS AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on _____ \_\_\_, 2010, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") entered an order:  (a) approving bidding procedures (the "Bidding Procedures") in

25

connection with the sale of substantially all of the assets (the "Assets") of FX Luxury Las Vegas I, LLC ("Debtor" or "FX I"), including, without limitation, the Debtor's real property consisting of 17.72 contiguous acres of land (the "Properties") located on the world famous Las Vegas Strip at the southeast corner of Las Vegas Boulevard and Harmon Avenue in Las Vegas, Nevada, and extending south almost to Tropicana Avenue upon which there exists a motel operation and several commercial and retail tenants; (b) scheduling an auction to consider competing bids for the Assets; and (c) approving the form and manner of notice of the auction for the Assets (the "Auction"), including the form and manner of service of the notice  (the "Auction Notice").

PLEASE TAKE FURTHER NOTICE that the Bidding Procedures set forth the process by which Debtor is authorized to conduct the Auction. ***ALL INTERESTED BIDDERS SHOULD CAREFULLY READ THE BIDDING PROCEDURES***.  To the extent there are any inconsistencies between the Bidding Procedures and the summary description of its terms and conditions contained in this Auction and Hearing Notice, the terms of the Bidding Procedures shall control.  Copies of the Bidding Procedures are on file with the Clerk of Court, United States Bankruptcy Court, Foley Federal Building, 300 Las Vegas Boulevard South, Las Vegas, Nevada 89101.

PLEASE TAKE FURTHER NOTICE that an Auction will be conducted on _____, **2010, at _____ __.M.** at the law offices of Fox Rothschild, LLP, 3800 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169.

PLEASE TAKE FURTHER NOTICE that the Deadline for submitting a Qualified Bid Term Sheet in accordance with the Bidding Procedures is _____, **2010 at 5:00 P.M., prevailing Pacific Time** ("Qualified Bid Deadline").

PLEASE TAKE FURTHER NOTICE that the Deadline to object to adequate assurance of future performance on any executory contracts and unexpired leases to be assumed and assigned in connection with a successful bid, or to assumption and assignment of any executory contracts and unexpired leases in conjunction with the Sale, is _____, **2010 at 5:00**

**P.M., prevailing Pacific Time**.  Copies of Adequate Assurance Packages by Qualified Bidders will be served on parties to executory contracts and unexpired leases by no later than _____ ___, 2010.

       **PLEASE TAKE FURTHER NOTICE** that the Deadline to object to the proposed cure amounts on executory contracts and unexpired leases or to the sale of the Assets to the highest and best bidder at the Auction is **_____, 2010 at 5:00 P.M., prevailing Pacific Time**.

       **PLEASE TAKE FURTHER NOTICE** that all requests for information concerning the Auction of the Assets should be directed to Fox Rothschild, LLP, 3800 Howard Hughes Parkway, Suite 500, Las Vegas, NV 89169, Telephone: (702) 597-5503, Attention: Deanna Forbush, Esq., Email: dforbush@foxrothschild.com.

       **PLEASE TAKE FURTHER NOTICE** that all bids for the Assets must be submitted in writing, either by regular mail, electronic mail or facsimile, by the Qualified Bid Deadline to the following parties (collectively, the "<u>Notice Parties</u>"):

Hal L. Baume
Deanna Forbush
FOX ROTHSCHILD, LLP
3800 Howard Hughes Parkway,  Suite 500
Las Vegas, Nevada  89169
Email: hbaume@foxrothschild.com
       dforbush@foxrothschild.com
Facsimile:  (702) 597-5503

FX Luxury Las Vegas I, LLC
c/o FX Real Estate and Entertainment Inc.
650 Madison Avenue
New York, New York 10022
Attention:  Mitchell Nelson
Email:  mitchell.nelson@flagluxury.com
Facsimile:  (212) 750-3034

Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Attention:  Robert W. Fagiola
       Andrew V. Tenzer
Email: rfagiola@shearman.com
      atenzer@shearman.com
Facsimile:  (646) 848-7606
      (646) 848-7799

Landesbank Baden-Württemberg,
New York Branch
280 Park Avenue, 31st Floor – West Bldg
New York, New York 10017
Attention:  Robert Dowling
Email:  robert.dowling@lbbwus.com
Facsimile:  (212) 584-1759

Haynes & Boone LLP
1221 Avenue of the Americas
New York, New York 10020
Attention:  Lennard M. Perkins
      Jason Nagai
Email: lennard.perkins@haynesboone.com

NexBank, SSB
13455 Noel Road, 22nd Floor
Dallas, Texas 75240
Attention:  Jeff Scott
      Marcia Kaufman
Email: jeff.scott@nexbank.com

jason.naigi@haynesboone.com          marcia.kaufman@nexbank.com
Facsimile:  (212) 918-8989          Facsimile:  (972) 934-4790
                                              (972) 934-4785


Grubb & Ellis | Las Vegas
3930 Howard Hughes Pkwy, Ste 180
Las Vegas, NV 89169
Attention:  Larry Singer
Email:  lsinger@gelasvegas.com
Facsimile:  (702) 862-8242


    **PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures consist of the following:

    1.    <u>Qualification</u>.  In order to perform due diligence and be entitled to submit a bid for the Assets, a party expressing an interest in the offered Assets (a "<u>Potential Bidder</u>") must first provide Debtor with (i) an executed confidentiality agreement in form and substance satisfactory to Debtor, and (ii) a statement demonstrating, to Debtor's satisfaction (in consultation with First Lien Agent), a bona fide interest in purchasing the Assets and describing the Potential Bidder's proposed transaction.  A bid will be deemed a Qualified Bid if:  (a) it is submitted by the Bidding Deadline; (b) it is cash only or cash with a firm financing commitment, with a ten percent (10%) escrow and balance to be paid at closing; (c) it is in an amount not less than $256 million ("<u>Minimum Bid Threshold</u>"); (d) it provides that the Bidder will pay all transfer taxes and title insurance and sales agent brokerage commissions of two and one-half percent (2.5%) of the purchase price incurred in connection with the Auction; (e) it provides for a purchase as-is, where-is with no substantial representations or warranties from the Debtor; (f) it is accompanied by (i) the purchase and sale agreement executed by the bidder, (ii) evidence of a deposit in escrow by the Bidding Deadline, of an amount equal to ten percent (10%) of the purchase price, (iii) proof of the bidder's ability to close escrow within thirty (30) days after entry of the Court's order approving the sale; and (g) will assume all, or substantially all, of Debtor's executory contracts and unexpired leases with non-debtor entities that are not affiliated with Debtor.  A Potential Bidder that satisfies all of the these requirements will become a "<u>Qualified Bidder</u>."  Such Qualified Bidders will be allowed access to Debtor's confidential business information upon execution of a confidentiality agreement.  Upon approval and execution of a confidentiality agreement, each Potential Bidder will have access to the Offering and the virtual data room.  The initial due diligence period within which all Qualified Bidders must complete their respective review of the due diligence materials shall lapse on _____, **2010 at 5:00 P.M., prevailing Pacific Time** (the "<u>Due Diligence Period</u>").

2.     Bid Requirements.  Each Qualified Bid shall be in writing and received by the Notice Parties no later than the Qualified Bid Deadline or **_____, 2010 at 5:00 P.M., prevailing Pacific Time**.

Each Qualified Bidder wishing to bid on the Assets shall submit its offer to purchase the Assets pursuant to a term sheet that specifically states that it is not subject to any further due diligence and that the terms thereof shall be irrevocable until two business days after the earlier of (i) the close of a sale of the Assets to an entity other than such Qualified Bidder, or (ii) 45 days after the Sale Hearing (defined below), unless otherwise agreed to by Debtor.   In addition, each term sheet shall include all of the proposed terms and conditions of the proposed transaction for purchase of the Assets including:[7] (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment, and such other evidence of ability to consummate the transaction as Debtor may reasonably request; (b) a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms proposed; and (c) any other pertinent factual information regarding the Qualified Bidder that would assist Debtor in its analysis of any regulatory or other issues that may affect or delay consummation of a transaction with the Qualified Bidder (the "Qualified Bid Term Sheet").  A Qualified Bidder must provide evidence of the Qualified Bidder's ability to provide adequate assurance of future performance of executory contracts and unexpired leases, such as audited financial statements of the Qualified Bidder, information regarding the capitalization of the Qualified Bidder, or information allowing Debtor to evaluate the value of any guarantees being provided by affiliates of a Qualified Bidder of its obligations under any assumed and assigned executory contracts or leases (an "Adequate Assurance Package").

