# **EXHIBIT G**

**FORM OF SECTION 1111(B)
PROMISSORY NOTE**

**$[_____]**[1]                                                                                                        [_____], 2010

FOR VALUE RECEIVED, **[_____ BORROWER, LLC]**, a Delaware limited liability company and the successor by merger to FX Luxury Las Vegas I, LLC (formerly Metroflag BP, LLC) ("**Maker**"), hereby unconditionally promises to pay to the order of **LANDESBANK BADEN-WÜRTTEMBERG, NEW YORK BRANCH**, as agent for the Existing First Lien Lenders ("**Payee**"), in accordance with the Plan, the full amount of Payee's allowed claim in the amount of (a) the principal sum of [_____] ($[_____]) in lawful money of the United States of America, and (b) interest on $[_____] ($[_____]), which amount was determined by the Bankruptcy Court to be the fair market value of the Collateral as of the date of confirmation of the Plan (the "**Collateral Value**"), at the rate of 5.50% per annum, calculated on the basis of a 365/366-day year.

**1.      Definitions.**  When used in this Note, the following terms shall have the respective meanings specified herein or in the section referred to:

"**Bankruptcy Code**" means Title 11 of the United States Code entitled "*Bankruptcy*", as now and hereafter in effect, or any successor statute.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Nevada.

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in (a) New York City, United States of America, or (b) Stuttgart, Munich, Hanover or Mainz, Federal Republic of Germany are authorized or required by law to close.

"**Co-Lender Agreement**" means that certain Co-Lender Agreement, dated as of July 7, 2007, among Payee and the Existing First Lien Lenders with respect to the relative rights and priorities of the Existing First Lien Lenders under the Existing First Lien Loans, as amended from time to time.

"**Collateral**" means all of the properties and assets in which liens are granted or purported to be granted by the Collateral Documents.

"**Collateral Documents**" means the Mortgage and any other document, instrument or agreement delivered by Maker pursuant to this Note or any of the other Loan Document in order to grant, protect or perfect liens on any assets of Maker as security for all or any of the Obligations.

"**Default**" has the meaning ascribed to it in **Section 7** hereof.

"**Existing First Lien Credit Agreement**" means the "*First Lien Credit Agreement*" as defined in the Plan.

---

[1]      To be determined by the Bankruptcy Court.

H-845561.7

"*Existing First Lien Lender*" means each "*Lender*" as defined in, and party to, the Existing First Lien Credit Agreement.

"*Existing First Lien Loan*" means, collectively, the loans evidenced by those certain promissory notes, dated as of July 6, 2007, in the amount in aggregate outstanding principal amount of $280,000,000, made in connection with and pursuant to the Existing First Lien Credit Agreement.

"*Existing Second Lien Agent*" means the "*Second Lien Agent*" as defined in the Plan.

"*Existing Second Lien Lenders*" means the "*Second Lien Lenders*" as defined in the Plan.

"*Existing Second Lien Loan*" means, collectively, the loans evidenced by those certain promissory notes dated as of July 6, 2007, in the amount in aggregate outstanding principal amount of $195,000,000.

"*Extended Maturity Date*" means, as applicable, the First Extended Maturity Date, the Second Extended Maturity Date or the Third Extended Maturity Date.

"*First Extended Maturity Date*" means [_____], 2017.

"*Guarantor*" means, individually, each Sponsor or other "*Investor*" (as defined in the Plan) now or hereafter party to the Guaranty; and collectively, "*Guarantors*".

"*Guaranty*" means that certain Limited Joint and Several Interest Payment Guaranty, dated as of the Plan Effective Date, executed by Guarantors and any additional Guarantor from time to time, for the benefit of Payee, as the same may be amended from time to time, which provides for the Guarantors' joint and several guaranty of payment of three months of interest under this Note, and is otherwise in form and substance reasonably satisfactory to Payee.

"*Initial Maturity Date*" means [_____], 2016.