3.     Auction Date.  An Auction will take place if one Qualified Bid acceptable to Debtor and the First Lien Agent is submitted.

4.     Bidding at the Auction.  Any Qualified Bidders shall be entitled to bid at the Auction, which shall be held on **_____, 2010 at _____ __.m.** at the United States Bankruptcy Court, Courtroom No. ___.  Debtor retains discretion with respect to how to conduct the Auction if Qualified Bids are received.  Only Debtor, First Lien Lenders, Second Lien Holders and any representative of the foregoing, together with any Qualified Bidders and their representatives, shall be entitled to attend the Auction, and the Qualified Bidders shall be entitled to make any additional bids ("Subsequent Bids") at the Auction.  All Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each bid will be fully disclosed to all other bidders throughout the entire Auction.  Debtor may announce at the Auction additional

---

[7] Debtor may file a supplement to the Motion prior to the hearing on the Bid Procedures Order, which attaches form agreements and a form of Sale Order.

procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent alternative bids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

5.    <u>Bidding Increment</u>.  Bidding at the Auction shall begin with the highest and best Qualified Bid received by Debtor on the Bid Deadline (the "<u>Baseline Bid</u>").  Each subsequent bid for the Assets (the "<u>Subsequent Bids</u>") shall thereafter be required to be in an amount of no less than $1,000,000 or such other amount as Debtor, in consultation with First Lien Lenders, determine is appropriate (the "<u>Minimum Bidding Increments</u>") above the immediately preceding bid amount.

6.    <u>Other Bidding Procedures</u>.  The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge of the then existing highest bid and the identity of the party making the then highest bid.  For the purpose of evaluating the value of the consideration provided from each Subsequent Bid, the value shall be the consideration payable to Debtor; it being agreed however that Debtor shall have the right to choose and recommend to the Court the best bid even if it is not the highest bid, based on a good faith analysis of which bidder is best qualified to close the transaction and take over the Properties and any other considerations deemed appropriate in the sole discretion of Debtor. At the conclusion of the bidding, Debtor shall announce its determination as to the bidder submitting the winning bid (the "<u>Winning Bidder</u>"), making the highest and best bid for the Assets in the sole and absolute discretion of Debtor, which bid shall be submitted to the Court for approval at the Sale Hearing.

7.    <u>Sale Hearing</u>.  Any Winning Bid will be subject to approval by the Bankruptcy Court.  If a Qualified Bid is received and deemed to be the Winning Bid, Debtor will immediately file the necessary pleadings to request a hearing seeking Bankruptcy Court approval of the Winning Bid at the earliest possible opportunity subject to the Court's calendar availability.

8.    <u>Closing</u>.  The closing of the sale of Assets to such entity that submitted a Winning Bid will occur in accordance with the terms of the agreement between Debtor and the Winning Bidder.

9.    <u>Failure to Consummate Purchase</u>.  If for any reason the party making the Winning Bid fails to consummate a sale of the Assets, or any part thereof, the offeror of the second highest and best Qualified Bid for any of the same Assets, will automatically be deemed to have submitted the highest and best Qualified Bid.  If such failure to consummate the purchase is the result of a breach by the Winning Bidder, then Debtor specifically reserves the right to seek all available damages from the defaulting bidder.

10. <u>Reservation of Rights; Deadline Extensions</u>.  The Debtor reserves the right, after consultation with the First Lien Agent, to (i) impose, at or prior to the Auction, additional terms and conditions on a sale of the Assets consistent with the Bid Procedures Order; (ii) extend the deadlines set forth in Bidding Procedures, adjourn the Auction at the Auction, and/or adjourn the Sale Hearing in open court without further notice; (iii) withdraw from the Auction any or all of the Assets at any time prior to or during the Auction or cancel the Auction; and (iv) reject all Qualified Bids.

11.    Notwithstanding anything contained herein to the contrary, Debtor shall not be permitted to amend these Bidding Procedures to reduce the Minimum Bid Threshold below $256 million, without the express consent of the First Lien Agent

///
///
///
///
///
///

(on behalf of the First Lien Lenders), which consent may be withheld in the First Lien Agent's and First Lien Lenders' sole discretion.

DATED this ___th day of _____ 2010.

**FOX ROTHSCHILD, LLP**

By_____
        HAL L. BAUME, ESQ.
        New Jersey Bar No. 028741977
        [*pro hac vice pending*]
        DEANNA FORBUSH, ESQ.
        Nevada Bar No. 6646
        3800 Howard Hughes Parkway, Suite 500
        Las Vegas, Nevada  89169
        Telephone:  (702) 262-6899
        *[Proposed] Counsel for FX Luxury Las Vegas I, LLC*

# EXHIBIT B

Proposed Bidding Procedures

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HAL L. BAUME, ESQ.
New Jersey Bar No. 028741977
[*pro hac vice pending*]
DEANNA FORBUSH, ESQ.
Nevada Bar No. 6646
FOX ROTHSCHILD, LLP
3800 Howard Hughes Parkway,  Suite 500
Las Vegas, Nevada  89169
Telephone:  (702) 262-6899
Facsimile:   (702) 597-5503
Email:  hbaume@foxrothschild.com
        dforbush@foxrothschild.com

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.  BK-S-10-17015-BAM |
| FX LUXURY LAS VEGAS I, LLC, a Nevada limited liability company, | Chapter 11 |
| Debtor. | **BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE BANKRUPTCY ESTATE** |

These Bidding Procedures for the Sale of Substantially All of Assets of the Bankruptcy Estate (the "Bidding Procedures") set forth the process by which FX Luxury Las Vegas, I, LLC ("FX I" or "Debtor") is authorized to conduct a sale by auction (the "Auction") of substantially all of its assets (the "Assets"), including, without limitation, the Properties, as defined in the Debtor's Motion to Establish Bidding Procedures in Connection With the Sale of Substantially All of the Assets of the Bankruptcy Estate (the "Bid Motion").[1]  The following Bidding Procedures were approved, pursuant to the Bid Motion, by order of the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") entered _____ ___, 2010 (the "Bid Procedures Order"), in Debtor's above-captioned chapter 11 bankruptcy case:

1. Qualification.  In order to perform due diligence and be entitled to submit a bid for the Assets, a party expressing an interest in the offered Assets (a "Potential Bidder") must first provide Debtor with (i) an executed confidentiality agreement in form and substance satisfactory to Debtor, and (ii) a statement demonstrating, to

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning ascribed in the Bid Motion.

Debtor's satisfaction (in consultation with First Lien Agent), a bona fide interest in purchasing the Assets and describing the Potential Bidder's proposed transaction. A bid will be deemed a Qualified Bid if: (a) it is submitted by the Bidding Deadline; (b) it is cash only or cash with a firm financing commitment, with a ten percent (10%) escrow and balance to be paid at closing; (c) it is in an amount not less than $256 million ("<u>Minimum Bid Threshold</u>"); (d) it provides that the Bidder will pay all transfer taxes and title insurance and commissions of two and one-half percent (2.5%) of the purchase price incurred in connection with the Auction; (e) it provides for a purchase as-is, where-is with no substantial representations or warranties from the Debtor; and (f) it is accompanied by (i) the purchase and sale agreement executed by the bidder, (ii) evidence of a deposit in escrow by the Bidding Deadline, of an amount equal to ten percent (10%) of the purchase price, (iii) proof of the bidder's ability to close escrow within thirty (30) days after entry of the Court's order approving the sale; and (g) will assume all, or substantially all, of Debtor's executory contracts and unexpired leases with non-debtor entities that are not affiliated with Debtor. A Potential Bidder that satisfies all of the these requirements will become a "<u>Qualified Bidder</u>." Such Qualified Bidders will be allowed access to Debtor's confidential business information upon execution of a confidentiality agreement. Upon approval and execution of a confidentiality agreement, each Potential Bidder will have access to the Offering and the virtual data room. The initial due diligence period within which all Qualified Bidders must complete their respective review of the due diligence materials shall lapse on **_____, 2010, at 5:00 P.M. prevailing Pacific Time** (the "<u>Due Diligence Period</u>").