"*Internal Rate of Return*" means the actual internal rate of return on Parent's Equity Contribution using Microsoft Excel 2000 XIRR internal rate of return calculation formula, where "*Values*" is an array of values with Parent's Equity Contribution being negative values, and disbursements to Parent under *Sections 6(c)(x)* and *6(c)(xi)* of this Note, and amounts on deposit in the interest reserve account and capital expenditure account under *Section 6* of this Note, being positive values, and using the period in which such contribution and disbursements occur.  If Microsoft Excel is no longer available or if the Microsoft Excel spreadsheet formula is changed, the foregoing formula shall be adjusted as necessary so as to achieve an equivalent result.

"*Loan Documents*" means this Note, the Mortgage, the Guaranty, and other documents evidencing or securing Obligations and any agreements between Maker, Parent, Sponsors or any other Guarantor entered into with Payee in connection with the Transactions.

"*Maturity Date*" means the Initial Maturity Date or such earlier date on which the final payment of the principal of the Note becomes due and payable as therein or herein provided, whether at such stated maturity date, by declaration of acceleration or otherwise; *provided, however*, that if Maker exercises any right to extend the term of the Note pursuant to *Section 5* hereof, from and after such extension of the term of the Loan, the "*Maturity Date*" means the applicable Extended Maturity Date or such earlier date

on which the final payment of principal of the Note becomes due and payable as therein or herein provided whether at such stated maturity date, by declaration of acceleration or otherwise.

"*Mortgage*" means the "*Mortgage*" as defined in the Plan.

"*Obligations*" means all indebtedness, liabilities, and obligations, of every kind and character, of Maker now or hereafter existing in favor of Payee arising under this Note and the other Loan Documents.

"*Parent*" means [_____ Parent, LLC], a Delaware limited liability company and the owner of 100% of the membership interests of Maker.

"*Parent's Equity Contribution*" means the total amount of all cash and the fair market value of all assets contributed by Parent to Maker to purchase membership interests in Maker on or prior to the Plan Effective Date, from which amount $10,000,000 shall be applied to reduce the outstanding balance of the Existing First Lien Loan, and $10,000,000 shall be deposited by Maker in accordance with *Section 6(a)* hereof.

"*Plan*" means the confirmed chapter 11 plan of reorganization for FX Luxury Las Vegas I, LLC (formerly Metroflag BP, LLC) filed with the Bankruptcy Court by the Sponsors on July [__], 2010, as amended, supplemented, or otherwise modified prior to the date hereof, a copy of which is attached hereto as *Annex A*.

"*Plan Effective Date*" means the "*Effective Date*" as defined in the Plan.

"*Property*" means the portion of the Collateral comprising any interest (fee, leasehold or otherwise) in real property then held by Maker, as determined from time to time; including, without limitation, those certain parcels of land in Clark County, initially totaling approximately 17.72 acres, owned in fee by Maker as of the Plan Effective Date, each such parcel as more fully described in the Mortgage.

"*Second Extended Maturity Date*" means [_____], 2018.

"*Sponsors*" means Five Mile Capital Pooling International LLC, Spectrum Investment Partners L.P., Transamerica Life Insurance Company, The Huff Alternative Fund, L.P., and The Huff Alternative Parallel Fund, L.P., individually and collectively.

"*Third Extended Maturity Date*" means [_____], 2019.

"*Transactions*" means, collectively, the consummation of the transactions contemplated under the Plan.

**2.**     **Payment.**  The unpaid principal of this Note, and interest, shall be due and payable as follows:

Interest shall be due and payable in arrears on the last day of each calendar month, commencing with the calendar month ending on [_____], 2010. The unpaid principal balance of this Note, and accrued and unpaid interest, shall be due and payable in full on the Maturity Date.

The payments of principal of and interest on this Note shall be made by Maker to Payee in immediately available funds.

H-845561.7                                                    3

Should any payment become due and payable on any day other than a Business Day, the maturity thereof shall be extended to the next succeeding Business Day.