2.    <u>Bid Requirements</u>. Each Qualified Bid shall be in writing and received by Debtor, First Lien Agent, Agent for Second Lien Holders ("<u>Second Lien Agent</u>") and counsel to each of the foregoing, and Broker (collectively, the "<u>Notice Parties</u>"), no later than **_____, 2010, at 5:00 P.M. prevailing Pacific Time** (the "<u>Qualified Bid Deadline</u>"). Qualified Bids must be sent to each of the Notice Parties, as follows:

(a) if to the Debtor, to:

FX Luxury Las Vegas I, LLC
c/o FX Real Estate and Entertainment Inc.
650 Madison Avenue
New York, New York 10022
Attention: Mitchell Nelson
Email: mitchell.nelson@flagluxury.com
Facsimile: (212) 750-3034

with copies to:

Fox Rothschild, LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Attention: Deanna Forbush
Email: dforbush@foxrothschild.com
Facsimile: (702) 597-5503

1

          (b)  if to First Lien Agent, to:

2

              Landesbank Baden-Württemberg, New York Branch
              280 Park Avenue, 31st Floor – West Building

3

              New York, New York 10017
              Attention:  Robert Dowling

4

              Email:  robert.dowling@lbbwus.com
              Facsimile:  (212) 584-1759

5

6

              with copies to:

7

                Shearman & Sterling LLP
                599 Lexington Avenue

8

                New York, New York 10022
                Attention:  Robert W. Fagiola

9

                        Andrew V. Tenzer

10

                Email:  rfagiola@shearman.com
                        atenzer@shearman.com

11

                Facsimile: (646) 848-7606
                        (646) 848-7799

12

13

          (c)  if to Second Lien Agent, to:

14

              NexBank, SSB
              13455 Noel Road, 22nd Floor

15

              Dallas, Texas 75240
              Attention:  Jeff Scott

16

                      Marcia Kaufman
              Email: jeff.scott@nexbank.com

17

                      marcia.kaufman@nexbank.com
              Facsimile:  (972) 934-4790

18

                      (972) 934-4785

19

              with copies to:

20

                Haynes & Boone LLP
                1221 Avenue of the Americas

21

                New York, New York 10020
                Attention:  Lennard M. Perkins

22

                      Jason Nagai
              Email: lennard.perkins@haynesboone.com

23

                      jason.naigi@haynesboone.com
              Facsimile:  (212) 918-8989

24    ///

25    ///

26    ///

27    ///

28    ///

(d)   if to Broker, to:

> Grubb & Ellis | Las Vegas
> 3930 Howard Hughes Parkway, Suite 180
> Las Vegas, Nevada 89169
> Attention:  Larry Singer
> Email:  lsinger@gelasvegas.com
> Facsimile:  (702) 862-8242

Each Qualified Bidder wishing to bid on the Assets shall submit its offer to purchase the Assets pursuant to a term sheet that specifically states that it is not subject to any further due diligence and that the terms thereof shall be irrevocable until two business days after the earlier of (i) the close of a sale of the Assets to an entity other than such Qualified Bidder, or (ii) 30 days after the Sale Hearing (defined below), unless otherwise agreed to by Debtor.  In addition, each term sheet shall include all of the proposed terms and conditions of the proposed transaction for purchase of the Assets including:[2] (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment, and such other evidence of ability to consummate the transaction as Debtor may reasonably request; (b) a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms proposed; and (c) any other pertinent factual information regarding the Qualified Bidder that would assist Debtor in its analysis of any regulatory or other issues that may affect or delay consummation of a transaction with the Qualified Bidder (the "Qualified Bid Term Sheet").  A Qualified Bidder must provide evidence of the Qualified Bidder's ability to provide adequate assurance of future performance of executory contracts and unexpired leases, such as audited financial statements of the Qualified Bidder, information regarding the capitalization of the Qualified Bidder, or information allowing Debtor to evaluate the value of any guarantees being provided by affiliates of a Qualified Bidder of its obligations under any assumed and assigned executory contracts or leases (an "Adequate Assurance Package").

3.      Auction Date.  An Auction will take place if one Qualified Bid acceptable to Debtor and the First Lien Agent is submitted.

4.      Bidding at the Auction.  Any Qualified Bidders shall be entitled to bid at the Auction, which shall be held on _____, 2010 at _____ __.m. at the law offices of Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, Nevada 89169.  Debtor retains discretion, after consultation with the First Lien Agent, with respect to how to conduct the Auction if Qualified Bids are received.  Only Debtor, First Lien Lenders, Second Lien Lenders, and any representative of the foregoing, together with any Qualified Bidders and their representatives, shall be entitled to attend the Auction; provided, however, that only Qualified Bidders shall be entitled to make any additional bids ("Subsequent Bids") at the Auction.  All Qualified Bidders shall be entitled to be present for all

---

[2]   Debtor may file a supplement to the Motion prior to the hearing on the Bid Procedures Order, which attaches form agreements and a form of Sale Order.

bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each bid will be fully disclosed to all other bidders throughout the entire Auction. Debtor may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent alternative bids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

5.     <u>Bidding Increment</u>.  Bidding at the Auction shall begin with the highest and best Qualified Bid received by Debtor on the Bid Deadline (the "<u>Baseline Bid</u>"). Each subsequent bid for the Assets (the "<u>Subsequent Bids</u>") shall thereafter be required to be in an amount of no less than $1,000,000 or such other amount as Debtor, in consultation with First Lien Lenders, determine is appropriate (the "<u>Minimum Bidding Increments</u>") above the immediately preceding bid amount.

6.     <u>Other Bidding Procedures</u>.   The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge of the then existing highest bid and the identity of the party making the then highest bid. For the purpose of evaluating the value of the consideration provided from each Subsequent Bid, the value shall be the consideration payable to Debtor; it being agreed however that Debtor shall have the right to choose and recommend to the Court the best bid even if it is not the highest bid, based on a good faith analysis of which bidder is best qualified to close the transaction and take over the Properties and any other considerations deemed appropriate in the reasonable discretion of Debtor, after consultation with the First Lien Agent. At the conclusion of the bidding, Debtor shall announce its determination as to the bidder submitting the winning bid (the "<u>Winning Bidder</u>"), making the highest and best bid for the Assets in the reasonable discretion of Debtor, after consultation with the First Lien Agent, which bid shall be submitted to the Court for approval at the Sale Hearing.

7.     <u>Sale Hearing</u>.   Any Winning Bid will be subject to approval by the Bankruptcy Court.  If a Qualified Bid is received and deemed to be the Winning Bid, Debtor will immediately file the necessary pleadings to request a hearing seeking Bankruptcy Court approval of the Winning Bid at the earliest possible opportunity subject to the Court's calendar availability.

8.     <u>Closing</u>.   The closing of the sale of Assets to such entity that submitted a Winning Bid will occur in accordance with the terms of the agreement between Debtor and the Winning Bidder.

9.     <u>Failure to Consummate Purchase</u>.   If for any reason the party making the Winning Bid fails to consummate a sale of the Assets, or any part thereof, the offeror of the second highest and best Qualified Bid for any of the same Assets, may, if Debtor and the First Lien Agent approve, be deemed to have submitted the highest and best Qualified Bid.  If such failure to consummate the purchase is the

result of a breach by the Winning Bidder, then Debtor specifically reserves the right to seek all available damages from the defaulting bidder.