To the extent permitted by applicable law, after the occurrence and during the continuance of a Default, this Note shall bear interest at a rate of 7.50% per annum on the Collateral Value.

**3.** **Bankruptcy Code Section 1111(b) Treatment**. For the avoidance of doubt, all interest, whether non-default or default interest: (a) shall be applied to interest then due and payable, and shall also retire the principal amount of this Note on a dollar-for-dollar basis in accordance with the treatment of "*Class 3*" under the Plan and consistent with Bankruptcy Code section 1111(b) treatment thereunder; and (b) shall be determined and paid against the Collateral Value.

**4.** **Waivers.** No waiver by Payee of any of its rights or remedies hereunder or under any other document evidencing or securing this Note or otherwise shall be considered a waiver of any other subsequent right or remedy of Payee; no delay or omission in the exercise or enforcement by Payee of any rights or remedies shall ever be construed as a waiver of any right or remedy of Payee; and no exercise or enforcement of any such rights or remedies shall ever be held to exhaust any right or remedy of Payee.

**5.** **Extensions of Maturity Date.**

(a) Maker shall have the option (each, an "*Extension Option*") to extend the term of this Note until the First Extended Maturity Date, and thereafter, until the Second Extended Maturity Date, and thereafter, until the Third Extended Maturity Date (each of the First Extended Maturity Date, the Second Extended Maturity Date and the Third Extended Maturity Date, an "*Extended Maturity Date*"), subject, in each case, to satisfaction of the conditions set forth in this *Section 5* as of the date of the applicable Extension Notice (defined below) and as of the Initial Maturity Date, the First Extended Maturity Date or the Second Extended Maturity Date, as applicable

(b) Maker may, by notice to Payee (such notice, an "*Extension Notice*") not less than 90 days prior to the Initial Maturity Date, the First Extended Maturity Date or the Second Extended Maturity Date, as applicable, request an extension of the Maturity Date for an additional term of one (1) year (each such one year extension, an "*Extension Term*") from the Initial Maturity Date, the First Extended Maturity Date or the Second Extended Maturity Date, as applicable, and, provided all the terms and conditions of this *Section 5* have been met, the Maturity Date shall automatically be extended for the applicable Extension Term in accordance with this *Section 5* (for the avoidance of doubt, the Maturity Date may in no event be extended beyond that date that is nine (9) years after the date of this Note). Each such Extension Term shall, subject to the requirements of *clause (c)* below, become effective as of the Initial Maturity Date, the First Extended Maturity Date or the Second Extended Maturity Date, as applicable.

(c) Notwithstanding the foregoing, each Extension Option and the extension of the Maturity Date pursuant to this *Section 5* shall not be effective unless:

(i) no Default shall have occurred and be continuing on the date of such extension and after giving effect thereto; and

(ii) Maker shall have delivered to Payee an annual operating budget for the applicable Extension Term (after giving effect to such Extension Term).

6.  **Covenants.**

(a) <u>Interest Reserve and Capital Expenditure Accounts</u>. Upon receipt of Parent's Equity Contribution, Maker shall deposit $8,000,000 into an interest reserve account and $2,000,000 into a capital expenditure account in accordance with the Plan. Funds on deposit in such accounts constitute Maker's assets, over which Payee shall have no control.

(b) <u>Exit Fee</u>. Upon repayment in full of the Obligations (whether on the Maturity Date or otherwise), Maker shall pay to Payee, for the ratable benefit of the Existing First Lien Lenders, an exit fee equal to one percent (1%) per annum of the Collateral Value, calculated on a per diem basis.