10.    <u>Reservation of Rights; Deadline Extensions</u>.  Debtor reserves the right, after consultation with the First Lien Agent, to (i) impose, at or prior to the Auction, additional terms and conditions on a sale of the Assets consistent with the Bid Procedures Order and the Original Lock Up and Plan Support Agreement; (ii) extend the deadlines set fort in Bidding Procedures, adjourn the Auction at the Auction, and/or adjourn the Sale Hearing in open court without further notice; (iii) withdraw from the Auction any or all of the Assets at any time prior to or during the Auction or cancel the Auction; and (iv) reject all Qualified Bids.

11.    Notwithstanding anything contained herein to the contrary, Debtor shall not be permitted to amend these Bidding Procedures to reduce the Minimum Bid Threshold below $256 million, without the express consent of the First Lien Agent (on behalf of the First Lien Lenders), which consent may be withheld in the First Lien Agent's and First Lien Lenders' sole discretion.

DATED this ___ day of April 2010.

**FOX ROTHSCHILD, LLP**

By_____
         HAL L. BAUME, ESQ.
         New Jersey Bar No. 028741977
         [*pro hac vice pending*]
         DEANNA FORBUSH, ESQ.
         Nevada Bar No. 6646
         3800 Howard Hughes Parkway, Suite 500
         Las Vegas, Nevada  89169
         Telephone:  (702) 262-6899

*[Proposed] Counsel for FX Luxury Las Vegas I, LLC*

# EXHIBIT C

PROPOSED FORM OF BIDDING PROCEDURES ORDER

**\*\*\* PROPOSED FORM OF ORDER \*\*\***

HAL L. BAUME, ESQ.
New Jersey Bar No. 028741977
[*pro hac vice pending*]
DEANNA FORBUSH, ESQ.
Nevada Bar No. 6646
FOX ROTHSCHILD, LLP
3800 Howard Hughes Parkway,  Suite 500
Las Vegas, Nevada  89169
Telephone:  (702) 262-6899
Facsimile:   (702) 597-5503
Email:  hbaume@foxrothschild.com
          dforbush@foxrothschild.com
[*Proposed] Counsel for FX Luxury Las Vegas I, LLC*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.  BK-S-10-17015-MAB |
| FX  LUXURY  LAS  VEGAS  I,  LLC,  a Nevada limited liability company,<br><br>Debtor. | Chapter 11<br><br>**ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363 AND 365 APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE BANKRUPTCY ESTATE; (B) SCHEDULING AN AUCTION TO CONSIDER COMPETING BIDS FOR THE ASSETS; AND (C) APPROVING THE FORM AND MANNER OF NOTICE OF THE AUCTION**<br><br>Hearing Date:          [INSERT]<br>Hearing Time:          [INSERT] |

1    The Court has reviewed and considered the Motion to Establish Bid Procedures in

2   Connection With the Sale of Substantially all of the Assets of the Bankruptcy Estate (the

3   "<u>Motion</u>"),[1] of FX Luxury Las Vegas I, LLC ("<u>Debtor</u>" or "<u>FX I</u>"), debtor and debtor-in-possession

4   in the above-captioned case (the "<u>Chapter 11 Case</u>"), for an order (a) approving bidding procedures

5   (the "<u>Bidding Procedures</u>") in connection with the sale of substantially all of Debtor's assets (the

6   "<u>Assets</u>"), including without limitation, the Properties (as defined in the Motion), (b) scheduling an

7   auction to consider competing bids for the Assets, and (c) approving the form and manner of notice

8   of the auction for the Assets (the "<u>Auction</u>"), including the form and manner of service of the notice

9   (the "<u>Auction Notice</u>"); this Court having jurisdiction over this matter and over the property of the

10  Debtor and its respective bankruptcy estate, pursuant to 28 U.S.C. §157(a) and 1334(b); this being a

11  core proceeding, as defined in 28 U.S.C. §157(b)(2)(A), (M), (N) and (O); and with venue being

12  proper before this Court, pursuant to 28 U.S.C. §1408 and 1409; with no opposition to the Motion

13  having been filed; and due and proper notice of the Motion having been given with no further notice

14  having been necessary; and the Court having determined that the relief granted herein is in the best

15  interest of Debtor, its estate, its creditors and other parties in interest; and upon the record at the

16  hearing (the "<u>Bidding Procedures Hearing</u>") on the Motion; and after due deliberation thereon; and

17  good and sufficient cause appearing therefor,

18          **IT IS HEREBY FOUND, CONCLUDED AND DECLARED THAT:**[2]

19          A.    This Court has jurisdiction over this matter and over the property of Debtor and its

20  bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

21          B.    This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

22          C.    Debtor has articulated good and sufficient notice of the relief sought in the Motion,

23  and no further notice is required.

24          D.    Debtor has articulated good and sufficient reasons for (a) approving the Bidding

25  Procedures in connection with the sale of substantially all of the Assets, including without

26  limitation, the Properties (as defined in the Motion); (b) scheduling an auction to consider

27

28
_____
    [1] Capitalized terms used herein and not otherwise defined have the meanings ascribed to them in the Motion.
    [2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
fact when appropriate, pursuant to Bankruptcy Rule 7052.

VG1 35718v3 04/21/10                                    2

competing bids for the Assets; and (c) approving the form and manner of notice and the form and manner of the service of the Auction Notice to be distributed to creditors and other parties in interest, including prospective bidders and executory contract parties, substantially in the form of Exhibit B hereto.

E.     The proposed Auction Notice is appropriate and reasonably calculated to provide all interested parties with timely notice of the Bidding Procedures, the Auction, and executory contract and unexpired lease assumption and assignment-related cure amounts.

F.     The proposed Bidding Procedures are reasonable and appropriate and represent the best method for attracting and maintaining the interest of a Qualified Bidder, while at the same time preserving the opportunity to attract higher and better offers, in order to maximize the value of the Assets for the benefit of Debtor's estate.

G.     Debtor has demonstrated a sound business justification for the Bidding Protections.

H.     In light of the foregoing, and in consideration of the record presented to the Court at the Bidding Procedures Hearing, the Bidding Procedures are fair and reasonable, reflecting the exercise of Debtor's considered business judgment, and are reasonably required in order to maximize the value received for the sale of the Assets.

J.     Entry of this Order is therefore in the best interests of Debtor, its estate, its creditors and other interested parties.

**BASED ON THE FOREGOING FINDINGS AND CONCLUSIONS, AND IN CONSIDERATION OF THE RECORD OF THE BIDDING PROCEDURES HEARING, AND GOOD AND SUFFICIENT CAUSE APPEARING THEREFOR; IT IS HEREBY ORDERED THAT:**

1.     The relief requested in the Motion is granted in all respects.

2.     Notice of the Motion and the Bidding Procedures Hearing was adequate and in accordance with the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Nevada (the "<u>Local Rules</u>"), and the prior orders of this Court.

3.      The Bidding Procedures, attached hereto as **Exhibit A**, are hereby approved in all respects and are incorporated herein by this reference.

4.      The Auction will be conducted on _____, **2010, at** _____ __**.M.** at the law offices of Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, Nevada 89169.

5.      The Deadline for submitting a Qualified Bid Term Sheet in accordance with the Bidding Procedures is _____, **2010 at 5:00 P.M., prevailing Pacific Time** ("Qualified Bid Deadline").

6.      The Deadline to object to adequate assurance of future performance on any executory contracts and unexpired leases to be assumed and assigned in connection with a successful bid, or to assumption and assignment of any executory contracts and unexpired leases in conjunction with the Sale, is _____, **2010 at 5:00 P.M., prevailing Pacific Time**.  Copies of all Adequate Assurance Packages by Qualified Bidders shall be served on parties to executory contracts and unexpired leases by no later than _____, **2010**.

7.      The Deadline to object to the proposed cure amounts on executory contracts and unexpired leases or to the sale of the Assets to the highest and best bidder at the Auction is _____, **2010 at 5:00 P.M., prevailing Pacific Time**.