(c) <u>Disbursements</u>. If no Default then exists or will result therefrom, Maker shall disburse all cash in its deposit, operating or other accounts as of the end of each calendar month in the following order of priority (to the extent available for disbursement):

(i) *First*, to pay operating expenses for the Property for the then current month;

(ii) *Second*, for one-twelfth of estimated taxes to be payable by the Maker for the applicable fiscal year;

(iii) *Third*, for one-twelfth of estimated insurance premiums to be payable for the renewal of insurance coverage;

(iv) *Fourth*, to the payment of (A) one-twelfth of the agent's fee payable to Payee each year under this Note, and (B) costs and expenses of Payee under the Loan Documents that are incurred after the Plan Effective Date;

(v) *Fifth*, to fund interest then due and payable under this Note;

(vi) *Sixth*, to the interest reserve account in an amount sufficient to replenish such account, but only to the extent necessary to replenish the balance thereof up to an amount of $2,000,000;

(vii) *Seventh*, to the capital expenditure account in an amount sufficient to replenish such account, but only to the extent necessary to replenish the balance thereof up to an amount of $2,000,000;

(viii) *Eighth*, to reimburse Maker for any costs or expenses funded by Maker with respect to capital expenditures and leases;

(ix) *Ninth*, to the Existing Second Lien Agent and the Existing Second Lien Lenders for any costs, fees and expenses of the Existing Second Lien Agent and the Existing Second Lien Lenders incurred in connection with the Existing Second Lien Loan and the Plan through the Plan Effective Date, as follows: *first,* to costs, fees and expenses of professionals for the Existing Second Lien Agent and the Existing Second Lien Lenders, and *second,* to other costs, fees and expenses of the Existing Second Lien Agent and the Existing Second Lien Lenders;

    (x)  *Tenth*, to Maker, for further distribution to Parent, in an amount required to provide the members of Parent with an Internal Rate of Return on Parent's Equity Contribution of twenty percent (20%); and

    (xi)  *Eleventh*, 75% of any remaining cash to Maker for further distribution to Parent, and the remainder to Payee as a prepayment of principal hereunder.

  **7.**  **Default and Remedies.**

  (a)  A "*Default*" shall exist hereunder if any one or more of the following events shall occur and be continuing: (i) Maker shall fail to pay when due any principal of, or interest on, this Note, and such failure shall continue for five (5) Business Days after Maker's receipt of Payee's written notice thereof; (ii) any representation or warranty made by Maker to Payee herein shall prove to be untrue or inaccurate in any material respect; (iii) default shall occur in the performance of any of the covenants or agreements of Maker contained herein, and such failure shall continue for thirty (30) days after Maker's receipt of Payee's written notice thereof; (iv) all Guarantors repudiate or purport to revoke the Guaranty, or fail to perform their respective obligations under the Guaranty; (v) default shall occur in the payment of any other indebtedness of Maker in excess of $50,000,000; (vi) any of the Loan Documents shall cease to be legal, valid, binding agreements, enforceable against any party executing the same in accordance with the respective terms thereof, or shall in any way be terminated or become or be declared ineffective or inoperative or shall in any way whatsoever cease to give or provide the respective liens, security interests or rights intended to be created thereby; (vii) Maker shall (A) apply for or consent to the appointment of a receiver, trustee, intervenor, custodian or liquidator of itself or of all or a substantial part of its assets, (B) be adjudicated a bankrupt or insolvent or file a voluntary petition for bankruptcy or admit in writing that it is unable to pay its debts as they become due, (C) make a general assignment for the benefit of creditors, (D) file a petition or answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy or insolvency laws, or (E) file an answer admitting the material allegations of, or consent to, or default in answering, a petition filed against it in any bankruptcy, reorganization or insolvency proceeding, or take corporate action for the purpose of effecting any of the foregoing; (viii) an order, judgment or decree shall be entered by any court of competent jurisdiction or other competent authority approving a petition seeking reorganization of Maker or appointing a receiver, trustee, intervenor or liquidator of any such person, or of all or substantially all of its or their assets, and such order, judgment or decree shall continue unstayed and in effect for a period of sixty (60) days; or (ix) any final, non-appealable judgment for the payment of money in excess of $50,000,000 shall be rendered against Maker and such judgment or judgments shall not be satisfied or discharged at least ten (10) days prior to the date on which any of its assets could be lawfully sold to satisfy such judgments.