8.      All bids for the Assets must be submitted in writing, either by regular mail, electronic mail or facsimile, by the Qualified Bid Deadline to the following parties (collectively, the "Notice Parties"):

Fox Rothschild, LLP                     FX Luxury Las Vegas I, LLC
3883 Howard Hughes Parkway              c/o FX Real Estate and Entertainment Inc.
Suite 500                               650 Madison Avenue
Las Vegas, Nevada 89169                 New York, New York 10022
Attention:  Deanna Forbush              Attention:  Mitchell Nelson
Email: dforbush@foxrothschild.com       Email:  mitchell.nelson@flagluxury.com
Facsimile: (702) 597-5503               Facsimile:  (212) 750-3034

Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Attention:  Robert W. Fagiola
                   Andrew V. Tenzer
Email: rfagiola@shearman.com
           atenzer@shearman.com
Facsimile:  (646) 848-7606
                   (646) 848-8283
                   (646) 848-7799

Landesbank Baden-Württemberg,
New York Branch
280 Park Avenue, 31st Floor – West Bldg
New York, New York 10017
Attention:  Robert Dowling
Email:  robert.dowling@lbbwus.com
Facsimile:  (212) 584-1759

Haynes & Boone LLP
1221 Avenue of the Americas
New York, New York 10020
Attention:  Lennard M. Perkins
                   Jason Nagai
Email: lennard.perkins@haynesboone.com
           jason.naigi@haynesboone.com
Facsimile:  (212) 918-8989

NexBank, SSB
13455 Noel Road, 22nd Floor
Dallas, Texas 75240
Attention:  Jeff Scott
                   Marcia Kaufman
Email: jeff.scott@nexbank.com
           marcia.kaufman@nexbank.com
Facsimile:  (972) 934-4790
                   (972) 934-4785

Grubb & Ellis | Las Vegas
3930 Howard Hughes Pkwy, Ste 180
Las Vegas, NV 89169
Attention:  Larry Singer
Email:  lsinger@gelasvegas.com
Facsimile:  (702) 862-8242

9.    All Qualified Bidders shall be entitled to bid and make any additional bids at the Auction.  All Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each bid will be fully disclosed to all other bidders throughout the entire Auction.

10.    The Auction shall be conducted in accordance with the terms and provisions set forth in the Bidding Procedures.

11.    Debtor, at or before the Auction, after consultation with the First Lien Agent, may impose such other and additional terms and conditions as it determines to be in the best interests of Debtor, its estate, its creditors and other parties in interest so long as such terms are not inconsistent with the terms of this Order.

12.    Every person or entity who submits a Qualified Bid for the Assets shall be deemed to have read and understood the terms and conditions of the Bidding Procedures and shall comply with and be bound by such Bidding Procedures.

13.    All Qualified Bids, including all initial bids and any subsequent written bids, shall remain open and irrevocable pursuant to the terms of the Bidding Procedures.

14.    The Bankruptcy Court shall retain exclusive jurisdiction over any dispute relating to the Auction or the sale of any of the Assets.

15.    Debtor is hereby authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements consistent with this Order.

16.    This Court shall retain jurisdiction to interpret, construe and enforce the terms and provisions of this Order in all respects, including, without limitation, to decide any disputes arising between Debtor and any potential bidders.

Respectfully submitted by:

**FOX ROTHSCHILD LLP**

By_____*s/ Hal L. Baume*_____
     HAL L. BAUME, ESQ.
     New Jersey Bar No. 028741977
     [*pro hac vice pending*]
     DEANNA FORBUSH, ESQ.
     Nevada Bar No. 6646
     3800 Howard Hughes Parkway
     Suite 500
     Las Vegas, Nevada  89169
     Telephone:  (702) 262-6899
*[Proposed] Counsel for FX Luxury Las Vegas I, LLC*


APPROVED/DISAPPROVED:                    APPROVED/DISAPPROVED:

**SHEARMAN & STERLING LLP**            **OFFICE OF THE UNITED STATES TRUSTEE**

By_____            By_____
     ROBERT W. FAGIOLA, ESQ.                [INSERT NAME]
     ANDREW V. TENZER, ESQ.                 300 Las Vegas Boulevard South
     599 Lexington Avenue                   Suite 4300
     New York, New York 10022               Las Vegas, Nevada 89101
     *Counsel for First Lien Agent Landesbank*
     *Baden-Württemberg, New York Branch*

1

## <u>CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021</u>

2

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

3

☐      The Court has waived the requirement of approval under LR 9021.

4

5

6

☐      This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

7

8

9

☒      This is a chapter 9, 11, or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

10

11

         Approved / Disapproved

12

13

☐      I certify that I have served a copy of this order with the motion, and no parties appeared or filed written objections.

14

15

16

# # #

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

BIDDING PROCEDURES

HAL L. BAUME, ESQ.
New Jersey Bar No. 028741977
[*pro hac vice pending*]
DEANNA FORBUSH, ESQ.
Nevada Bar No. 6646
FOX ROTHSCHILD, LLP
3800 Howard Hughes Parkway,  Suite 500
Las Vegas, Nevada  89169
Telephone:  (702) 262-6899
Facsimile:   (702) 597-5503
Email:  hbaume@foxrothschild.com
            dforbush@foxrothschild.com

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.  BK-S-10-17015-BAM |
| FX LUXURY LAS VEGAS I, LLC, a Nevada limited liability company, | Chapter 11 |
| Debtor. | **BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE BANKRUPTCY ESTATE** |

These Bidding Procedures for the Sale of Substantially All of Assets of the Bankruptcy Estate (the "Bidding Procedures") set forth the process by which FX Luxury Las Vegas, I, LLC ("FX I" or "Debtor") is authorized to conduct a sale by auction (the "Auction") of substantially all of its assets (the "Assets"), including, without limitation, the Properties, as defined in the Debtor's Motion to Establish Bidding Procedures in Connection With the Sale of Substantially All of the Assets of the Bankruptcy Estate (the "Bid Motion").[1]  The following Bidding Procedures were approved, pursuant to the Bid Motion, by order of the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") entered _____ ___, 2010 (the "Bid Procedures Order"), in Debtor's above-captioned chapter 11 bankruptcy case:

1.    Qualification.  In order to perform due diligence and be entitled to submit a bid for the Assets, a party expressing an interest in the offered Assets (a "Potential Bidder") must first provide Debtor with (i) an executed confidentiality agreement in form and substance satisfactory to Debtor, and (ii) a statement demonstrating, to

---

[1] Unless otherwise defined herein, all capitalized terms shall have the same meaning ascribed in the Bid Motion.

Debtor's satisfaction (in consultation with First Lien Agent), a bona fide interest in purchasing the Assets and describing the Potential Bidder's proposed transaction. A bid will be deemed a Qualified Bid if: (a) it is submitted by the Bidding Deadline; (b) it is cash only or cash with a firm financing commitment, with a ten percent (10%) escrow and balance to be paid at closing; (c) it is in an amount not less than $256 million ("Minimum Bid Threshold"); (d) it provides that the Bidder will pay all transfer taxes and title insurance and commissions of two and one-half percent (2.5%) of the purchase price incurred in connection with the Auction; (e) it provides for a purchase as-is, where-is with no substantial representations or warranties from the Debtor; and (f) it is accompanied by (i) the purchase and sale agreement executed by the bidder, (ii) evidence of a deposit in escrow by the Bidding Deadline, of an amount equal to ten percent (10%) of the purchase price, (iii) proof of the bidder's ability to close escrow within thirty (30) days after entry of the Court's order approving the sale; and (g) will assume all, or substantially all, of Debtor's executory contracts and unexpired leases with non-debtor entities that are not affiliated with Debtor. A Potential Bidder that satisfies all of the these requirements will become a "Qualified Bidder." Such Qualified Bidders will be allowed access to Debtor's confidential business information upon execution of a confidentiality agreement. Upon approval and execution of a confidentiality agreement, each Potential Bidder will have access to the Offering and the virtual data room. The initial due diligence period within which all Qualified Bidders must complete their respective review of the due diligence materials shall lapse on **_____, 2010, at 5:00 P.M. prevailing Pacific Time** (the "Due Diligence Period").