  (b)  Upon the occurrence and continuance of any Default hereunder, then the holder hereof may, at its option, (i) declare the entire unpaid balance of principal and accrued interest to be immediately due and payable, (ii) reduce any claim to judgment, and/or (iii) pursue and enforce any of Payee's rights and remedies available pursuant to any applicable law or agreement including, without limitation, foreclosing all liens and security interests securing payment thereof or any part thereof; *provided, however*, in the case of any Default specified in *(vii)* or *(viii)* of **Section 7(a)** above with respect to Maker, without any notice to Maker or any other act by Payee, the Obligations shall become immediately due and payable without presentment, demand, protest, or other notice of any kind, all of which are hereby waived by Maker.

  **8.**  **Prepayments.**

H-845561.7            6

(a) Maker reserves the right to prepay the outstanding principal balance of this Note, in whole or in part, at any time and from time to time, without premium or penalty. Any such prepayment shall be made together with payment of interest accrued on the amount of principal being prepaid through the date of such prepayment.

(b) No later than the fifth Business Day following Maker's receipt of (i) cash payments under any insurance policy as a result of any casualty event with respect to the Property, which cash payments are not reinvested in the Property by Maker within one year of receipt thereof, or (ii) proceeds from any condemnation of the Property, Maker shall prepay the Note in an amount equal to such cash payments or proceeds.

(c) All Obligations shall be due and payable promptly upon the sale, transfer or other disposition of the Property.

**9. Collateral.** This Note and the Obligations are secured by the Property pursuant to the Mortgage.

**10. Costs**. If this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceeding at law or in equity, or in bankruptcy, receivership or other court proceedings, Maker agrees to pay all costs of collection, including, but not limited to, court costs and reasonable attorneys' fees, including all costs of appeal.

**11. Notices**. Any notice that may be given by either Maker or Payee shall be in writing and shall be deemed given upon the earlier of the time of receipt thereof by the person entitled to receive such notice, or if mailed by registered or certified mail or with a recognized overnight mail courier upon two (2) days after deposit with the United States Post Office or one (1) day after deposit with such overnight mail courier, if postage is prepaid and mailing is addressed to Maker or Payee, as the case may be, at the following addresses, or to a different address previously given in a written notice to the other party:

To Maker:

_____
_____

Attention: _____
Email: _____
Facsimile: _____

with a copy to:

Haynes and Boone, LLP
1221 Avenue of the Americas
26th Floor
New York NY 10020-1007
Attention:   Lenard Parkins
Email:       lenard.parkins@haynesboone.com
Facsimile:   (212) 884-8226

H-845561.7                                     7

To Payee:

Landesbank Baden-Württemberg, New York Branch
280 Park Avenue, 31st Floor – West Building
New York, New York 10017
Attention:   Robert Dowling
Email:         robert.dowling@lbbwus.com
Facsimile:   (212) 584-1759

with a copy to:

Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Attention:   Robert W. Fagiola
Email:         rfagiola@shearman.com
Facsimile:   (646) 848-7606

12.     **Co-Lender Agreement**.  Except as otherwise set forth in this Note, in the event of any conflict between the terms of the Co-Lender Agreement and this Note, the terms of this Note shall govern and control.

13.     **Satisfaction of Claims**.  This Note supersedes and replaces any "claim" (as defined in *Section 101(5)* of the Bankruptcy Code) held by the Existing First Lien Lenders against Maker, any predecessor of Maker, or the Property in accordance with the Plan.

14.     **USA Patriot Act**.  Pursuant to the requirements of the USA PATRIOT Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "***Act***"), Payee is required to obtain, verify and record information that identifies Maker, which information includes the name and address of Maker and other information that will allow Payee to identify Maker in accordance with the Act.  Maker shall, promptly following a request by Payee, provide all documentation and other information that Payee requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the Act.