2. <u>Bid Requirements</u>. Each Qualified Bid shall be in writing and received by Debtor, First Lien Agent, Agent for Second Lien Holders ("Second Lien Agent") and counsel to each of the foregoing, and Broker (collectively, the "Notice Parties"), no later than **_____, 2010, at 5:00 P.M. prevailing Pacific Time** (the "Qualified Bid Deadline"). Qualified Bids must be sent to each of the Notice Parties, as follows:

(a) if to the Debtor, to:

FX Luxury Las Vegas I, LLC
c/o FX Real Estate and Entertainment Inc.
650 Madison Avenue
New York, New York 10022
Attention: Mitchell Nelson
Email: mitchell.nelson@flagluxury.com
Facsimile: (212) 750-3034

with copies to:

Fox Rothschild, LLP
3800 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Attention: Deanna Forbush
Email: dforbush@foxrothschild.com
Facsimile: (702) 597-5503

1          (b)  if to First Lien Agent, to:

2              Landesbank Baden-Württemberg, New York Branch
            280 Park Avenue, 31st Floor – West Building
3              New York, New York 10017
            Attention:  Robert Dowling
4              Email:  robert.dowling@lbbwus.com
            Facsimile:  (212) 584-1759
5

6              with copies to:

7                 Shearman & Sterling LLP
               599 Lexington Avenue
8                 New York, New York 10022
               Attention:  Robert W. Fagiola
9                       Andrew V. Tenzer
               Email:  rfagiola@shearman.com
10                       atenzer@shearman.com
               Facsimile: (646) 848-7606
11                       (646) 848-7799

12

13          (c)  if to Second Lien Agent, to:

14              NexBank, SSB
            13455 Noel Road, 22nd Floor
15              Dallas, Texas 75240
            Attention:  Jeff Scott
16                  Marcia Kaufman
            Email: jeff.scott@nexbank.com
17                  marcia.kaufman@nexbank.com
            Facsimile:  (972) 934-4790
18                  (972) 934-4785

19              with copies to:

20                 Haynes & Boone LLP
               1221 Avenue of the Americas
21                 New York, New York 10020
               Attention:  Lennard M. Perkins
22                      Jason Nagai
               Email: lennard.perkins@haynesboone.com
23                    jason.naigi@haynesboone.com
               Facsimile:  (212) 918-8989

24  ///

25  ///

26  ///

27  ///

28  ///

(d)   if to Broker, to:

Grubb & Ellis | Las Vegas
3930 Howard Hughes Parkway, Suite 180
Las Vegas, Nevada 89169
Attention:  Larry Singer
Email:  lsinger@gelasvegas.com
Facsimile:  (702) 862-8242

Each Qualified Bidder wishing to bid on the Assets shall submit its offer to purchase the Assets pursuant to a term sheet that specifically states that it is not subject to any further due diligence and that the terms thereof shall be irrevocable until two business days after the earlier of (i) the close of a sale of the Assets to an entity other than such Qualified Bidder, or (ii) 30 days after the Sale Hearing (defined below), unless otherwise agreed to by Debtor.  In addition, each term sheet shall include all of the proposed terms and conditions of the proposed transaction for purchase of the Assets including:[2] (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment, and such other evidence of ability to consummate the transaction as Debtor may reasonably request; (b) a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms proposed; and (c) any other pertinent factual information regarding the Qualified Bidder that would assist Debtor in its analysis of any regulatory or other issues that may affect or delay consummation of a transaction with the Qualified Bidder (the "Qualified Bid Term Sheet").  A Qualified Bidder must provide evidence of the Qualified Bidder's ability to provide adequate assurance of future performance of executory contracts and unexpired leases, such as audited financial statements of the Qualified Bidder, information regarding the capitalization of the Qualified Bidder, or information allowing Debtor to evaluate the value of any guarantees being provided by affiliates of a Qualified Bidder of its obligations under any assumed and assigned executory contracts or leases (an "Adequate Assurance Package").

3.      Auction Date.  An Auction will take place if one Qualified Bid acceptable to Debtor and the First Lien Agent is submitted.

4.      Bidding at the Auction.  Any Qualified Bidders shall be entitled to bid at the Auction, which shall be held on _____, 2010 at _____ __.m. at the law offices of Greenberg Traurig, LLP, 3773 Howard Hughes Parkway, Suite 400 North, Las Vegas, Nevada 89169.  Debtor retains discretion, after consultation with the First Lien Agent, with respect to how to conduct the Auction if Qualified Bids are received.   Only Debtor, First Lien Lenders, Second Lien Lenders, and any representative of the foregoing, together with any Qualified Bidders and their representatives, shall be entitled to attend the Auction; provided, however, that only Qualified Bidders shall be entitled to make any additional bids ("Subsequent Bids") at the Auction.  All Qualified Bidders shall be entitled to be present for all

---

[2]   Debtor may file a supplement to the Motion prior to the hearing on the Bid Procedures Order, which attaches form agreements and a form of Sale Order.

bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each bid will be fully disclosed to all other bidders throughout the entire Auction. Debtor may announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent alternative bids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

5.      Bidding Increment.  Bidding at the Auction shall begin with the highest and best Qualified Bid received by Debtor on the Bid Deadline (the "Baseline Bid"). Each subsequent bid for the Assets (the "Subsequent Bids") shall thereafter be required to be in an amount of no less than $1,000,000 or such other amount as Debtor, in consultation with First Lien Lenders, determine is appropriate (the "Minimum Bidding Increments") above the immediately preceding bid amount.

6.      Other Bidding Procedures.  The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge of the then existing highest bid and the identity of the party making the then highest bid. For the purpose of evaluating the value of the consideration provided from each Subsequent Bid, the value shall be the consideration payable to Debtor; it being agreed however that Debtor shall have the right to choose and recommend to the Court the best bid even if it is not the highest bid, based on a good faith analysis of which bidder is best qualified to close the transaction and take over the Properties and any other considerations deemed appropriate in the reasonable discretion of Debtor, after consultation with the First Lien Agent. At the conclusion of the bidding, Debtor shall announce its determination as to the bidder submitting the winning bid (the "Winning Bidder"), making the highest and best bid for the Assets in the reasonable discretion of Debtor, after consultation with the First Lien Agent, which bid shall be submitted to the Court for approval at the Sale Hearing.

7.      Sale Hearing.  Any Winning Bid will be subject to approval by the Bankruptcy Court.  If a Qualified Bid is received and deemed to be the Winning Bid, Debtor will immediately file the necessary pleadings to request a hearing seeking Bankruptcy Court approval of the Winning Bid at the earliest possible opportunity subject to the Court's calendar availability.

8.      Closing.  The closing of the sale of Assets to such entity that submitted a Winning Bid will occur in accordance with the terms of the agreement between Debtor and the Winning Bidder.

9.      Failure to Consummate Purchase.  If for any reason the party making the Winning Bid fails to consummate a sale of the Assets, or any part thereof, the offeror of the second highest and best Qualified Bid for any of the same Assets, may, if Debtor and the First Lien Agent approve, be deemed to have submitted the highest and best Qualified Bid.  If such failure to consummate the purchase is the

result of a breach by the Winning Bidder, then Debtor specifically reserves the right to seek all available damages from the defaulting bidder.

10.    Reservation of Rights; Deadline Extensions.  Debtor reserves the right, after consultation with the First Lien Agent, to (i) impose, at or prior to the Auction, additional terms and conditions on a sale of the Assets consistent with the Bid Procedures Order and the Original Lock Up and Plan Support Agreement; (ii) extend the deadlines set fort in Bidding Procedures, adjourn the Auction at the Auction, and/or adjourn the Sale Hearing in open court without further notice; (iii) withdraw from the Auction any or all of the Assets at any time prior to or during the Auction or cancel the Auction; and (iv) reject all Qualified Bids.