15.     **GOVERNING LAW.  THIS NOTE SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.**

16.     **CONSENT TO JURISDICTION AND SERVICE OF PROCESS.**

(a)     MAKER IRREVOCABLY AND UNCONDITIONALLY SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE EXCLUSIVE JURISDICTION OF (i) THE COURTS OF THE STATE OF NEW YORK SITTING IN NEW YORK CITY AND OF THE UNITED STATES DISTRICT COURT SITTING IN NEW YORK CITY, (ii) THE COURTS OF THE STATE OF NEVADA SITTING IN CLARK COUNTY AND OF THE UNITED STATES DISTRICT COURT SITTING IN CLARK COUNTY, AND (iii) ANY APPELLATE COURT FROM ANY THEREOF, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR ANY OTHER LOAN DOCUMENT TO THE EXTENT SUCH COURTS WOULD HAVE SUBJECT MATTER JURISDICTION WITH RESPECT THERETO, AND MAKER IRREVOCABLY AND UNCONDITIONALLY AGREES THAT ALL CLAIMS IN RESPECT OF

H-845561.7                                               8

ANY SUCH ACTION OR PROCEEDING MAY BE HEARD AND DETERMINED IN SUCH NEW YORK STATE COURT OR SUCH NEVADA STATE COURT OR, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN EITHER SUCH FEDERAL COURT. MAKER AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.  NOTHING IN THIS NOTE OR IN ANY OTHER LOAN DOCUMENT SHALL AFFECT ANY RIGHT THAT PAYEE MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS NOTE OR ANY OTHER LOAN DOCUMENT AGAINST MAKER OR ITS PROPERTY IN THE COURTS OF THE STATE OF NEW YORK OR THE STATE OF NEVADA OR TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN EITHER THE UNITED STATES DISTRICT COURT SITTING IN NEW YORK CITY OR THE UNITED STATES DISTRICT COURT SITTING IN CLARK COUNTY. MAKER IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY CLAIM THAT IT IS NOT SUBJECT PERSONALLY TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK OR THE STATE OF NEVADA, OR THAT ITS PROPERTY IS EXEMPT OR IMMUNE FROM ATTACHMENT OR EXECUTION.

(b)    MAKER IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS NOTE OR ANY OTHER LOAN DOCUMENT IN ANY COURT REFERRED TO IN *CLAUSE (A)* ABOVE.  MAKER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY SUCH COURT.

(c)    MAKER HEREBY IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN THE MANNER PROVIDED FOR NOTICES IN *SECTION 11* HEREOF.  NOTHING IN THIS NOTE WILL AFFECT THE RIGHT OF ANY PARTY HERETO TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY APPLICABLE LAW.

17.    JURY TRIAL.  TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, MAKER HEREBY IRREVOCABLY AND EXPRESSLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO ANY OF THIS NOTE OR THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY, OR THE ACTIONS OF PAYEE IN THE NEGOTIATION, ADMINISTRATION, OR ENFORCEMENT THEREOF.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MAKER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  PAYEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY MAKER.

18.    ENTIRETY.    THE PROVISIONS OF THIS NOTE AND THE LOAN DOCUMENTS MAY BE AMENDED OR REVISED ONLY BY AN INSTRUMENT IN WRITING SIGNED BY MAKER AND PAYEE.  THIS NOTE AND ALL THE OTHER LOAN DOCUMENTS EMBODY THE FINAL, ENTIRE AGREEMENT OF MAKER AND PAYEE AND SUPERSEDE ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS,

**REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF AND THEREOF AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF MAKER AND PAYEE.  THERE ARE NO ORAL AGREEMENTS BETWEEN MAKER AND PAYEE.**

*Remainder of Page Intentionally Blank*
*Signature Page Follows*

**MAKER:**

**[_____ BORROWER, LLC]**,
a Delaware limited liability company and successor by merger to FX Luxury Las Vegas I, LLC (formerly Metroflag BP, LLC)


By: _____
     Name:
     Title:

**ANNEX A**

Plan

(To be Attached)

Case 10-17015-bam    Doc 375-7    Entered 07/09/10 18:43:05    Page 13 of 13