11.    Notwithstanding anything contained herein to the contrary, Debtor shall not be permitted to amend these Bidding Procedures to reduce the Minimum Bid Threshold below $256 million, without the express consent of the First Lien Agent (on behalf of the First Lien Lenders), which consent may be withheld in the First Lien Agent's and First Lien Lenders' sole discretion.

DATED this ___ day of April 2010.

**FOX ROTHSCHILD, LLP**

By_____
      HAL L. BAUME, ESQ.
      New Jersey Bar No. 028741977
      [*pro hac vice pending*]
      DEANNA FORBUSH, ESQ.
      Nevada Bar No. 6646
      3800 Howard Hughes Parkway, Suite 500
      Las Vegas, Nevada  89169
      Telephone:  (702) 262-6899

*[Proposed] Counsel for FX Luxury Las Vegas I, LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

Auction Notice

HAL L. BAUME, ESQ.
New Jersey Bar No. 028741977
[*pro hac vice pending*]
DEANNA FORBUSH, ESQ.
Nevada Bar No. 6646
FOX ROTHSCHILD, LLP
3800 Howard Hughes Parkway,  Suite 500
Las Vegas, Nevada  89169
Telephone:  (702) 262-6899
Facsimile:   (702) 597-5503
Email: hbaume@foxrothschild.com
        dforbush@foxrothschild.com
[*Proposed*] *Counsel for FX Luxury Las Vegas I, LLC*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No.  BK-S-10-17015-BAM |
| FX LUXURY LAS VEGAS I, LLC, a Nevada limited liability company, | Chapter 11 |
| Debtor. | **NOTICE OF AUCTION OF SUBSTANTIALLY ALL OF THE ASSETS OF THE BANKRUPTCY ESTATE** |
| | **Auction Date:**    **_____, 2010**<br>**Auction Time:    [INSERT]**<br>**Location:         3800 Howard Hughes Pkwy**<br>**Suite 500**<br>**Las Vegas, Nevada 89169** |

**TO ALL CREDITORS, EQUITY INTEREST HOLDERS AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on _____ ___, 2010, pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") entered an order:  (a) approving bidding procedures (the "Bidding Procedures") in

connection with the sale of substantially all of the assets (the "<u>Assets</u>") of FX Luxury Las Vegas I, LLC ("<u>Debtor</u>" or "<u>FX I</u>"), including, without limitation, the Debtor's real property consisting of 17.72 contiguous acres of land (the "<u>Properties</u>") located on the world famous Las Vegas Strip at the southeast corner of Las Vegas Boulevard and Harmon Avenue in Las Vegas, Nevada, and extending south almost to Tropicana Avenue upon which there exists a motel operation and several commercial and retail tenants; (b) scheduling an auction to consider competing bids for the Assets; and (c) approving the form and manner of notice of the auction for the Assets (the "<u>Auction</u>"), including the form and manner of service of the notice  (the "<u>Auction Notice</u>").

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures set forth the process by which Debtor is authorized to conduct the Auction. ***<u>ALL INTERESTED BIDDERS SHOULD CAREFULLY READ THE BIDDING PROCEDURES</u>***.  To the extent there are any inconsistencies between the Bidding Procedures and the summary description of its terms and conditions contained in this Auction and Hearing Notice, the terms of the Bidding Procedures shall control.  Copies of the Bidding Procedures are on file with the Clerk of Court, United States Bankruptcy Court, Foley Federal Building, 300 Las Vegas Boulevard South, Las Vegas, Nevada 89101.

**PLEASE TAKE FURTHER NOTICE** that an Auction will be conducted on **_____, 2010, at _____ __.M.** at the law offices of Fox Rothschild, LLP, 3800 Howard Hughes Parkway, Suite 500, Las Vegas, Nevada 89169.

**PLEASE TAKE FURTHER NOTICE** that the Deadline for submitting a Qualified Bid Term Sheet in accordance with the Bidding Procedures is **_____, 2010 at 5:00 P.M., prevailing Pacific Time** ("<u>Qualified Bid Deadline</u>").

**PLEASE TAKE FURTHER NOTICE** that the Deadline to object to adequate assurance of future performance on any executory contracts and unexpired leases to be assumed and assigned in connection with a successful bid, or to assumption and assignment of any executory contracts and unexpired leases in conjunction with the Sale, is **_____, 2010 at 5:00**

1  **P.M., prevailing Pacific Time**.  Copies of Adequate Assurance Packages by Qualified Bidders

2  will be served on parties to executory contracts and unexpired leases by no later than

3  _____ ___, 2010.

4         **PLEASE TAKE FURTHER NOTICE** that the Deadline to object to the proposed cure

5  amounts on executory contracts and unexpired leases or to the sale of the Assets to the highest

6  and best bidder at the Auction is _____, **2010 at 5:00 P.M., prevailing Pacific Time**.

7         **PLEASE TAKE FURTHER NOTICE** that all requests for information concerning the

8  Auction of the Assets should be directed to Fox Rothschild, LLP, 3800 Howard Hughes

9  Parkway, Suite 500, Las Vegas, NV 89169, Telephone: (702) 597-5503, Attention: Deanna

10  Forbush, Esq., Email: dforbush@foxrothschild.com.

11         **PLEASE TAKE FURTHER NOTICE** that all bids for the Assets must be submitted in

12  writing, either by regular mail, electronic mail or facsimile, by the Qualified Bid Deadline to the

13  following parties (collectively, the "Notice Parties"):

14
15  Hal L. Baume  
Deanna Forbush  
16  FOX ROTHSCHILD, LLP  
3800 Howard Hughes Parkway,  Suite 500  
17  Las Vegas, Nevada  89169  
Email: hbaume@foxrothschild.com  
18        dforbush@foxrothschild.com  
Facsimile:  (702) 597-5503

FX Luxury Las Vegas I, LLC  
c/o FX Real Estate and Entertainment Inc.  
650 Madison Avenue  
New York, New York 10022  
Attention:  Mitchell Nelson  
Email:  mitchell.nelson@flagluxury.com  
Facsimile:  (212) 750-3034

19
20  Shearman & Sterling LLP  
599 Lexington Avenue  
21  New York, New York 10022  
Attention:  Robert W. Fagiola  
22        Andrew V. Tenzer  
Email: rfagiola@shearman.com  
23        atenzer@shearman.com  
Facsimile:  (646) 848-7606  
      (646) 848-7799

Landesbank Baden-Württemberg,  
New York Branch  
280 Park Avenue, 31st Floor – West Bldg  
New York, New York 10017  
Attention:  Robert Dowling  
Email:  robert.dowling@lbbwus.com  
Facsimile:  (212) 584-1759

24
25  Haynes & Boone LLP  
1221 Avenue of the Americas  
26  New York, New York 10020  
Attention:  Lennard M. Perkins  
27        Jason Nagai  
Email: lennard.perkins@haynesboone.com

NexBank, SSB  
13455 Noel Road, 22nd Floor  
Dallas, Texas 75240  
Attention:  Jeff Scott  
      Marcia Kaufman  
Email: jeff.scott@nexbank.com

28

jason.naigi@haynesboone.com
Facsimile:  (212) 918-8989

marcia.kaufman@nexbank.com
Facsimile:  (972) 934-4790
(972) 934-4785

Grubb & Ellis | Las Vegas
3930 Howard Hughes Pkwy, Ste 180
Las Vegas, NV 89169
Attention:  Larry Singer
Email:  lsinger@gelasvegas.com
Facsimile:  (702) 862-8242

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures consist of the following:

1.    <u>Qualification</u>.  In order to perform due diligence and be entitled to submit a bid for the Assets, a party expressing an interest in the offered Assets (a "<u>Potential Bidder</u>") must first provide Debtor with (i) an executed confidentiality agreement in form and substance satisfactory to Debtor, and (ii) a statement demonstrating, to Debtor's satisfaction (in consultation with First Lien Agent), a bona fide interest in purchasing the Assets and describing the Potential Bidder's proposed transaction.  A bid will be deemed a Qualified Bid if:  (a) it is submitted by the Bidding Deadline; (b) it is cash only or cash with a firm financing commitment, with a ten percent (10%) escrow and balance to be paid at closing; (c) it is in an amount not less than $256 million ("<u>Minimum Bid Threshold</u>"); (d) it provides that the Bidder will pay all transfer taxes and title insurance and sales agent brokerage commissions of two and one-half percent (2.5%) of the purchase price incurred in connection with the Auction; (e) it provides for a purchase as-is, where-is with no substantial representations or warranties from the Debtor; (f) it is accompanied by (i) the purchase and sale agreement executed by the bidder, (ii) evidence of a deposit in escrow by the Bidding Deadline, of an amount equal to ten percent (10%) of the purchase price, (iii) proof of the bidder's ability to close escrow within thirty (30) days after entry of the Court's order approving the sale; and (g) will assume all, or substantially all, of Debtor's executory contracts and unexpired leases with non-debtor entities that are not affiliated with Debtor.  A Potential Bidder that satisfies all of the these requirements will become a "<u>Qualified Bidder</u>."  Such Qualified Bidders will be allowed access to Debtor's confidential business information upon execution of a confidentiality agreement.  Upon approval and execution of a confidentiality agreement, each Potential Bidder will have access to the Offering and the virtual data room.  The initial due diligence period within which all Qualified Bidders must complete their respective review of the due diligence materials shall lapse on _____, **2010 at 5:00 P.M., prevailing Pacific Time** (the "<u>Due Diligence Period</u>").

2.    <u>Bid Requirements</u>.  Each Qualified Bid shall be in writing and received by the Notice Parties no later than the Qualified Bid Deadline or **_____, 2010 at 5:00 P.M., prevailing Pacific Time**.

Each Qualified Bidder wishing to bid on the Assets shall submit its offer to purchase the Assets pursuant to a term sheet that specifically states that it is not subject to any further due diligence and that the terms thereof shall be irrevocable until two business days after the earlier of (i) the close of a sale of the Assets to an entity other than such Qualified Bidder, or (ii) 45 days after the Sale Hearing (defined below), unless otherwise agreed to by Debtor.  In addition, each term sheet shall include all of the proposed terms and conditions of the proposed transaction for purchase of the Assets including:[7] (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory commitment, and such other evidence of ability to consummate the transaction as Debtor may reasonably request; (b) a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms proposed; and (c) any other pertinent factual information regarding the Qualified Bidder that would assist Debtor in its analysis of any regulatory or other issues that may affect or delay consummation of a transaction with the Qualified Bidder (the "<u>Qualified Bid Term Sheet</u>").  A Qualified Bidder must provide evidence of the Qualified Bidder's ability to provide adequate assurance of future performance of executory contracts and unexpired leases, such as audited financial statements of the Qualified Bidder, information regarding the capitalization of the Qualified Bidder, or information allowing Debtor to evaluate the value of any guarantees being provided by affiliates of a Qualified Bidder of its obligations under any assumed and assigned executory contracts or leases (an "<u>Adequate Assurance Package</u>").

3.    <u>Auction Date</u>.  An Auction will take place if one Qualified Bid acceptable to Debtor and the First Lien Agent is submitted.

4.    <u>Bidding at the Auction</u>.  Any Qualified Bidders shall be entitled to bid at the Auction, which shall be held on **_____, 2010 at _____ __.m.** at the United States Bankruptcy Court, Courtroom No. ___.  Debtor retains discretion with respect to how to conduct the Auction if Qualified Bids are received.  Only Debtor, First Lien Lenders, Second Lien Holders and any representative of the foregoing, together with any Qualified Bidders and their representatives, shall be entitled to attend the Auction, and the Qualified Bidders shall be entitled to make any additional bids ("<u>Subsequent Bids</u>") at the Auction.  All Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each bidder shall be fully disclosed to all other bidders and that all material terms of each bid will be fully disclosed to all other bidders throughout the entire Auction.  Debtor may announce at the Auction additional

---

[7]  Debtor may file a supplement to the Motion prior to the hearing on the Bid Procedures Order, which attaches form agreements and a form of Sale Order.

procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make subsequent alternative bids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures.

5.      Bidding Increment.  Bidding at the Auction shall begin with the highest and best Qualified Bid received by Debtor on the Bid Deadline (the "Baseline Bid").  Each subsequent bid for the Assets (the "Subsequent Bids") shall thereafter be required to be in an amount of no less than $1,000,000 or such other amount as Debtor, in consultation with First Lien Lenders, determine is appropriate (the "Minimum Bidding Increments") above the immediately preceding bid amount.

6.      Other Bidding Procedures.  The Auction shall continue in one or more rounds of bidding and shall conclude after each participating bidder has had the opportunity to submit an additional Subsequent Bid with full knowledge of the then existing highest bid and the identity of the party making the then highest bid.  For the purpose of evaluating the value of the consideration provided from each Subsequent Bid, the value shall be the consideration payable to Debtor; it being agreed however that Debtor shall have the right to choose and recommend to the Court the best bid even if it is not the highest bid, based on a good faith analysis of which bidder is best qualified to close the transaction and take over the Properties and any other considerations deemed appropriate in the sole discretion of Debtor. At the conclusion of the bidding, Debtor shall announce its determination as to the bidder submitting the winning bid (the "Winning Bidder"), making the highest and best bid for the Assets in the sole and absolute discretion of Debtor, which bid shall be submitted to the Court for approval at the Sale Hearing.

7.      Sale Hearing.  Any Winning Bid will be subject to approval by the Bankruptcy Court.  If a Qualified Bid is received and deemed to be the Winning Bid, Debtor will immediately file the necessary pleadings to request a hearing seeking Bankruptcy Court approval of the Winning Bid at the earliest possible opportunity subject to the Court's calendar availability.

8.      Closing.  The closing of the sale of Assets to such entity that submitted a Winning Bid will occur in accordance with the terms of the agreement between Debtor and the Winning Bidder.

9.      Failure to Consummate Purchase.  If for any reason the party making the Winning Bid fails to consummate a sale of the Assets, or any part thereof, the offeror of the second highest and best Qualified Bid for any of the same Assets, will automatically be deemed to have submitted the highest and best Qualified Bid.  If such failure to consummate the purchase is the result of a breach by the Winning Bidder, then Debtor specifically reserves the right to seek all available damages from the defaulting bidder.

10. <u>Reservation of Rights; Deadline Extensions</u>. The Debtor reserves the right, after consultation with the First Lien Agent, to (i) impose, at or prior to the Auction, additional terms and conditions on a sale of the Assets consistent with the Bid Procedures Order; (ii) extend the deadlines set forth in Bidding Procedures, adjourn the Auction at the Auction, and/or adjourn the Sale Hearing in open court without further notice; (iii) withdraw from the Auction any or all of the Assets at any time prior to or during the Auction or cancel the Auction; and (iv) reject all Qualified Bids.

11. Notwithstanding anything contained herein to the contrary, Debtor shall not be permitted to amend these Bidding Procedures to reduce the Minimum Bid Threshold below $256 million, without the express consent of the First Lien Agent

///

///

///

///

///

///

(on behalf of the First Lien Lenders), which consent may be withheld in the First Lien Agent's and First Lien Lenders' sole discretion.

DATED this ___th day of _____ 2010.

**FOX ROTHSCHILD, LLP**

By_____
     HAL L. BAUME, ESQ.
     New Jersey Bar No. 028741977
     [*pro hac vice pending*]
     DEANNA FORBUSH, ESQ.
     Nevada Bar No. 6646
     3800 Howard Hughes Parkway, Suite 500
     Las Vegas, Nevada  89169
     Telephone:  (702) 262-6899
     *[Proposed] Counsel for FX Luxury Las Vegas I, LLC*